UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Nekima Levy Armstrong, Marques Armstrong, Terry Hempfling, and Rachel Clark, on behalf of themselves and other similarly situated individuals | Case No:     20-CV-01645 (SRN-DTS) |
| Plaintiffs, | **DEFENDANT MINNEAPOLIS POLICE LIEUTENANT ROBERT KROLL'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)** |
| v. | |
| City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo *in his official capacity*; Minneapolis Police Lieutenant Robert Kroll, *in his and official capacity*; Minnesota Department of Public Safety Commissioner John Harrington, *in his official capacity*, Minnesota State Patrol Colonel Matthew Langer, *in his official capacity*; and John Does 1-2, *in their individual and official capacities*, | |
| Defendants. | |

## INTRODUCTION

The instant case is a claim by individuals for injuries incurred while they were present during the protests and riots on May 26-29, 2020 in Minneapolis, Minnesota. Plaintiffs fail to allege any conduct by Defendant Minneapolis Police Lieutenant Robert

Kroll ("Defendant Kroll") which would cause liability to Defendant Kroll.  As such, Plaintiffs' claims against Defendant Kroll must be dismissed.

## FACTS

The Complaint describes the series of events leading up to the protests and riots that took place in the City of Minneapolis, Minnesota in May 2020.  Plaintiffs allege they were injured by tear gas and/or projectiles while participating in protests in Minneapolis. There is no allegation that Defendant Kroll deployed the tear gas or projectile or directed MPD officers to deploy tear gas or projectile (or use any force). There is no allegation that Defendant Kroll was even on duty as a police officer at the time of the alleged injuries – he was not.

Defendant Kroll is named in this lawsuit simply because he is President of the Police Officers' Federation of Minneapolis ("POFM"), which is certified as the Exclusive Representative of all licensed police officers employed by the City of Minneapolis between the ranks of Police Officer and Lieutenant. See Kelly Aff. Ex. 1 (Labor Agreement between the POFM and City of Minneapolis).  The POFM is a private non-profit corporation. See Kelly Aff. Ex. 2 (Minnesota Secretary of State Business Record Detail). Defendant Kroll holds the rank of Lieutenant from the Minneapolis Police Department, but is designated as Full-Time personnel where he works exclusively for POFM and has been Full-Time for POFM since 2014. As President of the POFM, Defendant Kroll is contractually "relieved from [his] regularly scheduled duties to engage in Federation activities…" and is designated to "work exclusively on Federation business

on a permanent basis (the "Full-Time Personnel")…" Kelly Aff. Ex 1 at 57.  Per the terms of the labor agreement, the City of Minneapolis and its Police Department "shall not order Full-Time [POFM] Personnel to perform duties for the Police Department…" Id at 58. Instead, the POFM directs the "activities of personnel while such personnel are engaged in Federation business…" Id.   Thus, the City of Minneapolis and the Minneapolis Police Department are prohibited from requiring Defendant Kroll to perform law enforcement duties for the MPD subject to only a few exceptions[1]. Id.

On the date of Plaintiffs' alleged injuries, Defendant Kroll was designated as Full-Time Personnel of the POFM, working exclusively on POFM business. As a Full-Time Personnel of the POFM, Defendant Kroll supervises and directs other POFM personnel engaged in *Federation business* and holds no supervisory role or responsibility within the Minneapolis Police Department.

Plaintiffs' allegations to support its claim against Defendant Kroll are based solely upon his role as the President of the POFM and a statement that Defendant Kroll sent to the members of the POFM *after* the alleged injuries occurred. The Complaint alleges Plaintiffs were injured between May 27-29, 2020.  See Amended Complaint. Defendant Kroll's statement was issued on June 2, 2020, several days *after* Plaintiffs' alleged injuries had already occurred.   Amended   Complaint ¶¶ 19-30, 24-29, 45-50, 55-66.

