| | |
|---|---|
| Nekima Levy Armstrong, Marques Armstrong, Terry Hempfling, Rachel Clark, and Max Fraden,<br>**On behalf of themselves and other similarly situated individuals.** | Court File No. 20-cv-01645<br>(SRN-DTS) |
| Plaintiff, | |
| vs. | **MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS** |
| City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo *in his individual and official capacity*; Minneapolis Police Lieutenant Robert Kroll, *in his individual and official capacity*; Minnesota Department of Public Safety Commissioner John Harrington, *in his individual and official capacity*, Minnesota State Patrol Colonel Matthew Langer, *in his individual and official capacity*; and John Does 1-2, *in their individual and official capacities*. | |
| Defendants. | |

## INTRODUCTION

Defendants Commissioner John Harrington and Colonel Matthew Langer, the respective leaders of the Minnesota Department of Public Safety and the Minnesota State Patrol ("State Defendants"), move to dismiss the First Amended Complaint filed by Plaintiffs Nekima Levy Armstrong ("Levy Armstrong"), Marques Armstrong ("Armstrong"), Terry Hempfling ("Hempfling"), Rachel Clark ("Clark"), and Max Fraden ("Fraden").  Plaintiffs' section 1983 claims against State Defendants fail as a matter of law for multiple reasons.

The Amended Complaint is now the second attempt by Plaintiffs to construct claims against State Defendants without any plausible factual allegations to support such claims. Indeed, the Amended Complaint contains a mere three paragraphs with specific allegations against Harrington and Landers. It therefore fails to state a claim upon which relief could be granted. Additionally, the State Defendants have qualified immunity and Plaintiffs lack of standing to proceed with a purported class action complaint. For these reasons, all claims against State Defendants must be dismissed.

## FACTUAL ALLEGATIONS[1]

Plaintiffs are Minneapolis residents who were present during the civil unrest that arose in response to the murder of George Floyd on May 25, 2020. (Am. Compl. ¶¶ 1-5, 15, 19, 25, 43, 45, 52, 54, 55, 75, 80, 83, 86, 88.) The vast majority of the allegations in the Amended Complaint do not relate to State Defendants. (*See*, *generally*, Am. Compl.) The only Plaintiff who alleges any specific acts as to State entities is Fraden. (Am. Compl. ¶¶ 74-102.) Indeed the other Plaintiffs' allegations are silent on any alleged act by a State Defendant. (Am. Compl. ¶¶ 18-73.)

Between May 26 and May 29, Fraden attended multiple protests throughout the city of Minneapolis. (Am. Compl. ¶¶ 75-86.) During those days he had interactions with members of the Minneapolis Police Department ("MPD"). (Am. Compl. ¶¶ 75-85.) He describes no interactions with the Minnesota State Patrol ("MSP") over the same time frame. (*Id.*)

---

[1] The facts in this section are drawn from the Amended Complaint and are accepted as true for the purposes of this motion to dismiss only. *Kohl v. Casson*, 5 F.3d 1141, 1148 (8th Cir. 1993).

On May 30, Fraden alleges that he attended a protest at Bobby & Steve's Auto World on South Washington Avenue in downtown Minneapolis, near Interstate 35W. (Am. Compl. ¶ 88.) After curfew, MPD and MSP officers arrived at the scene of the protest. (Am. Compl. ¶ 90.) Both the MPD and MSP allegedly began firing less-lethal munitions at the group of protesters. (*Id.*) Many of the protesters began to run away and scatter as a result. (*Id.*) MPD and MSP surrounded protestors and began to make arrests. (Am. Compl. ¶ 94.) Fraden did not hear any law enforcement officer issue a warning or order to disperse before using tear gas. (Am. Compl. ¶ 98.) Fraden alleges he was arrested by an MSP officer and that the charges against him were later dismissed. (Am. Compl. ¶¶ 99, 100.)

Unlike the other Plaintiffs who allege acts upon personal knowledge, Fraden also makes a number of allegations "upon information and belief." These allegations include, that MSP fired tear gas, (Am. Compl. ¶ 91), that MSP sprayed tear gas at Fraden, (Am. Compl. ¶ 93), that MSP and MPD sprayed tear gas at protesters after they were surrounded, (Am. Compl. ¶ 95), and that Fraden was again struck by tear gas fired by MSP. (Am. Compl. ¶ 96.)

