UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Nekima Levy Armstrong, Marques
Armstrong, Terry Hempfling, and Rachel
Clark, *on behalf of themselves and
similarly situated individuals,*

Plaintiffs,

vs.

City of Minneapolis, Minnesota Chief of
Police Medaria Arradondo, *in his
individual and official capacity*;
Minneapolis Police Lieutenant Robert
Kroll, *in his individual and official
capacity*; Minnesota Department of Public
Safety Commissioner John Harrington, *in
his individual and official capacity*;
Minnesota State Patrol Colonel Matthew
Langer, *in his individual and official
capacity*; and John Does 1-2, *in their
individual and official capacities,*

Defendants.

Case No. 20-cv-01645 (SRN/DTS)

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS
CITY OF MINNEAPOLIS AND
MEDARIA ARRADONDO**

---

Plaintiffs allege that they, along with other protestors, were subjected to chemical

irritants or less-lethal projectiles without warning by unnamed John Doe Minneapolis

Police Department ("MPD") officers on four days in late May 2020. The City of

Minneapolis and Medaria Arradondo (collectively "City Defendants") cannot be held

liable merely because the John Does may be employed by the MPD. The City

Defendants may only be held liable for their own conduct. Plaintiffs' amended

complaint, however, fails to plead sufficient facts to hold the City Defendants liable

under any of their express claims or to hold the City Defendants liable under any unpled *Monell* claim. Therefore, the City Defendants respectfully move the Court to dismiss the City Defendants from this lawsuit.

## FACTS

The City Defendants accept as true the amended complaint's allegations solely for the purpose of this motion.

## I.     ALEGED USES OF FORCE AGAINST PROTESTORS

### A.     May 26, 2020, to May 31, 2020, Incidents

Thousands of protestors gathered in Minneapolis to protest the death of George Floyd. (ECF Doc. No. 19 at ¶17.) The MPD has acknowledged its use of 40 mm less-lethal foam marking rounds or munitions and tear gas between May 26 and May 31, 2020. (*Id*. at ¶¶117, 133.) Paragraph 133, via footnote 16 of the amended complaint, cites to the Declaration of MPD Commander Scott Gerlicher, which was publicly filed in another lawsuit in this District. (*Id*. at p. 25, n. 16.) Commander Gerlicher's Declaration explains that the "riots and protests occurring in the wake of the death of George Floyd" were a "rapidly evolving, violent, and dangerous situation." (*Goyette, et al. v. City of Minneapolis, et al.*, Court File No. 20-CV-01302 (WMW/DTS), ECF Doc. 27 at ¶¶2, 10.) Commander Gerlicher further explains that the use of chemical irritants and munitions was intended "to repel and disperse violent and unruly individuals" and it is "against the policy and customs of the MPD to use these tactics punitively against anyone[.]" (*Id*. at ¶¶7-8.)

Plaintiffs allege that they were lawfully exercising their constitutional rights of freedom of speech and assembly between May 26, 2020, and May 31, 2020, although Plaintiffs Hempfling and Plaintiff Clark acknowledge that on May 29, 2020, they were out past the curfew imposed by Governor Tim Walz. (*Id.* at ¶¶146, 55, 58-59.) While protesting, Plaintiffs allege that they were personally subjected to chemical irritants or less-lethal projectiles, or otherwise observed the same constitutional violations to have occurred against peaceful protestors:[1]

- At around 8:00 p.m. on May 26, 2020, Plaintiffs Nekima Levy Armstrong and Marques ("the Armstrongs") allege they observed MPD officers fire chemical irritants and less-lethal munitions at protestors that surrounded the Third Precinct, and saw that some protestors were injured. (*Id.* at ¶¶21, 22, 24.) Plaintiff Max Fraden alleges that he experienced the effects of the tear gas at the Third Precinct on May 26 sometime between 8:30 p.m. and 10:00 p.m. (*Id.* at ¶¶75, 77, 79.) The Armstrongs and Fraden allegedly did not hear any order to disperse from their locations. (*Id.* at ¶¶22, 24, 78.) The Armstrongs and Fraden were not hit by any projectiles on May 26, 2020. (*See generally id.*, *id.* at ¶24.)

- On May 27, 2020, the Armstrongs, Fraden, and Plaintiff Terry Hempfling all attended a protest at the Third Precinct. (*Id.* at ¶¶25, 45, and 80.) Officers allegedly fired tear gas and rubber bullets or less-lethal munitions at protestors without warning or orders to disperse. (*Id.* at ¶¶28, 29, 48, 49.) According to the Armstrongs, they were sprayed with tear gas. (*Id.* at ¶30.) Fraden also alleges he was hit by tear gas multiple times. (*Id.* at ¶81.) Hempfling alleges she was hit in the arm by the ricochet of a rubber bullet or less-lethal munition. (*Id.* at ¶50.)

---

[1] It is also alleged that an officer pointed a gun of some sort at Plaintiff Fraden on May 28, 2020, and then warned Fraden that if he came closer to the officer, he would be shot. (ECF Doc. 19 at ¶85.) Plaintiffs do not specifically allege that the City Defendants have an unconstitutional policy or custom, or have otherwise failed to train officers, about pointing their guns at protestors or others. (*See* generally ECF Doc. 19.) And, there are no other similar incidents alleged in the amended complaint. (*See generally id.*)

- On May 29, 2020, Hempfling and Plaintiff Rachel Clark continued to protest near the Fifth Precinct past the nighttime curfew imposed by Governor Tim Walz "to gauge the reaction of law enforcement." (*Id.* at ¶¶55, 58.) At 11:30 p.m., Hempfling and Clark heard an announcement to protestors that they were out past curfew and ordering them to disperse. (*Id.* at ¶59.) They began to disperse. (*Id.* at ¶60.) Within one to two minutes of the dispersal announcement, MPD officers allegedly began firing tear gas and rubber bullets or less-lethal munitions at them and the one other individual remaining in the street near the Fifth Precinct. (*Id.* at ¶63.) Hempfling and Clark were both allegedly struck with less-lethal munitions. (*Id*. at ¶¶66, 71.)