---

[1] "[T]raining required for such Full-Time Personnel to retain their POST license and/or good standing as employees of the Minneapolis Police Department; being interviewed under Garrity by Internal Affairs; or required participation in criminal or civil litigation relating to duties performed by the employee as a Minneapolis Police officer (collectively the "Mandatory MPD Duties")."

Defendant Kroll was not present nor was he supervising any Minneapolis Police Department personnel at the time of Plaintiffs' alleged injuries.

## ISSUES

1. Whether the Complaint should be dismissed for failure to state a claim upon which relief can be granted?

## STANDARD OF REVIEW

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court generally must ignore materials outside the pleadings, but it may consider materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011). Accordingly, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment under Rule 12(d). *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

The Court must grant a Rule 12(b)(6) motion to dismiss for failure to state a claim if the plaintiff "cannot prove any set of facts in support of the claim which would entitle him to relief." *Stone Motor Co. v. General Motors Corp.*, 293 F.3d 456, 464 (8th Cir.

2002). The Supreme Court has emphasized that even under the liberal pleading standard of Rule 8, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Iqbal*, 129 S. Ct. at 1964-65. "The threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555). Accordingly, a plaintiff must provide more than labels and conclusions.

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. (citing Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Courts ordinarily do not consider matters outside the pleadings on a motion to dismiss. See Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some

substantiation for and does not merely reiterate what is said in the pleadings." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir.1992)(quotations omitted). "[F]acts asserted in the memoranda [supporting a motion to dismiss] themselves, as well as statements made at oral argument, may not be considered unless they were first asserted in the pleadings." *Folger v. City of Minneapolis*, 43 F.Supp.3d 922, 930 (D.Minn.2014).

A court may, however, consider exhibits attached to the complaint, documents that are necessarily embraced by the pleadings, and public records. *Little Gem Life Scis., LLC v. Orphan Med., Inc*., 537 F.3d 913, 916 (8th Cir.2008). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.' " *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir.2012) (quoting *Kushner v. Beverly Enters., Inc*., 317 F.3d 820, 831 (8th Cir.2003)). For instance, the contract upon which a claim rests is necessarily embraced by the pleadings and may be considered. *Gorog v. Best Buy Co*., 760 F.3d 787, 791 (8th Cir.2014). The Exhibits attached to the Kelly Affidavit are all referenced in specific paragraphs of the complaint and incorporated by the amended complaint and the Court should, therefore, consider them.

## ARGUMENT

Plaintiffs allege they were injured by projectiles and tear gas while protesting. There is no allegation that Defendant Kroll deployed the projectiles or tear gas that allegedly injured Plaintiffs. There is no allegation that Defendant Kroll directed MPD

officers to deploy tear gas or a projectile (or use force on Plaintiffs). In fact, there is no allegation that Defendant Kroll was even on duty as a police officer at the time of the alleged injuries.  The Complaint should be dismissed because Plaintiffs "cannot prove any set of facts in support of the claim which would entitle [them] to relief." The facts alleged in the Complaint do not allow the court to infer more than the mere possibility of misconduct let alone the required standard that "the pleader is *entitled to relief*." *Iqbal*, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)) (emphasis added).

To survive a motion to dismiss, the pleading standard in Rule 8 requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id* 1949 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs' Complaint in this case fails to meet even the legally insufficient "unadorned, the defendant-unlawfully-harmed-me accusation"— instead, Plaintiffs essentially assert that Defendant Kroll is liable simply because he is the president of the union designated as the exclusive representative of Minneapolis police officers. The Amended Complaint fails to allege facts that, if proven, "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. 662.