Fraden, along with the remaining Plaintiffs, also alleges a series of "Municipal Allegations"[2] that include State Defendants. Plaintiffs allege that MPD and MSP have a custom or policy of deploying chemical irritants and less-lethal munitions against

---

[2] Municipalities and the State of Minnesota are distinct legal entities. Moreover, as discussed *infra*, section 1983 and the Eleventh Amendment are applied to state and municipal defendants very differently.

protesters. (Am. Compl. ¶ 106.) That they failed to supervise and train their employees and agents with respect to constitutionally protected activity which amounts to a deliberate indifference to the rights of Plaintiffs and Plaintiff class members. (Am. Compl. ¶ 110.) That MSP without warning fired less-lethal munitions, including at least 40 mm crushable foam rounds, at vehicles and people outside past the statewide curfew. (Am. Compl. ¶ 115.) And that MSP has a custom or policy of failing to provide warnings and/or dispersal orders before deploying crowd control weapons, including use of chemical agents and injurious, less-lethal munitions, against protesters. (Am. Compl. ¶ 118.)

Plaintiffs present no factual allegations to support these legal policy/custom-based claims against MSP in their Amended Complaint. They cite no MSP policies or procedure. (*See e.g.* Am. Compl. ¶¶ 121, 123-31 (describing MPD policies).) Indeed the only factual allegation regarding MSP of a custom or policy is a claim, again "upon information and belief," that in July 2016, MSP deployed chemical irritants and less-lethal munitions on crowds of protesters gathered on Interstate 94 to protest the MPD[3] shooting of Philando Castile. (Am. Compl. ¶ 109.)

Plaintiffs Levy Armstrong, Armstrong, Hempfling, and Clark filed their initial Complaint in this matter on July 28, 2020. (ECF 1.) After a meet and confer with Plaintiffs' counsel identifying multiple deficiencies with the Complaint including that these Plaintiffs lacked standing to bring an action against State Defendants, Plaintiffs filed their Amended Complaint adding Fraden as a Plaintiff. (ECF 16.)

---

[3] Philando Castile was not shot by an MPD officer.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim must be granted where the complaint does not allege "enough facts to state a claim to relief that is plausible on its face" rather than merely "conceivable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss, courts must accept a plaintiff's specific factual allegations, but not his or her legal conclusions. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010). Detailed factual allegations are not necessary, but it is not sufficient to make bare assertions that are "'devoid of further factual enhancement.'" *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (per curiam) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).). In addition, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss a claim for lack of subject matter jurisdiction. If subject-matter jurisdiction is lacking, the Court must dismiss the action. *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).

## ARGUMENT

The Court should dismiss Plaintiffs' Amended Complaint in its entirety against State Defendants. First, Plaintiffs cannot bring official-capacity claims against State Defendants. Second, Plaintiffs do not state a claim against State Defendants in their individual capacities. Third, State Defendants in their individual capacities are entitled to qualified immunity. Finally, most of the named Plaintiffs lack standing to bring claims against State Defendants. For these reasons, dismissal with prejudice is appropriate

## I.    Plaintiff's Official Capacity Claims against State Defendants Fail.

A state is immune from suit in federal court unless the state has consented to be sued or Congress has expressly abrogated the state's immunity.  U.S. Const. amend. XI; *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Federal courts lack jurisdiction over claims against un-consenting states.  *Pennhurst*, 465 U.S. at 121; *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968-69 (8th Cir. 2000).  As a result, Plaintiffs' official-capacity claims (both for damages and injunctive relief) fail as a matter of law.

### A.    Plaintiffs Cannot Seek Damages on Official Capacity Claims.

Minnesota has not waived its Eleventh Amendment immunity from suit in federal court.  *See DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985).  It is well-settled law that the Eleventh Amendment bars section 1983 damages claims against state officials in their official capacities.  *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Moreover, such claims are barred because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).  Therefore, Plaintiffs' official-capacity claims seeking damages from State Defendants must be dismissed.  (*See* Am. Compl. at p. 33.)