- On May 31, 2020, Fraden attended a protest at Bobby & Steve's Auto World in Minneapolis, near Interstate Highway 35W. (*Id.* at ¶¶88, 89.) Fraden alleges that MPD and Minnesota State Patrol ("MSP") officers began firing less-lethal munitions and tear gas. (*Id.* at ¶¶90-91.) Fraden alleges that he was sprayed or hit with tear gas by the MPD and MSP. (*Id.* at ¶¶92-93, 96-97.) Fraden claims that he did not hear any law enforcement issue a warning or order to disperse. (*Id.* at ¶98.)

The Armstrongs continue to attend protests. (*Id.* at ¶39.) Hempfling resumed protesting a week after her May 29 incident. (*Id.* at ¶69.)

**B.     Two alleged incidents in 2015**

Prior to May 2020, Plaintiffs assert that MPD officers used chemical irritants against protestors on two occasions in 2015.[2]     According to Plaintiffs, the "MPD deployed chemical irritants on protestors" marching down a street in downtown Minneapolis in May 2015. (*Id*. at ¶107.) Plaintiffs further allege, that the "MPD deployed chemical irritants on protestors" who gathered near the Fourth Precinct in November 2015. (*Id*. at ¶108.)

_____

[2] Plaintiffs allege that another law enforcement entity used force in July 2016 against people protesting the "MPD shooting of Philando Castile." (ECF Doc. 19 at ¶109.) City Defendants assume this was an inadvertent error in pleading as it is widely and publicly known that Mr. Castile was shot by a St. Anthony police officer in Falcon Heights, not an MPD officer.

## II.    MUNICIPAL ALLEGATIONS

### A.    <u>Policy and Custom</u>

Excepting the John Does, the amended complaint alleges that all of the Defendants have policies and customs of deploying chemical irritants and less-lethal munitions in an unconstitutional manner, *i.e.* against peaceful protesters without first providing warnings or dispersal orders. (*Id.* at ¶¶103, 106, 118, 119, 132.) According to Plaintiffs, the Minneapolis Policy and Procedure Manual contained the following provisions in May 2020:

- Section 5-312 provides "[u]nless there is immediate need to protect oneself or another from apparent physical harm, sworn MPD employees shall refrain from deploying any less-lethal or non-lethal weapons upon any individuals involved in a civil disturbance until it has been authorized by the on-scene commander." (*Id.* at ¶124.)

- Section 5-313 approves the "use of chemical agents as long as it complied with current MPD training and MPD policies governing the use of force…during crowd control situations if authorized by a supervisor." (*Id.* at ¶ 126.) This section prohibits the use of chemical agents against "persons who are only displaying Passive Resistance," which is defined as "behavior initiated by a subject, when the subject does not comply with verbal or physical control efforts, yet the subject does not attempt to defeat an officer's control efforts." (*Id.* at ¶127.)

- Section 5-317 states that "[o]fficers shall not deploy 40mm launchers for crowd management purposes." (*Id.* at ¶130.) It further requires that "[p]rior to using less-lethal options, officers need to consider any risks to the public or themselves" and "consideration shall be given as to whether the subject could be controlled by any other reasonable means without unnecessary risk to the subject, officers, or to the public." (*Id*.) Additionally, this section advises officers to avoid targeting certain areas of the body that can cause severe injury or death. (*Id.* at ¶131.)

- Section 7-805 mandates that "MPD personnel will not interfere with lawful protests and/or demonstrations." (*Id.* at ¶128.) Additionally, an Emergency Response Unit can only be activated to "deploy chemical/less lethal munitions as necessary and in accordance with MPD policies for its use." (*Id.*)

On June 5, 2020, the City stipulated that the MPD would amend various policies, including Sections 5-312, 5-313 and 7-805, relating to the use of crowd control weapons to require authorization by the Chief of Police or the Chief's designee during protests and demonstrations. (*Id.* at ¶123.)

Additionally, Plaintiffs reference City Ordinances relating to assemblies that obstruct pedestrian or vehicular traffic, or activities that interfere with such traffic. (*Id.* at ¶¶135-136.) Specifically, they note:

- Minneapolis Ordinance 466.240 "shall not be interpreted to restrict the lawful exercise of freedom of speech and assembly." (*Id.* at ¶138.)

- Minneapolis Ordinance 385.65 provides that "[a]cts authorized as an exercise of one's constitutional rights of freedom of speech and assembly" shall not constitute interference with pedestrian or vehicular traffic. (*Id.* at ¶140.)

According to Plaintiffs, these ordinances do not define what constitutes a lawful exercise of freedom of speech and assembly, and "leave open for interpretation who can 'authorize'" acts and which acts are 'authorized' as an exercise of one's constitutional rights of freedom of speech and assembly." (*Id.* at ¶¶138, 141.) Plaintiffs also contend that the Defendants, excepting the John Does, have a custom or policy of enforcing Ordinance Sections 466.240 and 385.65 in an "unconstitutional way, and have done so on occasions before these particular protests." (*Id.* at ¶¶137, 138.)

### B. Supervision, Training and Discipline

Excepting the John Does, Plaintiffs allege that all of the Defendants failed to supervise, train, investigate and discipline their employees on First Amendment and constitutionally protected activity, use of crowd control tactics, and due process rights, and a pattern of similar constitutional violations occurring from May 26 to May 31, 2020, amounts to deliberate indifference to the rights of Plaintiffs and the purported class members. (*Id.* at ¶¶110, 134, 147, 148, 162, 163, 172, 173, 179, 180.) They additionally allege that these Defendants "have a history of deficient or non-existent training with respect to the use of impact weapons, chemical irritants, and less-lethal munitions." (*Id.* at ¶114.)

According to Plaintiffs, the Defendants' alleged "failure to train and supervise their officers and issue corrective instructions after violations were brought to light" caused the challenged First Amendment retaliation, seizures, and use of force. (*Id.* at ¶¶ 161, 171.) It is alleged that "given the multiple constitutional violations documented [in the amended complaint,] the need for more supervision or training was so obvious, and the inadequacy of the training and supervision so likely to result in the violation of constitutional rights, that the State and Municipal Defendants demonstrated their deliberate indifference to the need for such training and supervision." (*Id.* at ¶¶164, 174.) The amended complaint alleges, on information and belief, that the MPD has not "disciplined, or suspended any officer involved in any of the unlawful conduct described in this Complaint." (*Id.* at ¶120.)