Even assuming *arguendo* that Plaintiffs have met the Rule 8 threshold to survive a motion to dismiss, the allegations against Defendant Kroll fall squarely within the constitutional protections of the First Amendment - the same Constitutional Protection provided to all Plaintiffs listed in the Complaint. Plaintiffs ask this Court to create a cause of action under 42 U.S.C. §1983 that imposes financial liability for third party acts based solely upon the content of protected speech.  "When a law burdens such speech, the

Court applies 'exacting scrutiny,' upholding the restriction only if it is narrowly tailored to serve an overriding state interest." *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 334-335 (1995) citing *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 786 (1978). The United States Congress never intended to allow 42 U.S.C. § 1983 as a sword to slaughter the First Amendment. U.S.C.A. Const. Amend. 1.

Plaintiffs' twisting of 42 U.S.C. §1983 cannot pass any level of scrutiny, let alone the exacting scrutiny required in this content-based claim. Plaintiffs' claims against Defendant Kroll are based either upon the actions of others or upon the content of Defendant Kroll's protected speech—neither of which are valid causes of action. The Complaint against Defendant Kroll should be dismissed.

## I.   PLAINTIFFS HAVE FAILED TO ALLEGE A PLAUSIBLE CLAIM FOR RELIEF AGAINST DEFENDANT KROLL.

Defendant Kroll cannot be held liable for the actions of others, especially those that he does not directly supervise. Moreover, at the time of the alleged injuries, Defendant Kroll was a private citizen and not acting under color of state law. Defendant Kroll's speech, as President of the POFM, is afforded the highest rung of First Amendment protection for the content of his speech. Because Defendant Kroll (i) was not present when Plaintiffs allegedly sustained injuries; (ii) was not supervising Minneapolis Police Department Police Officers at the time of Plaintiffs' alleged injuries; and (iii) his speech is protected by the First Amendment, the motion to dismiss should be granted.

**A.      Defendant Kroll is not liable under 42 U.S.C. § 1983 because he was not acting under color of law.**

Plaintiffs' § 1983 claim fails as a matter of law because Defendant Kroll's alleged wrongdoing was in his role as President of POFM, a private actor, and not as a police officer. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was *committed by a person acting under color of state law*." *West v. Atkins*, 487 U.S. 42 (1988) (emphasis added).   "Acts of officers in the ambit of their personal pursuits are plainly excluded" from the scope of § 1983 liability. *Dossett v. First State Bank,* 399 F.3d 940, 949 (8th Cir. 2005) (alteration in original) (quoting *Screws v. United States,* 325 U.S. 91, 111 (1945)).

A defendant acts under color of state law only if he/she "acts or purports to act in the performance of official duties . . . ." *Johnson v. Phillips,* 664 F.3d 232,240 (8th Cir. 2011). "[A] public employee acts under color of law when he '[e]xercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id. at* 239–40   (quoting *West,* 487 U.S. at 49).   "[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Roe v. Humke,* 128 F.3d 1213, 1215 (8th Cir.1997) (internal quotation marks omitted).

To determine whether an official is acting under color of law, the Court "look[s] to see whether a sufficient nexus exists between the official's public position and the official's harmful conduct." *Ramirez–Peyro v. Holder,* 574 F.3d 893, 900 (8th Cir.2009).

"Absent any actual or purported relationship between the officer's conduct and his duties as a police officer, the officer cannot be acting under color of state law." *Roe,* 128 F.3d at 1216. "In determining whether a sufficient nexus exists in the context of a § 1983 claim brought against a police officer, the Court considers a number of factors, including whether the officer was on duty and in uniform, the motivation for the officer's actions, whether the officer had access to the plaintiff because of the officer's position, and whether the officer invoked his status or threatened to use his official authority in the future. *Magee v. Trusttees of Hamline University, Minn., et al.* 957 F.Supp. 2d 1047, 1055 (D. Minn. 2013) citing *Ramirez–Peyro,* 574 F.3d at 901.

### 1. Defendant Kroll and the POFM are private parties.

Labor unions are not state actors. *See Montgomery v. City of Ardmore* 365 F.3d 926 (10th Cir. 2004); *see also Magee*, 747 F.3d at 532. As President of the POFM, Defendant Kroll acts as a private party. The Second Amended Complaint makes it clear that Defendant Kroll's actions are in the scope of his private position as the President of POFM and *not* as a police officer acting under color of state law.