### B.    Plaintiffs Lack Standing for Prospective Declaratory Relief.

While Plaintiffs cannot seek damages from State Defendants in connection with their section 1983 claims, under *Ex Parte Young*, 209 U.S. 123 (1908), a plaintiff may bring official-capacity claims insofar as those claims seek prospective declaratory or

injunctive relief in order to end a continuing violation of federal law. *281 Care Committee v. Arneson*, 638 F.3d 621, 32 (8th Cir. 2011). However, all the named Plaintiffs lack standing to bring such a claim for relief against State Defendants, and therefore their official-capacity section 1983 claims must be dismissed against State Defendants in their entirety.

To have Article III standing to seek prospective relief, a plaintiff "must show [he is] likely to suffer future injury that will be remedied by the relief sought." *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006). The same is true of declaratory relief. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Frost v. Sioux City, Iowa*, 920 F.3d 1158, 1162 (8th Cir. 2019).

The imminence of future harm requirement is essential because it ensures "that the alleged injury is not too speculative for Article III purposes – that the injury is *certainly* impending." *Clapper v. Amnesty Intern'l USA*, 568 U.S. 398, 409 (2013) (quotation omitted). Allegations of merely possible future injury are not sufficient. *Id.* And, "past exposure" to allegedly wrongful conduct is also not sufficient to confer standing for prospective relief. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *see also Harmon v. City of Kansas City, Mo.*, 197 F.3d 321, 327 (8th Cir. 1999) ("The mere fact that injurious activity took place in the past does nothing to convey standing to seek injunctive relief against future constitutional violations.").

Plaintiffs cannot show a "real and immediate threat" of injury by State Defendants in the future. The only incident of alleged unconstitutional conduct took place one time and is unlikely to be repeated. This incident occurred during a period of unprecedented

civil unrest in late May and early June 2020. (Am. Compl. ¶¶ 18-103.) Plaintiffs have

identified no alleged incidents of MSP improperly using chemical irritants since May 30.

(*See, generally*, Am. Compl.)

Moreover, the Amended Complaint contains only one other allegation, plead

"**upon information and belief,**" that MSP used chemical irritants, on protestors gathered

on Interstate I-35W in 2016.[4] (Am. Compl. ¶ 109 (emphasis added).) Notably, Plaintiffs

do not allege that MSP failed to give a dispersal warning in that incident. (*Id.*)[5] And

more importantly, as this Court is well-aware, pleading "on information and belief,

without more, is insufficient to survive a motion to dismiss for failure to state a claim."

*Kampschroer v. Anoka Cty.*, 57 F. Supp. 3d 1124, 1143 (D. Minn. 2014); *see also Jones*

*v. Douglas Cty, Sheriff's Dept.*, 915 F.3d 498, 500 (8th Cir. 2018) (holding threadbare

allegations based upon information and belief are not sufficient to state a claim under

Rule 12).

One alleged, isolated incident from four years ago on an interstate highway with

different factual predicates and single, alleged incident occurring during the

unprecedented civil unrest in Minneapolis is insufficient to demonstrate that Plaintiffs run

a risk of certain future injury – particularly where the 2016 incident bears none of the

same factual predicates as those identified in the Amended Complaint. Further proving

---

[4] Unlike the peaceful protesting alleged in the Amended Complaint, it is illegal for
pedestrians to gather on interstate highways. Minn. Admin. R. § 8810.0050. Protesting
on interstate highways is particularly dangerous as evidence by the nearly avoided
tragedy when the tanker truck narrowly avoided protesters on the Interstate.

[5] It does not appear that Plaintiffs are challenging the use of chemical irritants *per se*, but
rather their use in the absence of a dispersal order.

this point, the civil unrest has greatly diminished. Plaintiffs therefore cannot plausibly allege that they will be "again wronged in a similar way" by State Defendants. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

The Supreme Court's decision in *City of Los Angeles v. Lyons* is instructive. In that case, a plaintiff who had been placed in a chokehold when he was stopped by police sought injunctive relief prohibiting the police from using chokeholds. 461 U.S. at 97-98. The Court found that Lyons lacked standing to seek the injunction because it was no more than speculation to assert that Lyons would be injured again by the police. *Id.* at 105-09 (stating that "[i]n order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either (1) that *all* police officers in Los Angeles *always* choke any citizen with home they happen to have an encounter . . . or, (2) that the City ordered and authorized police officers to act in such manner").