# ARGUMENT

## I.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has pleaded a cognizable claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wartman v. United Food & Commercial Workers Local 653*, 871 F.3d 638, 640 (8th Cir. 2017).  A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009).

"[A] Complaint need not contain 'detailed factual allegations,' but 'it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *Minnesota Majority v. Mansky*, 708 F.3d 1051, 1055 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twom*bly, 550 U.S. 544, 555 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Indeed, the court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002); *see also Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999) (ignore conclusory allegations); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (ignore legal conclusions).

## II. THE AMENDED COMPLAINT DOES NOT ALLEGE ANY COGNIZABLE CLAIMS AGAINST THE CITY DEFENDANTS AND, ACCORDINGLY, THEY SHOULD BE DISMISSED FROM THIS SUIT

### A. The amended complaint does not plead a viable individual capacity claim against Chief Arradondo

Plaintiffs allege that they are bringing suit against Chief of Police Medaria Arradondo in his individual capacity and official capacity. The official capacity claim is addressed separately below in Section B. To state an individual capacity claim, plaintiff must plead facts sufficient to demonstrate an individual defendant was directly and personally involved in an alleged constitutional violation. *Treimert v. County of Washington*, 2015 WL 999869, at *4 (D. Minn. 2015) (citing to *Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985); *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."))

The amended complaint, however, fails to plead any facts that would render Chief Arradondo liable on an individual capacity or personal basis. Plaintiffs do not allege that Chief Arradondo personally sprayed them with chemical irritants, struck them with less-lethal projectiles, or otherwise used any force on Plaintiffs or any other protestor. Similarly, Plaintiffs do not allege that any of the incidents alleged in the amended complaint involved an express authorization by Chief Arradondo or direction by him for officers to forgo warnings or dispersal orders. The only specific allegations in the

amended complaint pertaining to Chief Arradondo speak exclusively to his official capacity role with the MPD. (ECF Doc. No. 19 at ¶8 ("Defendant Medaria Arradondo is the Chief of the MPD and a Minnesota resident."), ¶103 ("The City of Minneapolis, Minneapolis Chief of Police Medaria Arradondo . . . in their official capacities . . . each have policies and customs of violating the constitutional rights of individuals who are peacefully protesting.")) The official capacity allegations do not support an individual capacity claim. Plaintiffs simply have not pled facts suggesting any connection between conduct by Chief Arradondo, personally, and the alleged uses of force without warning on the four dates in May 2020, or the specific times and locations, identified in the amended complaint. As such, the individual capacity claims against the Chief must be dismissed on Rule 12(b)(6) grounds. *See Hussein v. Department of Employment & Economic Development*, 2019 WL 4933664, at *3 (D. Minn. 2019) (citing to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Treimert v. County of Washington*, 2015 WL 999869, at *4 (D. Minn. 2015).

**B.     Plaintiffs do not plead a viable direct claim against the City Defendants and their unpled *Monell* claim fails as a matter of law**

The City Defendants cannot be held liable merely because some of the John Does are purportedly employed by the MPD. *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016). Indeed, even if the Court assumes that the amended complaint sets forth sufficient facts that the MPD John Does' alleged use of force without warning amounts to unlawful retaliation, unlawful seizure, or a due process violation, that alone does not support a finding of liability against the City Defendants. *Bd. of Cnty.*

*Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 406–07 (1997) ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably.") (emphasis in original); *Dahl v. Rice County, Minn.*, 621 F.3d 740, 743–44 (8th Cir. 2010) (without evidence that sheriff's alleged assault of plaintiff arose from county policy or custom, plaintiff's First Amendment and procedural due process claims against the county fail); *McBride v. McLean County*, 397 F.Supp.3d 1198, 1211 (C.D. Ill. 2019) ("While the First Amendment retaliatory allegations against Defendant Barnes' have been sufficiently pled, they do not bring Defendant McLean County within reach.") (citing to *Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992)).

Rather, the City Defendants may only be held liable if their own conduct served as the moving force behind the Plaintiffs' alleged constitutional violations. *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 690–91 (1978). "Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016); *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013). To the extent that Plaintiffs attempt to keep the City Defendants in this suit based on one of these unpled *Monell* claims, the amended complaint fails.

## A.     The City's policies are constitutional

The amended complaint fails to establish that a City policy was the moving force behind the purported constitutional violations.   A municipality is liable under Section 1983 only where its policy is the moving force behind a constitutional violation. *Slaven v. Engstrom*, 848 F.Supp.2d 994, 1002 (D. Minn. 2012) (citing *Monell*, 436 U.S. at 694–95).   A "policy" is an official policy, a deliberate choice of a guiding principle, or procedure made by the municipal official who has final authority regarding such matters.   *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Only "deliberate" actions by a municipality can meet the "moving force" requirement. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400 (1997).   Additionally, a "policy is not unconstitutional if it might allow for unconstitutional conduct in some instances[,]  rather, such a policy is unconstitutional only if it requires its officer to act in such an unconstitutional manner." *Peroceski v. Tarr,* 2009 WL 3202463, at *12 (D. Minn. Sept. 30, 2009); *Conley v. City of Minneapolis*, 2009 WL 1562756, *4 (D. Minn. June 3, 2009).

Plaintiffs' amended complaint cites to four sections of the MPD Policy and Procedure Manual and two City ordinances.   All of these policy provisions are constitutional as a matter of law.[3]

---

[3] Plaintiffs also challenge certain policy revisions to these sections that were adopted in June 2020, after the incidents alleged in the amended complaint.  (ECF Doc. 19 at ¶¶123, 125, 127, 129.)  These post-incidents revisions cannot be the moving force behind the earlier alleged constitutional violations.  Therefore, a *Monell* claim, premised upon the revised policies fails.  To the extent that Plaintiffs cite the policy changes to imply that the previous policies were unconstitutional, each policy must be evaluated by this Court

### 1. MPD Policy Section 7-805 is facially constitutional

At the times alleged in the amended complaint, Section 7-805 mandated that MPD officers cannot interfere with lawful protests and/or demonstrations. "Only as a second level of assistance could an Emergency Response Unit ("ERU") be activated to 'deploy chemical/less lethal munitions as necessary and in accordance with MPD policies for its use." (ECF Doc. 19 at ¶128.) Plaintiffs do not identify any basis for the Court to conclude that this specific policy section is facially unconstitutional. Clearly, ordering officers to avoid interfering with lawful protests and demonstrations does not run afoul of the constitution. Additionally, using an ERU "as necessary" also fails to establish a constitutional violation as it envelops the accepted "totality of the circumstances" consideration. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing to *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (the question in "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure."))