This Court dismissed a similar suit against Dave Titus, then the President of the St. Paul Police Federation and a St. Paul Police Officer. *Magee,* 957 F.Supp. 2d 1047. The plaintiff in *Magee* alleged that Titus violated her rights when he published a written response to an editorial written by the plaintiff. *Magee*, 957 F.Supp. 2d 1047. In his response, Titus identified himself as a St. Paul Police Officer and the President of the St. Paul Police Federation, questioned Magee's "fitness to teach" and stated "I hope

Professor Magee confines her race baiting and cop-hating to her newspaper submissions and keeps it out of the classroom." *Id.* Titus then contacted Hamline, allegedly with the intent to have Magee fired in retaliation for her critical editorial, and organized a boycott of Hamline University to encourage Hamline to fire Magee. *Id.*

This Court found those facts insufficient to show that Titus was acting under color of state law because Titus was not using his position as a police officer to influence others, rather he was using his position as St. Paul Police Federation President. *Id.* "Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." *Id* at 1056, quoting *Ottman v. City of Independence, Mo.,* 341 F.3d 751, 762 (8th Cir.2003). The Eighth Circuit affirmed dismissal. *Magee v. Trustees of Hamline University, Minn. et al.*, 747 F.3d 532 (8th Cir. 2014). Specifically, the Eighth Circuit held that Titus "was not acting 'under color of state law' when he published [the] editorial" and that the "federation's call for police department to boycott university did not constitute joint activity with state." *Id.* (internal citation omitted).

Like Titus, no facts can be plead here that Defendant Kroll was acting under color of law. As previously noted, Defendant Kroll works full time as the President of the Police Officers Federation of Minneapolis and does not perform law enforcement duties. See Kelly Aff. Ex. 1, p. 57. Like Titus, Defendant Kroll was not using his position as a police officer—he was not on duty, not in uniform, and had no contact with any of the

plaintiffs—rather all of his conduct was in the scope of his position as President of the POFM.

As the President of POFM, Defendant Kroll acts as a private party. The Amended Complaint makes it clear that Defendant Kroll's actions are in the scope of his position as the President of POFM rather than as a police officer. There are no allegations in the Complaint establishing even an inference of a nexus between Defendant Kroll's official conduct as a police officer acting under color of law and plaintiff's injuries. "[A] clear nexus must exist between the defendant's official conduct and the violation of the plaintiff's rights." *Ottoman*, 347 F.3d at 761-62. Defendant Kroll's actions were not "made possible by, or undertaken in, his position as a police officer. *Magee* 957 F.Supp.2d at 1057." "Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." *Id.* at 1056 (quoting *Ottman v. City of Independence, Mo.,* 341 F.3d 751, 762 (8th Cir. 2003)). Here, the facts alleged prove that Defendant Kroll's actions were made possible and undertaken solely in his private position as President of a labor union. Because Defendant Kroll did not act under color of state law, he cannot be liable under 42 U.S.C. § 1983 and the complaint should therefore be dismissed.

2.   Defendant Kroll's "outsized influence" does not create liability under 42 U.S.C. § 1983.

"Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law."

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) quoting *Pembaur v. Cincinnati, supra,* 475 U.S., at 483, 106 S.Ct., at 1300 (plurality opinion). Neither lieutenants within the MPD nor the elected officials of the POFM have authority to make policies for the City of Minneapolis or the MPD as a matter of law.  See MPD Policy 1-400.[2]

The Supreme Court has rejected an application of liability based upon "*de facto* authority", finding that "ad hoc searches for officials possessing such '*de facto'* authority would serve primarily to foster needless unpredictability in the application of § 1983." *Praprotnik*, 485 U.S. at 131. *Praprotnik* noted that the only way to impose liability based upon *de facto* authority would be "as a step towards overruling *Monell* and adopting the doctrine of *respondeat superior*." *Id.*  The Supreme Court has not overruled *Monell* nor has it adopted the doctrine of *respondeat superior. See also Lollie v. Johnson*, 2015 WL 3407931 (D. Minn. May 27, 2015) ("unwritten policy must be evaluated under the standards used to analyze the sufficiency of a *Monell* custom claim.").