Like in *Lyons*, here it is conjectural to presume that (1) a similar level of unrest will occur in the Twin Cities again, resulting in significant law enforcement presence; (2) MSP will be called upon to assist local law enforcement in trying to contain the unrest;[6] (3) Fraden will choose to go to the scenes of unrest to protest; and (4) troopers will purposefully and knowingly arrest and spray with chemical irritants despite Fraden being

---

[6] *See* Minn. Stat. § 299D.03, subd. 1(8) (providing that MSP officers only "cooperat[e]" with local law enforcement officers when specifically instructed to do so).

law-abiding.[7] *See id.* (providing that threat of injury must be "real and immediate, not conjectural or hypothetical"). Such speculation regarding a possibility of future harm is woefully insufficient to establish that Plaintiffs face an imminent injury. Therefore, Plaintiffs lack standing to bring a claim for prospective injunctive relief. *See, e.g.*, *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) (concluding on Rule 12 motion that protesters lacked standing to seek injunctive relief regarding unspecified, future protests because of conjectural nature of future harm); *Pease v. Gore*, Case No. 18-cv-01062, 2018 WL 4951957 (S.D. Cal. Oct. 12, 2018) (same). The Court should dismiss Plaintiffs' official capacity claims with prejudice.

## II. Plaintiffs Have Failed To Plead An Actionable Individual Capacity Claim Against State Defendants.

Plaintiffs also bring individual capacity claims against State Defendants, but these claims similarly fail as a matter of law. As a threshold matter, the allegations against State Defendants are pleaded explicitly "in their official capacities." (Am. Compl. ¶ 103.) Even were that not the case, such claims fail because section 1983 does not recognize a theory of vicarious liability. There are no factual allegations concerning Commissioner John Harrington or Colonel Matthew Langer to support their personal involvement in any constitutional violation such that they can be held personally liable. Regardless, any such claim fails under the doctrine of qualified immunity. For these reasons, all individual capacity claims must be dismissed.

---

[7] Fraden does not plead he was law abiding and, in fact, was in violation of the curfew imposed by the Governor. *See* Executive Order 20-65.

## A. Plaintiffs Individual Capacity Claim Fails To Allege Personal Involvement by State Defendants.

First, and fundamentally, Plaintiffs' individual-capacity claims fail against State Defendants because there are no allegations in the Amended Complaint that they acted in their individual capacities. There are, in total, three paragraphs in the Amended Complaint that refer specifically to Defendants Harrington and Langer:

> 10.    Defendant John Harrington is the Minnesota Commissioner of Public Safety with supervisory responsibility over Colonel Matthew Langer and the Minnesota State Patrol. Commissioner Harrington is a Minnesota resident.

> 11.    Defendant Colonel Matthew Langer commands the Minnesota State Patrol ("MSP"). Colonel Langer is a Minnesota resident.

> . . .

> 103.    The City of Minneapolis, Minneapolis Chief of Police Medaria Arradondo, Minneapolis Police Lieutenant Robert Kroll, **Minnesota Department of Public Safety Commissioner John Harrington, and MSP Colonel Matthew Langer, in their official capacities** (collectively the "State and Municipal Defendants") each have policies and customs of violating the constitutional rights of individuals who are peacefully protesting.

(Am. Compl. ¶¶ 10, 11, 103 (emphasis added).) None of these allegations relate to State Defendants in an individual capacity. And the only non-jurisdictional allegation related to them is made explicitly and solely in their official capacity. When a complaint is silent as to the capacity in which a state defendant is sued, it is presumed to only be in his or her official capacity. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). Here, where Plaintiffs affirmatively plead only official capacity claims, they are bound by their pleadings. The case caption, which is the only place where individual capacity claims are plead, is not a pleading.