### 2. MPD Policy Section 5-312 is facially constitutional

At the times alleged in the amended complaint, Section 5-312 provided that MPD officers should refrain from using less-lethal or non-lethal weapons on individuals involved in a "civil disturbance" unless: (a) use had been authorized by an on-scene commander, or (b) there is an immediate need to protect oneself or another from apparent physical harm.

---

and it is only unconstitutional on its face if it "affirmatively sanctions" an unconstitutional action. *Graham v. Barnette*, 970 F.3d 1075, 1093 (8th Cir. 2020) (citing *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 392 (8th Cir. 2007)).

Plaintiffs do not assert that application of this policy to "civil disturbances" is unconstitutional. Instead, they contend it did not extend far enough. Plaintiffs only apparent objection to this policy is that it "included no language preventing MPD from using crowd control weapons on protestors exercising their constitutional right of freedom of assembly." (ECF Doc. 19 at ¶124.) Plaintiffs, however, do not offer any explanation as to why an "assembly" would never qualify as a civil disturbance under the policy. Rights set forth in the Constitution, including the right to assemble in the First Amendment, are not free passes to violate the law, and the exercise of rights under the First Amendment are properly subject to time, place and manner restrictions. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("Our cases make clear, however, that even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech . . . ."); *Cohen v. California*, 403 U.S. 15, 19 (1971). Plaintiffs' allegations do not establish that the policy is unconstitutional on its face merely because it allows the use of force during a "civil disturbance." Nowhere on the face of the policy does it authorize the use of force against peaceful, lawful, protestors who are legally exercising their First Amendment rights. The policy is constitutional.

Alternatively, Plaintiffs could be alleging that this policy, by omitting the phrase "assembly", would not apply to the situations alleged in the amended complaint. However, it is not clear, why the May 26 to May 31 protests involving hundreds if not thousands of people, some of whom were destroying property and acting violent, does not fairly qualify as a civil disturbance. (ECF Do. 19 at ¶17 ("[t]housands of protestors gathered in Minneapolis"), ¶20 ("thousands of people marched"), ¶150 ("[t]housands of

individuals"), ¶21 ("50-100 protestors remained" after the initial gathering of thousands, some of whom were "throwing rocks and water bottles"), ¶36 ("Windows of businesses near the Third Precinct were broken and stores were looted and vandalized."). Under these circumstances, Section 5-312 applied to the incidents alleged in the amended complaint.

Additionally, given Plaintiffs' citation to Section 7-805, which mandates that MPD officers cannot interfere with lawful protests and/or demonstrations, the absence of the words "freedom of assembly" from Section 5-312 cannot be the moving force behind the violations alleged in the amended complaint. Even if Section 5-312, together with Section 7-805, fails to give MPD officers guidance on how to respond to the incidents alleged in the amended complaint, Plaintiffs simply cannot prevail on a *Monell* claim based on the contention that more specific guidance should have been provided. *See Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 392 (8th Cir. 2007) ("[H]owever, a written policy that is facially constitutional, but fails to give detailed guidance that might have averted a constitutional violation by an employee, does not itself give rise to municipal liability."); *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 861, n. 5 (8th Cir. 2018); *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013).

### 3. MPD Policy Section 5-313 is facially constitutional

At the times alleged in the amended complaint, Section 5-313 approved the use of chemical agents during crowd control situations so long as the use complied with current MPD training and MPD use of force policies, and the use was authorized by a supervisor.

Plaintiffs challenge Section 5-313 because they claim it does "not prohibit the MPD from using chemical agents on protestors exercising their constitutional right of freedom of assembly." (ECF Doc. 19 at ¶ 126.) Here too, Plaintiffs offer no explanation for why "crowd control situations" does not specifically envelop the large-scale protests occurring from May 26 to May 31, or extend more generally to other protests and demonstrations. That Plaintiffs believe the same policy should have been extended to explicitly reference "assembl[ies]" is insufficient to establish a constitutional violation. The absence of a specific policy pertaining exclusively to the use of chemical agents during "assembl[ies]" does not amount to a constitutional violation. *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 861, n. 5 (8th Cir. 2018) ("We also note that a failure to implement a specific policy does not equate to a failure to adopt a constitutionally adequate policy."); *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013); *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 392 (8th Cir. 2007).

Significantly, Plaintiffs do not allege that Section 5-313's application to crowd control situations is unconstitutional. The amended complaint appears to plead otherwise, making note of the limitations imposed on MPD officers' ability to use chemical agents in crowd control situations. The amended complaint affirmatively alleges that Section 5-313 prohibits the use of chemical agents against "persons who are only displaying Passive Resistance," *i.e.* when a person does not comply with an officer's verbal or physical control efforts yet does not attempt to defeat an officer's control

efforts. (ECF Doc. 19 at ¶127.) Plaintiffs do not challenge the constitutionality of these limitations or Section 5-313 generally.

At most, Plaintiffs allege that Section 5-313's references to "MPD training and MPD policies" is "vague." (*Id*. at ¶126.) No constitutional violation can be found, however, because the policy does not recite verbatim the extensive use of force training provided to MPD officers or explicitly name the use of force policies that are housed in the very same MPD Policy and Procedure manual containing Section 5-313. Cross references are not unconstitutional, nor is a policy allegedly lacking in specificity. *See e.g., Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 392 (8th Cir. 2007) ("[H]owever, a written policy that is facially constitutional, but fails to give detailed guidance that might have averted a constitutional violation by an employee, does not itself give rise to municipal liability.")

### 4. MPD Policy Section 5-317 is facially constitutional

At the times alleged in the amended complaint, Section 5-317 prohibited officers from using a 40mm less-lethal launcher and impact projectiles for crowd management purposes. It further required officers to consider any risks to the public or themselves prior to using less-lethal options, and provided that officers must consider whether the subject could be controlled by any other reasonable means without unnecessary risk to the subject, officers or the public. Additionally, Section 5-317 identified target areas of the body to avoid when using less-lethal projectiles based on possible risks to the subject.