It is clear from the Amended Complaint that Plaintiffs dislike Defendant Kroll and do not agree with the positions he takes as president of the POFM. Thankfully, disliking someone or their political views does not create a cause of action against that person. The Complaint should be dismissed because Plaintiffs cannot prove any set of facts in support of any claim which would entitle them to relief.

---

[2] Available at http://www2.minneapolismn.gov/police/policy/mpdpolicy_1-400_1-400, last visited July 17, 2020; see also Minneapolis City Charter § 7.3 (a) (" The Mayor has complete power over the establishment, maintenance, and command of the police department. The Mayor may make all rules and regulations and may promulgate and enforce general and special orders necessary to operating the police department.")

Plaintiffs' Amended Complaint alleges Defendant Kroll is an "unofficial policymaker," "his 'opinions' as [Federation] [P]resident have the practical effect of serving as policy guidance," and a "*de facto* policy maker." *See* Amended Complaint, pp. 19-20. However, Plaintiffs acknowledge that Kroll's actions are as a private citizen, the Federation President. Id. (Defendant Kroll's letter, as Federation President, to POFM members.) An email to Union members by its President is not policymaking nor a call to arms.  Rather, it is protected speech that is expected by all Union members from their elected Union Leadership. The letter speaks for itself, and a plain review of the email contradicts Plaintiffs' claim that it encouraged the use of gas munitions and less-lethal munitions as alleged in the Amended Complaint.  Compare Amended Complaint p. 20 with Defendant Kroll's Letter to Members.[3]  The letter clearly discusses the City's failed response to the riots that resulted in the first and only activation of the *entire* Minnesota National Guard.

Defendant Kroll's actions as POFM President do not create liability pursuant to 42 U.S.C. § 1983 and he should be dismissed.

**B.     Defendant Kroll was not present nor supervising any Minneapolis Police Officers at the time of Plaintiffs' alleged injuries.**

The Supreme Court has ruled that defendants "cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic." *Id* at 683. Because no set of facts can be established or alleged in good faith to prove that Defendant

---

[3] https://minnesota.cbslocal.com/2020/06/01/mpd-union-leader-releases-letter-to-officers-critical-of-minneapolis-leadership/

Kroll, himself, acted on account of a constitutionally protected characteristic, the complaint should be dismissed.

As a threshold matter, Plaintiffs do not, and cannot, plead that Defendant Kroll inflicted harm upon Plaintiffs because he was not present nor working as a Police Officer at the time Plaintiffs' sustained their alleged injuries. Because there is no allegation that Defendant Kroll used force against Plaintiffs and because he was not working as an MPD Lieutenant at the time of Plaintiffs' alleged injuries, Plaintiffs cannot plead any facts to prove that Defendant Kroll was supervising employees in the discharge of official duties.

The Complaint mentions Defendant Kroll just five times.  Defendant Kroll is identified in paragraph 9 as a Lieutenant of the Minneapolis Police Department and President of the POFM. *See* Amended Complaint p. 3. The next mention of Defendant Kroll is not until paragraph 103 which references Defendant Kroll in his official capacity. See Amended Complaint p. 18. The next reference is paragraph 111 which alleges that Defendant Kroll has a large influence over police culture which creates informal policy guidance. Id at 19. In the next paragraph, Plaintiff cites to Defendant Kroll's June 2 letter to POFM members. Id at 20. The final mention of Defendant Kroll is the following paragraph alleging that Defendant Kroll noted the size of the riot and that he encouraged authorization to use tools for officers to defend themselves.  Id. The June 2 letter speaks for itself.  All alleged conduct by Defendant Kroll are in his private role as President of the POFM.  None of the allegations involve Defendant Kroll acting as a police officer or as a supervisor of police officers.