Indeed, there can be no individual capacity claims against State Defendants because the Amended Complaint is lacking any allegations linking them to Plaintiffs' alleged injuries. Under section 1983, a government official is only responsible for his own misconduct. *Iqbal*, 556 U.S. at 677; *see also Muick v. Reno*, 83 F. App'x 851, 853 (8th Cir. 2003) ("[W]e agree with the district court that Muick's claims against Reno, Hawk-Sawyer, Thompson, and White were improperly based on these defendants' supervisory roles."). Additionally, vicarious liability does not apply to section 1983 claims. *Kulow v. Nix*, 28 F.3d 855, 858 (8th Cir. 1994). Rather, section 1983 "requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

As noted above, the facts pleaded regarding State Defendants are sparse. Plaintiffs plead merely that Commissioner Harrington has "supervisory responsibility over Colonel Matthew Langer and the Minnesota State Patrol" and that they are both State residents. (Am. Compl. ¶¶ 10, 11.) That is it. There are no claims that they played any role whatsoever in the factual matters that underlie Plaintiffs' claims. Silence.

Instead, the Amended Complaint merely states in conclusory fashion that all of the defendants "in their official capacities" have non-specified policies and customs somehow violating the constitutional rights of individuals who are peacefully protesting. (*Id.* ¶ 103.) But, such broad generalizations are insufficient to state a claim against the individual State Defendants.

While unclear, it appears that Plaintiffs believe that a *Monell* claim may be asserted against State Defendants, but such claims only can be asserted against

*municipalities* under longstanding case law.[8]  In *Monell v. Dep't of Social Servs. of City of New York*, the Supreme Court held that municipalities could be held liable under section 1983 if their custom or policy was the "moving force" behind a prior constitutional violation.  436 U.S. 658, 694 (1978).  *Monell* liability simply does not apply to the State or to individual-capacity claims.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (holding that *Monell* is not applicable to "States or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes."); *Steed v. Mo. State Highway Patrol*, Case No. 4:17-cv-1440, 2019 WL 130282, at *2 (E.D. Mo. Jan. 8, 2019) (dismissing individual-capacity *Monell* claims because "[a]s state officials, neither [of the named defendants] is subject to *Monell* liability."); *Bird v. State Dep't of Pub. Safety*, 375 N.W.2d 36, 43 (Minn. Ct. App. 1985) ("[W]e hold that the Department of Public Safety itself is not a 'person' which may be sued under section 1983.").[9]  Therefore, to the extent Plaintiffs bring claims based on State Defendants' alleged policies or practices, they are improper *Monell* claims that must be dismissed.

## B. Plaintiffs Have Failed To Adequately Plead A Failure To Train Or Supervise Claim Against State Defendants In Their Individual Capacities.

Plaintiffs attempt to circumvent their inability to allege personal involvement by contending that State Defendants somehow failed to train or supervise their subordinates.

---

[8] Plaintiffs' causes of action appear to focus almost exclusively on an alleged failure to train and/or supervise.  (Am. Compl. ¶¶ 157-82.)

[9] Even assuming *arguendo* that a *Monell* claim could be brought against an individual, State Defendants are entitled to qualified immunity because it has not been clearly established that such a claim can be brought against a State official.  *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  *See infra* at II.D (addressing qualified immunity).

(Am. Compl. ¶¶ 110, 114, 134, 147.) But, Plaintiffs' broad and generalized claim for failure to train once again appears to be an improper extension of *Monell* liability, rather than an individual-capacity claim. *See Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018); *see also Long v. Hannigan*, 990 F.2d 1258, at *1 (9th Cir. 1993) (dismissing section 1983 failure to train claim against State official because "[s]uch a failure is actionable against *municipal* officials in limited circumstances under the doctrine enunciated in *Monell*"); *Scott v. Michigan*, 173 F. Supp. 2d 708, 714 (E.D. Mich. 2001) (holding that theories of municipal liability, namely failure to train or supervise, have no application against State Defendants).