Again, Plaintiffs do not identify any particular constitutional challenge to Section 5-317. Surely Plaintiffs agree that less-lethal projectiles should not be used for crowd-

management purposes, that officers should consider using other possible reasonable means to control subjects before using the less-lethal projectiles, and, if use of the less-lethal projectiles are necessary that officers should use them in a manner that reduces possible injury.

Additionally, Plaintiffs generally allege that the MPD Policy and Procedure Manual, including the sections cited above, "has no policy requiring MPD to notify protestors to disperse or warn protestors before its use of crowd control weapons." (ECF Doc. 19 at ¶132.) Notably, there is no MPD policy forbidding officers from providing dispersal orders or warnings prior to the use of any crowd control techniques. Thus, Plaintiffs' objection is that amongst the various policy provisions governing the use of chemical agents and less-lethal projectiles, the policy does not provide more detailed guidance about officers' communications with subjects prior to the use of crowd control techniques or projectiles. Neither the absence of policy direction alone nor the allowance of officer discretion establishes *Monell* liability, however. *See Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 392 (8th Cir. 2007) (facially constitutional that fails to give detailed guidance that might have averted a constitutional violation by an employee, does not give rise to municipal liability); *Dick v. Watonwan Cnty.,* 738 F.2d 939, 942–43 (8th Cir. 1984) (holding that a municipality's policy giving discretion to subordinates did not subject the municipality to liability for the subordinates' errors of judgment); *Atkinson*, 709 F.3d at 1216 (explaining that the absence of a binding, written policy that "would have prevented an unconstitutional act by an employee otherwise left to his own discretion" is insufficient to impose municipal liability); *Pitts v. Ramsey County*, 2018

WL 3118437, at *9 (D. Minn. May 25, 2018) (granting City's motion to dismiss *Monell* claim based on the absence of a policy, specifically an alleged "failure to have and maintain a . . . policy to protect citizens from policy physical abuse"); *Peroceski v. Tarr*, 2009 WL 3202463, at *12 (D. Minn. Sept. 30, 2009) (explaining a policy is only unconstitutional if it "requires" an officer to act in an unconstitutional manner).

### 5. The City's Ordinances are facially constitutional

The amended complaint alleges that City Ordinance 466.240 governs assemblies that obstruct pedestrian or vehicular traffic, and Ordinance 385.65 governs interferences with pedestrian or vehicular traffic. By their plain text, however, these ordinances do not restrict or prohibit a person's lawful exercise of the freedom of speech or assembly. (ECF Doc. 19 at ¶¶138, 140) (Ordinance 466.240 "shall not be interpreted to restrict the lawful exercise of freedom of speech and assembly" and Ordinance 385.65 provides that "[a]cts authorized as an exercise of one's constitutional rights of freedom of speech and assembly" shall not constitute interference). The ordinances are facially constitutional.

With respect to Ordinance 466.240, however, Plaintiffs complain that there is no definition of what constitutes a "lawful exercise of the freedom of speech and assembly." (*Id*. at ¶138.) Naturally, Plaintiffs offer no suitable definition for that phrase because the expanse of what constitutes a lawful assembly or freedom of speech is not readily reducible to a single neat definition. At most, Plaintiffs' complaint is unfounded based on the same arguments set forth above: a lack of detailed policy guidance does not amount to a constitutional violation under *Monell*. *Szabla*, 486 F.3d at 392 (8th Cir.

2007); *Dick,* 738 F.2d at 942–43; *Atkinson,* 709 F.3d at 1216; *Whitney*, 887 F.3d at 861, n. 5.

Plaintiffs also contend that the City Defendants have a policy or custom of enforcing these ordinances in "an unconstitutional way, and have done so on occasions before these particular protests." (ECF Doc, 19 at ¶¶137, 139.) Yet the amended complaint does not identify a single specific instance in which the City Defendants enforced these ordinances in an unconstitutional manner, whether before or during the May 2020 protests. The amended complaint does not even describe in a general manner how the City Defendants' enforcement of these ordinances has purportedly been unconstitutional. Plaintiffs' assertion is wholly conclusory and lacking in sufficient factual enhancement and, accordingly, need not be accepted by the Court. Thus, it fails to withstand this Rule 12 motion to dismiss. *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002); *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999) (ignore conclusory allegations). Plaintiffs cannot hold the City Defendants liable for their alleged constitutional violations based on the cited policy sections or ordinances.

**B.** **The amended complaint fails to plead sufficient facts to sustain an unlawful custom claim against the City Defendants.**

The amended complaint does not contain sufficient facts to establish that the City Defendants had a custom of using chemical irritants or less-lethal projectiles in an unconstitutional manner. To establish the existence of a municipal "custom," a plaintiff must show:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson County,* 150 F.3d 873, 880 (8th Cir. 1998). Plaintiffs' amended complaint fails to establish these elements.

Plaintiffs assert that the City Defendants had a custom of unlawfully using less-lethal projectiles and chemical irritants against peaceful protestors without providing dispersal orders or warnings. Plaintiffs rely upon three categories of allegations to support their claim: (1) two incidents occurring in 2015, (2) four specific days in late May 2020, and (3) Robert Kroll's post-incident statements. Each category fails as a matter of law.

### 1.    The two 2015 incidents

The two alleged incidents in 2015 fail to support a finding of an unconstitutional custom for multiple reasons. First, the amended complaint does not plead any facts that would allow the Court to determine that the 2015 incidents involve unconstitutional conduct. They do not allege that the use of chemical irritants was unreasonable, without warning, or that the 2015 protestors were peaceful or acting lawfully. All that Plaintiffs allege is that the "MPD deployed chemical irritants on protestors" in May and November 2015. (ECF Doc. 19 at ¶¶107, 108.) But the deployment of chemical irritants is not

inherently unconstitutional. *See Andrade v. U.S.*, 116 F.Supp.2d 778, 788 (W.D. Tex. 2000) (explaining that the use of tear gas is "an accepted law enforcement practice"). Simply put, the amended complaint fails to plead sufficient facts that would transform an otherwise lawful type of force into unconstitutional conduct on the two particular incidents. Any unstated inferences or sweeping conclusions to the contrary should be rejected on this Rule 12 motion. *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). In the absence of sufficient factual allegations establishing that the prior use of chemical irritants was unconstitutional, neither of the 2015 incidents can establish the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by MPD officers, or the City Defendant's deliberate indifference to or tacit authorization of such conduct. Thus, a custom claim cannot properly be based on the 2015 incidents.