15

As a matter of law, even if Defendant Kroll possessed supervisory authority, he cannot be liable for the conduct of a subordinate because "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at 676 (internal citation omitted) (emphasis in original). "A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties" *Id*., quoting *Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888). Defendant Kroll was not acting as a supervisor. The complaint should be dismissed.

      1.    <u>Plaintiffs named Defendant Kroll to attract attention and harass him.</u>

Defendant Kroll is not alleged to have done anything beyond his actions as the President of POFM. None of his alleged actions included an explicit or even implicit call for violence against any one or any entity. The remainder of the allegations are towards Defendants or State and Municipal Defendants. There are no facts pled nor any facts that can be pled to show that Defendant Kroll engaged in any act toward Plaintiffs which creates liability for Defendant Kroll. Plaintiffs' claims against Defendant Kroll do not go beyond mere averments or conclusory statements. The Complaint fails to allege any facts that support any claim against Defendant Kroll and it should be dismissed.

Plaintiffs named John Does 1-2, in their individual and official capacities, the City of Minneapolis, and Minneapolis Police Chief Medaria Arradondo, in his individual and official capacity, as Defendants in this case. Consequently, Plaintiffs color of law claims

are covered by all of the other named defendants. There is no benefit or necessity to name Defendant Kroll, especially considering the dearth of any factual allegations supporting their claims against him.   The only reason to name Defendant Kroll is to advance Plaintiffs' personal disdain towards him, to garner attention from the media, and/or to harass Defendant Kroll. There is no legal basis for the claims against Defendant Kroll and he should be dismissed. Defendant Kroll was not present nor was he supervising anyone who was present at the time of Plaintiffs' alleged injuries.   Because Plaintiffs cannot prove or even allege any facts that Defendant Kroll caused Plaintiffs' injuries, the claim against him must be dismissed.

## II. DEFENDANT KROLL'S SPEECH IS PROTECTED BY THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION.

This lawsuit strikes at the heart of free speech protections. "The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled" by the Supreme Court. *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) quoting *Roth v. United States*, 354 U.S. 476, 484 (1957). This constitutional safeguard, "'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) quoting *Roth v. United States*, 354 U.S. 476, 484 (1957). The Supreme Court has expressly held that "debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public

officials. *Id* at 270-271 citing *Terminiello v. Chicago*, 337 U.S. 1 (1949) and *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937).

The ACLU, a signatory to the complaint, recognizes the critical importance of free speech when it comes to persons who are not named Bob Kroll: "The First Amendment to the Constitution protects speech *no matter how offensive its content*." Speech on Campus[4] (emphasis added). Defendant Kroll's speech is protected by the United States Constitution and the complaint against him should be dismissed.

### A. Defendant Kroll's speech concerned a matter of significant public concern.

As the President of the POFM, Defendant Kroll is an outspoken advocate for the union and its members.  Simply because Plaintiffs disagree with his views or personally dislike him does not create a cause of action against him. This is particularly true when some of the speech at issue occurred *after* the third-party acts that caused Plaintiffs' alleged injuries. The letter referenced in the Amended Complaint was sent by Defendant Kroll, as POFM President, to POFM members. In it, Defendant Kroll voiced his support for POFM members in the face of protests and riots following the death of George Floyd. Defendant Kroll's letter unquestionably addressed a matter of significant public concern after the death of George Floyd and the protests and riots that followed.