Regardless, Plaintiff's failure-to-train claim against the individual State Defendants fails as a matter of law. Under section 1983, a supervising officer can be held personally liable for a subordinate officer's conduct "if his failure to train or supervise the offending actor caused the deprivation." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1031 (8th Cir. 2012). Failure to supervise and failure to train claims are governed by the same analysis. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998). Plaintiffs must allege more than a generalized failure to train or supervise. To proceed with such a claim, a plaintiff must plead facts suggesting that the individual named supervisors were aware of, but failed to correct a pattern of unconstitutional conduct by their subordinates, or that they were aware their training practices were inadequate. *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010). Furthermore, a section 1983 claim based on a failure to train or supervise theory requires a showing of deliberate indifference, a stringent standard of fault. *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

A single previous incident does not generally satisfy the burden of deliberate indifference. *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988). "To impose supervisory liability, other misconduct must be very similar to the misconduct giving rise to liability." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

In this case, Plaintiffs do not even attempt to plead facts plausibly showing deliberate indifference on the part of the individual State Defendants. The Amended Complaint is devoid of any specific allegations about how the training or supervision of the State Patrol by the State Defendants was deficient. In comparison to the more specific alleged training deficiencies raised against MPD (*see*, *generally*, ¶¶ 121-41), the Amended Complaint contains no specific allegations about how the State Patrol's training or supervision was insufficient. And, a plaintiff must plausibly plead a particular deficiency in the training. *See Birkeland as Trustee for Birkeland v. Jorgenson*, Civ. No. 17-1149, 2019 WL 1936736, at *10 (D. Minn. May 1, 2019), *reversed in part on other grounds*, 2020 WL 4876743 (8th Cir. 2020). Again, the Amended Complaint is silent as to this requirement.

Furthermore, Plaintiffs cannot plead and have not pleaded that the allegedly inadequate training was so obviously likely to lead to a constitutional violation that State Defendants were deliberately indifferent for failing to do more or different training. *See Ambrose v. Young*, 474 F.3d 1070, 1079-80 (8th Cir. 2007); *Livers v. Schenck*, 700 F.3d

340, 355-36 (8th Cir. 2012). Indeed, rather than being tasked with general law enforcement duties in a jurisdiction, MSP is primarily tasked with enforcing the law relating to the use of trunk highways. Minn. Stat. § 299D.03, subd. 1(b). In light of the fact that MSP is principally tasked with monitoring traffic, any assertion that it was somehow obvious that MSP needed additional training on the treatment of protesters during times of intense, chaotic civil unrest is not plausible.

It is important to note that Plaintiffs attempt to plead deliberate indifference primarily by reference to the single incident at issue here, not prior conduct that could provide previous notice of significant training inadequacies. Specifically, Plaintiffs allege a single incident involving MSP occurring once over a week of unprecedented civil unrest. Outside of this tumultuous time period, which is the subject of the present lawsuit, Plaintiffs allege only one instance of allegedly unconstitutional treatment, presumably involving different officers and without allegations of failure to given notice of intent to use chemical irritants, which is not a sufficient basis to assign supervisor liability as a matter of law. *See, e.g.*, *Lenz*, 490 F.3d at 995-96 (holding one past incident of substantiated excessive force and "several" other uncorroborated complaints of excessive force by particular officers insufficient to assign supervisor liability).[10]

Because Plaintiffs' section 1983 claims are based merely on conclusory allegations that State Defendants improperly trained or supervised troopers, Plaintiffs have failed to state individual-capacity claims as a matter of law and their section 1983

---

[10] The allegation is further deficient because it is made only upon information and belief. *Kampschroer*, 57 F. Supp. 3d at 1143.

claims must be dismissed with prejudice.  *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming Rule 12 dismissal of failure to supervise and train claim because plaintiff "fail[ed] to provide facts in his complaint to support his assertion that [the defendant] adopted deficient supervision and training practices with deliberate indifference to the constitutional rights of others, and that these training practices were the product of the [defendant's] deliberate and conscious choices").

### C.    Plaintiffs Have Failed To State A Procedural Due Process Claim.

Plaintiffs' section 1983 procedural due process claim under the Fourteenth Amendments fails as a matter of law as duplicative.  This claim is based on allegations that MSP officers deployed chemical agents and nonlethal projectiles without providing a warning and an opportunity to disperse and State Defendants failed to train and supervise their subordinates.  (Am. Compl. ¶¶ 178, 179.)  But, these are the same allegations supporting Plaintiffs' other claims, and as a result, the procedural due process claim is duplicative.