Second, the 2015 incidents are immaterial to the Plaintiffs' claims relating to the use of less-lethal projectiles. Plaintiffs do not allege that protestors were struck by projectiles or less-lethal munitions during the 2015 incidents. Rather, Plaintiffs allege that they were sprayed with chemical irritant. The use of chemical irritants is substantially different from the use of less-lethal projectiles. Moreover, other than the 2015 incident generally involved protestors, Plaintiffs do not plead any similarities between their 2020 incidents and the two 2015 incidents. Consequently, these incidents cannot establish an unlawful custom because they are too dissimilar from the Plaintiffs' alleged incidents. *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (dismissing custom claim because plaintiff did not show "that the incidents giving rise to these

complaints bear any factual similarity to the January 22, 1994, confrontation with her son").

Third, the 2015 incidents are simply too limited and distant in time to provide notice of a persistent and widespread pattern of unconstitutional uses of chemical irritant. As alleged, the amended complaint only pleads two incidents followed by a nearly 5-year gap in which there are no challenged uses of chemical irritant. This purported pattern cannot fairly be described as persistent or widespread. Indeed, any semblance of a pattern is far too attenuated to impose municipal liability. *See Moore v. District of Columbia,* 79 F.Supp.3d 121, 140 (D.C. 2015) (finding that a custom claim could not be maintained because the record did not show that "such a pattern continued over the next five years" such that the district should have known about continuing constitutional violations by its officers).

### 2. Challenged conduct occurring on four days in May 2020

Plaintiffs generally allege that protestors were struck with some type of less-lethal projectile or subjected to chemical irritants without warning on four days in May 2020. More specifically, the amended complaint alleges that less-lethal munitions and chemicals irritants were used on May 26, 27, 29 (post curfew), and 31.[4] These incidents do not support the imposition of *Monell* liability for multiple reasons.

---

[4] With respect to Plaintiffs, Plaintiff Fraden alleges he experienced the effects of tear gas on May 26, Fraden and Plaintiffs Armstrongs allege they were sprayed with tear gas on May 27, and Fraden alleges he was hit with tear gas on May 31. With respect to less-lethal projectiles, Plaintiff Hempfling alleges she was hit by a ricochet on May 27 and struck directly on May 29, and Plaintiff Clark alleges she was hit directly on May 29.

To begin, the use of chemical irritants or less-lethal projectiles on four occasions is simply not enough to establish the existence of a widespread and persistent pattern. For a municipality "to be held liable on the basis of custom, there must have been a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990) (citing *Monell*, 436 U.S. at 691). Four occasions of challenged conduct cannot fairly be described as evidencing a practice that is "persistent and widespread." In fact, courts have routinely rejected custom claims premised on more frequent conduct. *See e.g., Mettler*, 165 F.3d at 1204 (noting that fifteen citizen complaints against deputies failed to establish an unofficial custom); *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (citing favorably to *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) as concluding that eleven incidents of police misconduct were insufficient to establish an unconstitutional pattern).

Additionally, the four occasions happened in such close proximity to one another that they cannot be viewed as establishing a "persistent and widespread" pattern. The first alleged misuse of chemical irritants or less-lethal projectiles occurred at 8:00 p.m. on May 26, and the last incident use of a projectile occurred sometime on May 31. Some of these incidents occurred at substantially the same time, and even at the exact same time. (*Compare* ECF Doc. 19 at ¶22 to ¶¶77, 79; *id*. at ¶63.) At most, this represents an approximately five-and-a-half-day period between the first and last challenged act. But that period evinces only sporadic allegations of unconstitutional conduct. For example, Plaintiffs do not allege any improper uses of chemical irritants or less-lethal projectiles

on May 28 or May 30. The 4-days of challenged conduct, surrounded by periods of no alleged misconduct, cannot fairly be said to establish a widespread and persistent unconstitutional pattern or custom. *See Appel v. City of St. Louis*, 2007 WL 9808053, at *15 (E.D. Mo. 2007) (custom may arise from unwritten understandings "intended to ... establish fixed plans of action to be followed under similar circumstances *consistently and over time*")(emphasis added) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)).

Moreover, even if the Court determined that the four occasions of alleged misuses could be considered persistent and widespread, or permanent and well settled, they are not sufficient to show that the City Defendants were deliberately indifferent to or tacitly approved of the alleged misuses. *See Mick v. Raines*, 883 F.3d 1075, 1080 (8th Cir. 2018) (dismissing custom claim because plaintiff did not "identify a sufficient number of unconstitutional acts to support an inference of deliberate indifference to employee misconduct" or to meet the "heavy burden required to establish municipal liability through an unofficial custom"). To be sure, the amended complaint formulaically asserts that the City Defendants were deliberately indifferent. (*E.g.,* ECF Doc. 19 at ¶163.) However, the conclusory legal assertions are insufficient to make out a custom claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (advising that courts are free to ignore sweeping legal conclusions cast in the form of factual allegations); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Plaintiffs do not plead any specific facts showing that the City Defendants were even aware of the purportedly unconstitutional acts occurring on the four days in May 2020, some of which happened at the exact same time, within mere moments or, at most, within hours of one another. (*Compare* ECF Doc. 19 at ¶22 to ¶¶77, 79 (alleging the Armstrongs were subjected to tear gas at approximately 8:00 p.m. on the same date and location as Plaintiff Fraden who experienced the effects of tear gas between 8:30 and 10:00 p.m.), ¶¶25, 45 and 80 (alleging that the Armstrongs, Fraden and Plaintiff Hempfling were all at the Third Precinct on May 27), and ¶63 (alleging that MPD fired less-lethal munitions at Hempfling and Plaintiff Clark at the exact same time). These contemporaneous or near contemporaneous events are insufficient to establish an unconstitutional pattern or deliberate indifference by the City Defendants. *Connick v. Thompson*, 563 U.S. 51, 63, n. 7 (2011) (citing to *Canton v. Harris,* 489 U.S. 378, 395 (1989) ("But contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates . . . .'")