Speech on matters of public concern is at the heart of the First Amendment's protection and, as the President of a Union, Defendant Kroll's speech is heavily protected. *Snyder v. Phelps*, 562 U.S. 443 (2011). When Unions engage in such speech,

---

[4] available at https://www.aclu.org/other/speech-campus (last visited July 17, 2020)

it "occupies the *highest rung of the hierarchy of First Amendment values*" and merits "*special protection*." *Janus* 138 S.Ct. 2448 quoting *Snyder*, 562 U.S. 443, 452 (2011) (emphasis added). Unions can, and do, speak out on controversial subjects including "climate change, the Confederacy, sexual orientation and gender identity, evolution, and minority religions." *Janus*, 138 S.Ct. at 2466. "These are sensitive political topics, and they are undoubtedly matters of profound 'value and concern to the public.' *Id.* quoting *Snyder,* 562 U.S. at 453.

The first four pages of Plaintiffs' Amended Complaint describe the matters of public concern that caused protests and media members to come to Minneapolis in droves. Amended Complaint, pp. 1-4. Law enforcement's actions in response to the violent protests and riots that rocked the Twin Cities and caused an unprecedented activation of the *entire* Minnesota National Guard by the Governor certainly is a matter of public concern.

Accordingly, here, like *Janus*, "the union speech at issue in this case is overwhelmingly of substantial public concern." 138 S.Ct. at 2447. Likewise, Defendant Kroll's commentary about the hard work that the members of POFM engaged in, which went unrecognized by elected officials in the City of Minneapolis, was, and is, of substantial public concern.

Defendant Kroll's protected speech is identified in paragraphs 111-113 of the complaint. Plaintiffs allege that Defendant Kroll has significant influence due to his position as *Federation President*. See Amended Complaint ¶111. This proves that

Defendant Kroll's speech was not on behalf of the City of Minneapolis or the Minneapolis Police Department.  "[I]f the union's speech is really the employer's speech, then the employer could dictate what the union says. Unions, we trust, would be appalled by such a suggestion."  *Janus v. American Federation of State, County, and Mun. Employees, Council 31* 138 S.Ct. 2448, 2475 (2018).

Plaintiffs do not allege nor can they reasonably allege that Defendant Kroll's speech falls within any of the extremely narrow exceptions to First Amendment protection such as defamation or incitement to violence. To summarize Plaintiffs' claim against Defendant Kroll: they do not like him or what he says.  Thankfully, disliking an individual does not create a legal cause of action. The First Amendment was enacted to expressly protect an individual's speech and is designed to preclude lawsuits such as this one. The constitutional protection does not turn upon "the truth, popularity, or social utility of the ideas and beliefs which are offered." *N.A.A.C.P. v. Button*, 371 U.S. 415, 445 (1963).  The speech Defendant Kroll engaged in—"the advocacy of a politically controversial viewpoint—is the essence of First Amendment expression." *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 347 (1995) citing *International Soc. for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, (1992); *Lovell v. City of Griffin,* 303 U.S. 444, (1938). Like *McIntyre*, the speech took place during a time with controversial actions by rioters in response to actions of POFM's members which "only strengthens the protection afforded to [Defendant Kroll's] expression: Urgent, important, and effective speech can be no less protected than impotent speech, lest the right to speak be relegated

to those instances when it is least needed." *Id* citing *Terminiello v. Chicago,* 337 U.S. 1, 4, (1949).

The Supreme Court has rejected similar lawsuits.  Plaintiffs ask this Court to create "a form of regulation that creates hazards to protected freedoms markedly greater than those that attend reliance upon the criminal law." *New York Times*, 376 U.S. at 278, quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).  "The fear of damage awards under a rule such as that invoked by the [Plaintiff] here may be markedly more inhibiting than the fear of prosecution under a criminal statute." *New York Times,* 376 U.S. at 277 citing *City of Chicago v. Tribune Co.,* 139 N.E. 86, 90 (Ill. 1923).