Duplicative claims can and should be dismissed for this reason alone, as many courts have done.  *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975) ("The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases."); *Bostrom v. N.J. Div. of Youth & Family Servs.*, 969 F. Supp. 2d 393, 415 (D.N.J. 2013) ("Plaintiffs have not alleged that they were deprived [of] a liberty or property interests which is not already address by Plaintiffs' First and Fourth Amendment claims.  If the court were to find that

the Plaintiffs have established a deprivation of liberty on these facts, then all unreasonable searches would constitute procedural due process claims. This would be impractical and duplicative."); *Osuna v. City of New York*, Case No. 08-Civ-4759, 2009 WL 2356424 at *6 (S.D.N.Y. July 30, 2009). (*See* Am. Compl. ¶¶ 246-308.)

Because Plaintiffs' procedural due process claim is properly analyzed with the specific provisions of the First and Fourteenth Amendments, the Court should dismiss Plaintiffs' procedural due process claim as duplicative.

### D. State Defendants Are Entitled To Qualified Immunity.

Even if Plaintiff had pleaded facts pertaining to the State Defendants in their individual capacities, the claims would still fail under the doctrine of qualified immunity. "Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A court considers whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction." *Id.* The right must be sufficiently defined so that a reasonable official understands what he does violates the right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Qualified immunity is not merely a defense to liability, but rather provides immunity from suit. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (internal quotation marks omitted). The immunity is intended to give government officials "ample room for

mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* at 229 (internal quotation marks omitted). This leeway for reasonable error exists so that officials are not incentivized to err on the side of caution for fear of being sued. *Id.* Qualified immunity questions should be resolved "at the earliest possible stage in litigation." *Payne v. Britten*, 749 F.3d 697, 701 (8th Cir. 2014) (quotation omitted). Dismissal under Rule 12(b)(6) is appropriate if defendants "are entitled to qualified immunity on the face of the complaint." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (internal quotation marks and citation omitted).

Qualified immunity for a supervisory liability claim requires a two-part test. Specifically, a supervisor with no direct participation in a constitutional violation who is sued for failure to train or supervise is entitled to qualified immunity unless a plaintiff can establish that the supervisor "(1) received notice of a pattern of unconstitutional acts committed by a subordinate and (2) was deliberately indifferent to or authorized those acts." *S.M.*, 808 F.3d at 340. "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *Id.* (quotation omitted). The prior conduct must be "very similar" to the conduct giving rise to liability in order to impose supervisory liability. *Id.* Qualified immunity requires an individualized analysis of each officer's alleged conduct because a government officer is only personally liable for his own misconduct. *Id.* State Defendants are entitled to qualified immunity unless they "had notice of a pattern of conduct that was sufficiently egregious in nature." *Id.*

Plaintiffs' one allegation that State Defendants were on notice of a pattern of allegedly improper arrests based on one prior incident pleaded "upon information and belief" is not sufficient. *See Livers*, 700 F.3d at 357 (finding supervisory liability allegations that were vague, speculative, and mere assertions were "not a basis for denying qualified immunity"); *Lenz*, 490 F.3d at 995-96 (holding that a "single incident or series of isolated incidents" is usually insufficient to assign supervisory liability"); *Doe v. Gooden*, 214 F.3d 952, 956 (8th Cir. 2000) (finding that where supervisors knew of a teacher's repeated verbal abuse of students and two incidents of physical abuse, this was not sufficient to establish notice of a pattern of unconstitutional acts); *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (two complaints about particular officer and "rumors" that did not implicate a particular officer were insufficient to establish deliberate indifference); *Jones v. Custer Cty.*, Case No. 8:17CV394, 2018 WL 2050568, at *8 (D. Neb. Apr. 26, 2018) (dismissing section 1983 claim on Rule 12 motion because allegation of one prior instance of alleged unconstitutional conduct failed to provide sufficient basis upon which to assign supervisory liability), *aff'd*, 784 F. App'x 976, 976 (8th Cir. 2019).

Indeed, Plaintiffs here are alleging that the 2016 incident in which unnamed officers deployed chemical irritants and non-lethal munitions put the State Defendants on notice that *all* troopers may violate the constitutional rights of protestors. The facts are not even remotely similar because in no situation do protestors have a "right" to assemble on an interstate highway. (Am. Compl. ¶ 109.) Nor is there any allegation that MSP failed to provide notice before deploying chemical irritants in 2016. Such generalized

allegations are insufficient to demonstrate that State Defendants had notice of a pattern of unconstitutional acts.