Moreover, the amended complaint is simply devoid of any facts showing that the City Defendants tacitly approved of the alleged misuse of the chemical irritants or less-lethal projectiles. In fact, Plaintiffs implicitly plead otherwise by affirmatively alleging that the City Defendants voluntarily amended the MPD Policy and Procedural Manual to require authorization of crowd control weapons by the Chief of Police or the Chief's designee prior to their use, including chemical agents and rubber bullets, and citing the statements of a Minneapolis Councilmember to allege that the challenged actions were

"widely criticized by local government." (ECF Doc. 19 at ¶¶ 102, 123, 125.) Surely, this does not denote approval of any alleged misuses.

Likewise, the amended complaint is wholly devoid of any facts showing that the City Defendants "made a deliberate choice" to ignore the alleged misuses of projectiles. *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825, 829 (8th Cir. 2013); *see also Board of Comm'rs v. Brown,* 520 U.S. 397, 400 (1997) (holding that only "deliberate" action by a municipality can meet the "moving force" requirement). The four-day period is so short that it cannot furnish proof of deliberate indifference. Indeed, it would be pure speculation to assume that the City Defendants accepted the alleged custom based exclusively on the passage of four days or even a failure to intervene in that limited time. *See Hoekstra By and Through Hoekstra v. Independent School Dist. No. 283, St. Louis Park, Minn.,* 916 F.Supp. 941, 947 (D. Minn. 1996) ("Mere delay" did not establish "actionable deliberate indifference" and could not establish a custom). Such speculation is legally insufficient to maintain any claim, let alone establish the stringent standard of fault required to show deliberate indifference. *Minnesota Majority*, 708 F.3d at 1055 (8th Cir. 2013) (explaining that a complaint must "contain facts with enough specificity 'to raise a right to relief above the speculative level.'"); *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (explaining that deliberate indifference is a "stringent standard of fault"); *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 780 (8th Cir. 2001) (applying a stringent standard of fault to the deliberate indifference requirement of a custom claim).

Plaintiffs' speculation is particularly ill-founded given the circumstances at the time. During this time period, there was significant civil unrest, described as "the largest

scale riot Minneapolis has ever seen," that prompted Governor Tim Walz to issue a nighttime curfew. (ECF Doc. 19 at ¶113 and ¶¶58, 59, 115 (each referencing the curfew).) The nighttime curfew was ordered in the Governor's Emergency Executive Order 20-65, which states, "[d]estructive and dangerous activity has continued. Individuals have looted businesses, destroyed residential buildings, and set a precinct police station on fire. This senseless violence tears at the fabric of our society. . . . We must restore peace and safety immediately."[5] In the absence of any specific factual allegations to the contrary, the fact that the City Defendants were addressing a state of emergency during this limited period of time negates any contention of deliberate indifference or tacit approval based on the four alleged occasions of misuse.

The City Defendants are not aware of any instance where a municipality has been held liable for having an unconstitutional custom because they purportedly did not correct isolated conduct in such a short period. *See Burbridge v. City of St. Louis, Missouri*, 430 F.Supp.3d 595, 620 (E.D. Mo. 2019) (holding that numerous incidents of officers pepper spraying protestors over a two-day weekend could not establish "deliberate indifference" or "tacit authorization" because the "incidents are simply too close in time to" the plaintiffs' own incident); *Ball-Bey v. Chandler*, 415 F.Supp.3d 884, 895 (E.D. Mo. 2019)

---

[5] On a Rule 12(b)(6) motion, courts may consider materials necessarily embraced by the pleadings, public records, and matters of which a court may take judicial notice. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003); *Noble Systems Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (citing to *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509, 551 U.S. 308, 322 (U.S. 2007). The Governors' Emergency Executive Order is publicly available at: https://mn.gov/governor/assets/EO%2020-65%20Final_tcm1055-434635.pdf

(citing to *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984)) ("The prior incidents 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [the municipality's] employees.'")  Simply put, four sporadic occasions of alleged misconduct occurring during a period of massive and dangerous civil unrest does not support the existence of an unlawful custom.

### 3.  Robert Kroll's post-incident statements

According to the amended complaint, Robert Kroll, the President of the Minneapolis Police Officers Federation, is an "unofficial" or "de facto" policymaker within the MPD, and his "opinions" have the "practical effect of serving as policy guidance for other officers, which aggravates the training and supervision" of officers. (ECF Doc. 19 at ¶¶111, 112.)  The Supreme Court has rejected the notion of *Monell* liability being imposed based on a "de facto" policy maker.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) (considering the notion of "de facto" policy makers as "foster[ing] needless unpredictability in the application of § 1983").  Simply put, Mr. Kroll is not a policy maker for the MPD or the City Defendants, and the amended complaint certainly does not allege that he is a policy maker with final authority.  To the contrary, Mr. Kroll represents an independent labor organization and it is alleged that he is frequently at odds with the City Defendants.  (ECF Doc. 19 at ¶¶111, 112.)

Regardless, the amended complaint does not allege that Mr. Kroll pursued or advocated an unconstitutional policy or custom with respect to the use of chemical irritants or less-lethal munitions against protestors that could have been the moving force

behind the incidents alleged in the amended complaint. Indeed, the amended complaint sites to only one specific example of Mr. Kroll's purported act of policy-making, a post-incident letter written to police officers on June 2, 2020. (ECF Doc. No. 19 at ¶112.) According to the amended complaint, Mr. Kroll provided only limited and plainly constitutional advice with respect to the use of gas and less-lethal munitions: officers should use these munitions "to defend themselves." (*Id*. at ¶113.) Plaintiffs do not offer any explanation of how the use of such munitions in self-defense would constitute a constitutional violation. Moreover, having given this advice after the incidents alleged in the amended complaint, Mr. Kroll's letter cannot qualify as the "moving force" behind the Plaintiffs' alleged injuries. Indeed, it is settled that post-injury conduct, even if wrongful, cannot be the moving force behind the injury at-issue. *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999); *Tompkins v. Frost*, 655 F.Supp. 468, 472 (E.D. Mich. 1987) ("Wrongful conduct after an injury cannot be the proximate cause of the same injury.") Simply put, Plaintiffs have failed to plead sufficient facts to establish that the City Defendants had a custom of unlawfully using chemical irritants or less-lethal projectiles on protestors.