To allow this case to move forward would have a significant chilling effect on private citizens, Unions, and elected union officials from engaging in speech on matters of public concern.  The ironic outcome is that it would likely be turned against parties like Plaintiffs, as individuals who frequently participate in protests. The Constitution that protects Plaintiff Armstrong's ability to publicly refer to Defendant Kroll as "KKKroll"[5]; to advocate for a petition referring to Defendant Kroll as "violent and racist"[6], and calling

---

[5]   Nekima   Levy   Armstrong   Twitter,   August   18,   2020,   available   at https://twitter.com/nvlevy/status/1295595116665741318 (last visited August 18, 2020) (referring to Defendant Kroll as "KKKroll" and stating that Defendant Kroll supports "violence, abuse, [and] murder").

[6]   Nekima   Levy   Armstrong   Twitter,   August   18,   2020,   available   at https://twitter.com/nvlevy/status/1295594211757166592 (last accessed August 18, 2020) (stating "This clause is close to my heart – please sign" a petition calling for Defendant Kroll to resign from his elected union position and which refers to Defendant Kroll as "violent and racist").

for Defendant Kroll to resign from his elected union position[7] is the same Constitution that protects Defendant Kroll's speech. Contrary to Plaintiffs implied assertions, the First Amendment does not protect only that speech you agree with; rather, "[t]he First Amendment to the Constitution protects speech no matter how offensive its content." "Speech on Campus", American Civil Liberties Union, available at https://www.aclu.org/other/speech-campus (last accessed August 18, 2020).

Allowing this lawsuit to proceed against Defendant Kroll would decimate the protections of the First Amendment and create a deluge in litigation based solely on the content of a Defendant's speech. Plaintiffs have not cited to any Court that has interpreted 42 U.S.C. §1983 to create color of law liability based upon the content of a private citizen's speech. Such a claim turns the First Amendment upon its head.

The irony that this lawsuit comes from individuals who frequently protest, against Defendant Kroll based solely upon Defendant Kroll's protected speech cannot be lost. The very same Constitutional Clause that guarantees Plaintiffs the right to peacefully protest likewise protects Defendant Kroll's exercise of free speech. The case against Defendant Kroll should be dismissed.

## CONCLUSION

Plaintiffs' claims against Defendant Kroll do not withstand any level of scrutiny. Defendant Kroll was not acting under color of law at any time relevant to the Complaint.

---

[7] *See, e.g.* "'Bob Kroll has got to go': Calls grow for Minneapolis police union leader's resignation", MPR News, June 12, 2020, available at https://www.mprnews.org/story/2020/06/12/calls-for-mpd-union-leaders-resignation-grow-louder (Plaintiff Armstrong quoted as saying: "[E]nough is enough. Bob Kroll has got to go. And he's got to go now.").

Plaintiffs cannot prove that 42 U.S.C.  §1983 creates a content-based restriction that will somehow survive an exacting scrutiny analysis.  The United States Supreme Court has held that Union speech on matters of public concern receives the highest level of protection. *Janus* 138 S.Ct. 2448 quoting *Snyder*, 562 U.S. 443, 452 (2011).

Plaintiffs' bring the action against Defendant Kroll based upon their documented disdain for Defendant Kroll and  disagreement with the content of his speech.  To allow such a claim to go forward would destroy the bedrock protections of the First Amendment. The Complaint does not allege that Defendant Kroll was present at the time of Plaintiffs' alleged injuries nor that he held any role in law enforcement at the time of Plaintiffs' alleged injuries. Because Plaintiffs' claims against Defendant Kroll lack any factual basis, they should be dismissed.

Dated: September 24, 2020                    **KELLY & LEMMONS, P.A.**

/s/ Joseph A. Kelly
Joseph A. Kelly (#389356)
jkelly@kellyandlemmons.com
Kevin M. Beck (#389072)
kbeck@kellyandlemmons.com
2350 Wycliff Street, #200
St. Paul, MN 55114
(651) 224-3781
F: (651) 223-8019

*Attorneys for Defendant Minneapolis*
*Police Lieutenant Robert Kroll*

23