Additionally, State Defendants are entitled to qualified immunity because Plaintiffs have failed to plead that State Defendants were personally deliberately indifferent. As explained above, *supra* Parts II.A & B, Plaintiffs have failed to plead any facts supporting their contention that State Defendants were personally deliberately indifferent to the risk of violation of protestors' rights by each and every trooper. This is particularly true because Plaintiffs have not identified any specific way in which MSP's training or supervision was deficient and because the allegations regarding State Defendants are essentially nonexistent. (*See, generally*, Am. Compl.)

Finally, State Defendants are entitled to qualified immunity as to the underlying use of chemical irritants because there is no indication the alleged constitutional violation was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted). "To overcome qualified immunity, a plaintiff must be able to prove that every reasonable official would have understood that what he is doing violates a constitutional right . . . and that the constitutional question was beyond debate." *Story v. Foote*, 782 F.3d 968, 970 (8th Cir. 2015) (internal quotation marks and citation omitted). Such law must be "dictated by controlling authority or a robust consensus of cases of persuasive authority." *D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (internal quotation marks and citations omitted). Neither the 2016 incident nor any other law clearly established the use of chemical irritants for crowd control purposes was a clearly

established constitutional violation. Therefore, State Defendants are entitled to qualified immunity and the claims against them must be dismissed.

### III. Levy Armstrong, Armstrong, Hempfling, and Clark Lack Standing to Bring Claims against State Defendants.

Levy Armstrong, Armstrong, Hempfling, and Clark lack standing to bring claims against State Defendants because they do not allege that State Defendants injured them. (Am. Compl. ¶¶ 18-73.) Their claims against State Defendants must therefore be dismissed.

Standing requires that (1) a plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In this case, because Levy Armstrong, Armstrong, Hempfling, and Clark do not allege that they were injured by State Defendants, they lack standing under well-established case law. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (holding that section 1983 claims failed because plaintiff did not allege that public official was involved in or had direct responsibility for incidents that caused injury to plaintiff). The mere fact that these individual plaintiffs may have been harmed by MPD does not give them standing to bring claims against State Defendants. *See Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("[A] plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, *although similar*, to which he has not been subject." (emphasis added).)

Furthermore, because Levy Armstrong, Armstrong, Hempfling, and Clark lack standing to bring claims against State Defendants, they cannot serve as class representatives. *See, e.g.*, *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 462 (9th Cir. 1973) (holding that a plaintiff "cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury"); *In re Intel Securities Litig.*, 89 F.R.D. 104, 119 (N.D. Cal. 1981) ("[C]lass treatment is not proper unless each plaintiff class representative has a cause of action against each defendant, even though the plaintiffs were all injured by a method of dealing common to all defendants."); *Herlihy v. Ply-Gem Indus., Inc.*, 752 F. Supp. 1282, 1291 (D. Md. 1990) (dismissing putative class action because "each plaintiff has not and cannot allege an injury arising from the conduct of each and every defendant"); 1 J. McLaughlin, Class Actions § 4:28 (16th ed. 2019) ("In a multi-defendant case, a putative class representative must allege that he or she has been injured by the conduct of each defendant to establish standing."). The claims of Levy Armstrong, Armstrong, Hempfling, and Clark must therefore all be dismissed as to State Defendants for lack of standing.

## CONCLUSION

For the foregoing reasons, State Defendants request that all claims against them be dismissed with prejudice.

### *SIGNATURE ON FOLLOWING PAGE*

Dated:  September 28, 2020

Respectfully Submitted,

KEITH ELLISON
Attorney General
State of Minnesota


s/Joseph David Weiner
JOSEPH DAVID WEINER
(#0389181)

JULIANNA F. PASSE (#0397317)
Assistant Attorneys General

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1189 (Voice)
(651) 282-5832 (Fax)
kathryn.landrum@ag.state.mn.us
julianna.passe@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS
MINNESOTA DEPARTMENT OF PUBLIC
SAFETY COMMISSIONER JOHN
HARRINGTON AND MINNESOTA STATE
PATROL COLONEL MATTHEW LANGER

|#4768623-v1