### C.    Plaintiff's Training, Supervision and Discipline Claims are Patently Insufficient

Plaintiffs allege that the City Defendants failed to train, supervise and correct the wrongful conduct of officers. These allegations lack sufficient factual enhancement. Thus, they cannot support a *Monell* claim.

First, Plaintiffs do not plead even a single fact in support of their contention that the City Defendants' supervision of officers was deficient. In fact, Plaintiffs' allegations that the City Defendants' supervision of officers was deficient is nothing more than a vehicle for their equally conclusory allegation that the City Defendants were deliberately indifferent to Plaintiffs' constitutional rights. (ECF Doc. 19 at ¶110 ("The State and Municipal Defendants' failure to supervise and train their employees and agents with respect to constitutionally protected activity amounts to a deliberate indifference to the rights of Plaintiffs and Plaintiff class members."), ¶¶134, 147, 162, 172, 179.) But one purely conclusory allegation cannot be salvaged because it is paired with an equally conclusory allegation. These pleadings amount to no more than unadorned legal conclusions which this Court should not accept. *DuBois,* 276 F.3d 1019, 1022 (8th Cir. 2002). As the United States Supreme Court advised in *Ashcroft v. Iqbal*, "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" 556 U.S. 662, 678 (2009) (internal citations omitted).

Second, Plaintiffs fail to plead a cognizable failure to train claim. According to Plaintiffs all of the Defendants, excepting the John Does, "have a history of deficient or non-existent training with respect to the use of impact weapons, chemical irritants, and less-lethal munitions." (ECF Doc, 19 at ¶114.) But Plaintiffs do not specifically identify any particular deficiency with the City Defendants' training on the use of chemical irritants or less-lethal munitions. It appears this allegation is solely premised on Plaintiffs' ipso facto conclusion that because officers used chemical irritants or less-lethal

projectiles, they must have been improperly trained. This conclusory, generalized assumption is fatal to a training claim. *Birkeland as trustee for Birkeland v. Jorgenson*, 2019 WL 1936736, at *10 (D. Minn. May 1, 2019) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (noting that a failure to train claim must identify a specific deficiency in the training program)).

Moreover, having pled only four occasions of alleged misuse of chemical irritants, and only three confirmed instances of someone being struck by a less-lethal projectile (one of which was by ricochet), the amended complaint fails to "establish that policymakers acted with deliberate indifference in failing to train employees." *Id.* Plaintiffs flatly allege that the City Defendants were deliberately indifferent, but they do not plead any facts showing that the City Defendants were even aware of the incidents allegedly occurring on the four days in May 2020, amidst massive civil unrest. Even if specific facts had been alleged regarding the City Defendants' knowledge, the number of challenged incidents is not sufficient in terms of numerosity or timeliness to have put the City Defendants on notice regarding an alleged training deficiency. *Thelma D. By & Through Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 934 (8th Cir. 1991) (requiring plaintiff to establish facts showing the municipality was on notice). Failure to train claims are the most tenuous of the claims seeking to impose municipal liability, and the Plaintiffs' allegations have failed to cement a claim to withstand Rule 12. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Finally, although Plaintiffs generally allege that the City Defendants did not provide corrective instructions after violations were brought to light, the amended

complaint does not identify any specific instances before the May 2020 period that warranted correction. Again, Plaintiffs do not allege facts showing that the two 2015 incidents involve constitutional violations. And, although Plaintiffs allege, upon information and belief, that none of the officers involved in the May 2020 incident were disciplined or suspended, such an allegation cannot establish a *Monell* claim. After all, post-incident conduct cannot be the moving force behind the purportedly unconstitutional use of force, retaliation, or due process violation. Indeed, a city's decision not to impose discipline on an officer cannot be the moving force behind the violation, because it occurred after the incident. As the court explained in *Scheffler v. McDonough*, 2017 WL 3668760, *10 (D. Minn. Aug. 23, 2017):

> [T]he fact that [the city] did not discipline [the officers] falls far short of establishing that, *prior* to July 10, 2014, [the officers] — or anyone else— had engaged in a "continuing, widespread, persistent pattern of unconstitutional conduct" that was known and tolerated by policymaking officials. If a municipality's decision not to discipline police officers accused of misconduct was sufficient to establish *Monell* liability, then such liability would be the rule rather than the rare exception.

It is settled that post-injury wrongful conduct cannot be the moving force behind the injury at-issue. *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999); *Tompkins v. Frost*, 655 F.Supp. 468, 472 (E.D. Mich. 1987) ("Wrongful conduct after an injury cannot be the proximate cause of the same injury.") Plaintiffs' allegations of a failure to train, supervise and discipline officers are insufficient to establish municipal liability against the City Defendants.

## CONCLUSION

The City Defendants cannot be held liable merely because some of the John Does are purportedly employed by the MPD.  Only the City Defendants' deliberate choices can bring the City Defendants within the reach of this Court or expose them to liability.  But Plaintiffs unpled *Monell* claim is simply not viable because it is premised on conclusory allegations lacking basic factual enhancement and alleged instances of misconduct that cannot be categorized as widespread and persistent or as demonstrating deliberate indifference by the City Defendants.  For these and the foregoing reasons, the City Defendants respectfully request that the Court dismiss the City Defendants from this lawsuit with prejudice.

Dated:  September 28, 2020

JAMES R. ROWADER, JR.
City Attorney
By
*/s Kristin R. Sarff*
KRISTIN R. SARFF (388003)
HEATHER P. ROBERTSON (390470)
SHARDA ENSLIN (389370)
Assistant City Attorneys
Minneapolis City Attorney's Office
350 South Fifth Street, Room 210
Minneapolis, MN 55415
(612) 673-3919
kristin.sarff@minneapolismn.gov
sharda.enslin@minneapolismn.gov
heather.robertson@minneapolismn.gov

*Attorneys for Defendants City of Minneapolis and Minneapolis Chief of Police Medaria Arradondo*