# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Nekima Levy Armstrong, Marques
Armstrong, Terry Hempfling, Rachel Clark,
and Max Fraden, *on behalf of themselves and
other similarly situated individuals,*

        Plaintiffs,

    v.

City of Minneapolis, Minneapolis Chief of
Police Medaria Arradondo *in his individual
and official capacity*; Minneapolis Police
Lieutenant Robert Kroll, *in his individual and
official capacity*;  Minnesota Department of
Public Safety Commissioner John
Harrington, *in his individual and official
capacity*; Minnesota State Patrol Colonel
Matthew Langer, *in his individual and
official capacity*; and John Does 1-2, *in their
individual and official capacities,*

        Defendants.

Civil Action No. 20-cv-01645- SRN-DTS

**PLAINTIFFS' OPPOSITION TO
THE CITY DEFENDANTS'
MOTION TO DISMISS**

---

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS ................................................................... 2

    A.    MPD's Use of Chemical Irritants and Less-Lethal
        Munitions on May 29 and May 31 Injured Plaintiffs
        Hempfling, Clark, and Fraden ................................................ 2

    B.    MPD's Use of Chemical Irritants and Less-Lethal
        Munitions on May 29 and May 31 Were Not Isolated
        Incidents ................................................................................ 3

    C.    The May 2020 Events Exposed MPD's Inadequate
        Training .................................................................................. 4

    D.    Minneapolis Ordinances Fail to Provide Fair Notice as to
        What Conduct is Prohibited ................................................... 6

    E.    The Tear Gas Attacks and Less-Lethal Munitions Had a
        Chilling Effect ....................................................................... 7

III.  LEGAL STANDARD ......................................................................... 8

IV.   ARGUMENT ...................................................................................... 9

    A.    Plaintiffs Pled Facts to Sustain a *Monell* Claim for
        Defendants' Custom of Using Chemical Agents and Less-
        Lethal Munitions Without Warning Against Peaceful
        Protestors .............................................................................. 9

        1.    Plaintiffs Adequately Allege that MPD's Use of
            Chemical Agents and Less-Lethal Munitions
            Without Warning Was Continuing, Widespread, and
            Persistent ..................................................................... 9

        2.    MPD's Failure to Intervene to Prohibit Officers
            From Unleashing Tear Gas and Less-Lethal
            Munitions on Peaceful Protesters Without Warning
            Amounts to Tacit Authorization .................................. 12

B.    Alternatively, Plaintiffs Pled Facts to Sustain a *Monell* Claim for Single-Incident Liability Arising From the City Defendants' Failure to Train and From Gaps in Policies........................ 15

    1.    City Defendants Are Liable for Constitutional Violations Resulting From Deliberately Indifferent Failure to Adequately Train MPD.................................................. 15

    2.    The Supreme Court Opened the Door to the Possibility of Single-Incident Liability ......................................... 15

    3.    Plaintiffs Have Alleged Facts That Support a *Monell* Claim for Single-Incident Liability for Failure to Train................................................................................. 18

C.    Plaintiffs Pled Facts to Sustain a *Monell* Claim that the City's Ordinances are Unconstitutional on Their Face Or As Applied to Plaintiffs................................................................ 20

D.    Plaintiffs Pled an Adequate Claim Against Defendant Chief Arradondo in His Individual Capacity ............................. 22

E.    Dismissal With Prejudice Is Improper In Any Event............................... 25

V.    CONCLUSION ..................................................................................... 25

## **TABLE OF AUTORITIES**

**Page**

Cases

*Aldridge v. City of St. Louis, Missouri,*
    No. 4:18-CV-1677 CAS, 2019 WL 1695982 (E.D. Mo. Apr. 17, 2019) ..................... 9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................. 10

*Ball-Bey v. Chandler,*
    415 F. Supp. 3d 884 (E.D. Mo. 2019) .......................................................... 10, 11, 14

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,*
    520 U.S. (1997) ..................................................................................................... 10, 20

*Bolderson v. City of Wentzville, Missouri,*
    840 F.3d 982 (8th Cir. 2016) ..................................................................................... 15

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) ....................................................................................... 8

*Brewington v. Keener,*
    902 F.3d 796 (8th Cir. 2018) ............................................................................... 11, 12

*Burbridge v. City of St. Louis, Missouri,*
    430 F.Supp.3d 595 (E.D. Mo. 2019) ............................................................. 11, 14, 15

*Cantu v. City of Portland,*
    No. 3:19-CV-01606-SB, 2020 WL 2952972 (D. Or. June 3, 2020) ........................... 14

*City of Canton, Ohio v. Harris,*
    489 U.S. 378 (1989) ........................................................................... 16, 18, 19, 20

*Connick v. Thompson,*
    563 U.S. 51 (2011) ............................................................................................... 15, 16

*Glisson v. Indiana Dep't of Corr.,*
    849 F.3d 372 (7th Cir. 2017) ............................................................................... 13, 17

*J.K.J and M.J.J. v. Polk County,*
    960 F.3d 367 (7th Cir. 2020) (en banc) ............................................................... 17, 20

*Marsh v. Phelps Cty.*,
    902 F.3d 745 (8th Cir. 2018) ........................................................................... 22

*McDonough v. Anoka Cty.*,
    799 F.3d 931 (8th Cir. 2015) ............................................................................. 8

*McGrath v. Scott*,
    250 F. Supp. 2d 1218 (D. Ariz. 2003) ............................................................. 23

*McGuire v. Cooper*,
    952 F.3d 918 (8th Cir. 2020) ........................................................................... 23

*Mettler v. Whitledge*,
    165 F.3d 1197 (8th Cir. 1999) ......................................................................... 12

*Michaelis v. Nebraska State Bar Ass'n*,
    717 F.2d 437 (8th Cir. 1983) ........................................................................... 25

*Estate of Osuna v. Cty. of Stanislaus*,
    392 F. Supp. 3d 1162 (E.D. Cal. 2019) ........................................................... 20

*Ouza v. City of Dearborn Heights, Michigan*,
    969 F.3d 265 (6th Cir. 2020) ........................................................................... 17

*Pineda v. City of Houston*,
    291 F.3d 325 (5th Cir. 2002) ........................................................................... 12

*In re Pre-Filled Propane Tank Antitrust Litig.*,
    860 F.3d 1059 (8th Cir. 2017) ........................................................................... 8

*U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*,
    690 F.3d 951 (8th Cir. 2012) ........................................................................... 25

*Shadrick v. Hopkins County, KY*,
    805 F.3d 724 (6th Cir. 2015) ........................................................................... 17

*Smith v. Questar Capital Corp.*,
    No. 12-CV-2669 ................................................................................................. 9

*Stahl v. City of St. Louis, Mo.*,
    687 F.3d 1038 (8th Cir. 2012) ................................................................... 20, 21

*Trump v. Hawaii*,
    138 S. Ct. 2392, 201 L. Ed. 2d 775 (2018) ..................................................... 13

*Wever v. Lincoln Cty., Nebraska*,
   388 F.3d 601 (8th Cir. 2004) ...................................................................... 22

## I.      INTRODUCTION

There is an embarrassing history in this country of peaceful protesters suffering at the hands of police officers, particularly when it comes to demonstrations on issues of race and police brutality.  In the days following the murder of George Floyd, the Minneapolis Police Department (MPD) officers logged the most recent chapter in this unfortunate catalogue of constitutional deprivations.  The Amended Complaint filed by the named plaintiffs and putative class representatives details account after account of MPD officers unnecessarily deploying chemical irritants and other so-called less-lethal munitions on peaceful protesters, without warning, instruction to disperse, or even opportunity to do so, over *six days*, from May 26-31, 2020.[1]  Social media posts and the traditional media outlets broadcast MPD's actions for all to see.  The City of Minneapolis and Minneapolis Chief of Police Medaria Arradondo ("the City Defendants")[2] did nothing to put an end to the MPD's indiscriminate use of chemical irritants and less-lethal munitions on peaceful protesters.  Rather, the aftermath of the George Floyd murder exposed MPD's pattern and practice of unconstitutional crowd-control tactics, the failure of the City Defendants to adequately train MPD officers, critical gaps in MPD's policies, and unconstitutional city ordinances.

For their part, the City Defendants attempt to minimize the misconduct by limiting it to the "four occasions" of injuries suffered by the named plaintiffs.  The City Defendants

---

[1] The plaintiffs have showed that the size of the putative class could number in the hundreds.  MPD's misconduct was not isolated or shrouded.

[2] Plaintiffs address the arguments related to Minneapolis Lieutenant Robert Kroll in the opposition brief to Defendant Kroll's Motion to Dismiss.  *See* D.I. 24.

on one hand point to the unprecedented "state of emergency" facing MPD officers, seemingly as an excuse, for the failures of the City Defendants. Yet, on the other hand, they rely on inapposite case law where instances of alleged misconduct were so isolated that the city policymakers could not have necessarily been on notice of the alleged pattern or of the need to train. Those cases don't fit these facts, and they don't suggest Plaintiffs have failed to adequately plead facts to support liability under *Monell*. Thus, the Court should deny the City Defendants' motion to dismiss.[3]

## II.   STATEMENT OF FACTS

### A.   MPD's Use of Chemical Irritants and Less-Lethal Munitions on May 29 and May 31 Injured Plaintiffs Hempfling, Clark, and Fraden

On May 29, 2020, Ms. Hempfling and Ms. Clark together joined protests happening near the Fifth Precinct. (Amended Complaint ¶ 55.) Just two days earlier, Ms. Hempfling had observed MPD using tear gas to disperse peaceful protesters. She herself was hit in the back of her right arm when MPD officers fired less-lethal munitions without warning or an order to disperse. (*Id.* ¶¶ 45-50.) So on May 29, wanting to avoid a repeated assault, as soon as Ms. Hempfling and Ms. Clark heard an order to disperse, they left the protest to unlock their bikes across from the precinct. (*Id.* ¶¶ 56-61.) Before they could unlock their

---

[3] As the City Defendants note, D.I. 36 at 28 n.5, this Court "may consider materials necessarily embraced by the pleadings, public records, and matters of which the Court may take judicial notice." Accordingly, this Court should take judicial notice of the continued protests, and subsequent police use of excessive force, after former police officer Mr. Chauvin was released on bail. Abby Simons, *More than 50 protesters arrested during faceoff with law enforcement in Minneapolis after Derek Chauvin release* (Oct. 8, 2020), https://www.startribune.com/51-arrested-near-fifth-precinct-hq-after-protesting-chauvin-release/572670582/.

bikes and ride away, two rows of MPD officers approached them from opposite directions, *kettling* them, thus leaving them no way to disperse in compliance with the MPD order. (*Id.* ¶ 61.) MPD officers began firing tear gas and less-lethal munitions at Ms. Hempfling and Ms. Clark. (*Id.* ¶ 63.) Ms. Hempfling sustained injuries to her breast and thigh. (*Id.* ¶ 66.) Ms. Clark was hit three times and suffered bruising on her arm, right hip, and right ankle. (*Id.* ¶ 71.)

Two days later, on May 31, Dr. Fraden attended a protest at Bobby & Steve's Auto World in downtown Minneapolis. (*Id.* ¶ 88.) About 150 people attended. (*Id.* ¶ 89.) The protest remained peaceful. (*Id.* ¶ 89.) Many knelt on the ground as if in prayer. (*Id.*) Despite the peaceful nature of this assembly, MPD officers without prior warning began firing less-lethal munitions at the protesters and unleashed tear gas on them. (*Id.* ¶¶ 90-91.) Dr. Fraden was sprayed with tear gas even as he tried to leave the scene. (*Id.* ¶¶ 91-97.) As he turned to run in the opposite direction, Dr. Fraden realized he was surrounded. (*Id.*) A second group of MPD officers closed in on him and sprayed him with another round of tear gas. MPD officers encircled Dr. Fraden, and an MSP officer arrested him. (*Id.* ¶¶ 97, 99.)

## B. MPD's Use of Chemical Irritants and Less-Lethal Munitions on May 29 and May 31 Were Not Isolated Incidents

These incidents were not the first time MPD had used chemical irritants on peaceful protestors. It had happened on at least five previous occasions. MPD improperly deployed chemical irritants on protesters in May and November 2015, (Amended Complaint ¶¶ 107-108.), and again on May 26, May 27, and May 28 of this year. (*Id.* ¶¶ 19-23, 25-30, 45-

47, 80-81, 90-92.)  The Armstrong Plaintiffs witnessed MPD fire less-lethal munitions and chemical irritants without warning on peaceful protesters on May 26.  (*Id.* ¶¶ 22-24.)  The next day, the Armstrong Plaintiffs fell victim to MPD's tactics.   While peacefully protesting, they were sprayed with tear gas, the effects of which lingered for days.  (*Id.* ¶¶ 25-38.)  Since the events of May 26th and May 27th, the Armstrong Plaintiffs armed with protective gear—bulletproof vests, helmets, goggles, gloves, and bandages.  (*Id.* ¶ 39.) Faced with widespread, detailed reporting of its tactics, (*see*, *e.g.*, *id.* at 4 n.4), MPD had no choice but to admit that it used tear gas and 40 mm foam marking rounds in May of 2020.  (*Id.* ¶¶ 117, 133.)  Plaintiffs' injuries suffered on May 29 and May 31 at the hands of MPD officers were thus not isolated incidents.  They were the latest data points in an established pattern and custom of unconstitutional policing.

## C.    The May 2020 Events Exposed MPD's Inadequate Training

The peaceful demonstrations against George Floyd's murder also exposed the gross inadequacy of MPD's training in the use of chemical irritants and other munitions. Plaintiffs pled a number of facts that show the behavior of MPD officers violated policies set forth in the Minneapolis Policy and Procedure Manual ("MPPM")[4].  *First*, MPPM § 5-313 prohibits the use of chemical agents against "persons who are only displaying Passive Resistance."  (Amended Complaint, ¶ 127.)  MPPM § 5-302 defines Passive Resistance as "behavior initiated by a subject, when the subject does not comply with verbal or physical

---

[4] The MPPM policies regarding use of force that currently appear on the Minneapolis Police Department website are dated September 8, 2020.  They do not appear to be the same policies that were in effect in May of 2020.

control efforts, yet the subject does not attempt to defeat an officer's control efforts." (*Id.*) MPD officers used chemical agents on Plaintiffs whose actions did not rise to the level of Passive Resistance. (*Id.* ¶¶ 29, 30.) In fact, Plaintiffs fell victim to MPD officers' tactics while waiting for transportation from the protest scene or trying to leave the scene by bicycle. (*Id.* ¶¶ 21, 22, 61.)

*Second*, MPPM § 5-317 provides that "[a]reas to avoid when using the 40 mm less-lethal rounds are the head, neck, spinal cord, groin and kidneys" and that "[a]reas susceptible to death or possible severe injury are the . . . chest (in vicinity of the heart)." (*Id.* ¶ 131.) Manufacturer instructions for less-lethal munitions recommend they "should only be used at ranges beyond 10 meters, targeting the subject's lower torso or extremities." (*Id.* ¶ 145.) Yet while peacefully trying to leave the scene of protests, Ms. Hempfling sustained an injury on her breast and groin area from less-lethal rounds fired upon her. (*Id.* ¶¶ 67, 68.)

*Third*, MPPM § 5-317 requires that "[p]rior to using less-lethal options, officers need to consider any risks to the public or themselves" and "consideration shall be given as to whether the subject could be controlled by any other reasonable means without unnecessary risk to the subject, officers, or to the public." (*Id.* ¶ 130.) In contravention of MPPM § 5-317, MPD officers "kettl[e]d" plaintiffs, which prevented them from peacefully dispersing. (*Id.* ¶¶ 61, 94, 130.)

Other evidence reasonably points to inadequate training. For example, MPD acted inconsistently: at times, MPD gave no warning or dispersal order before deploying its assault, (Amended Complaint ¶¶ 49, 63, 78, 98.), while other times officers gave a dispersal

order but then did not allow any time for compliance.  (Amended Complaint ¶¶ 59-63.)
The Amended Complaint alleges with specificity MPD officers fired less-lethal munitions
and released tear gas on protesters who, at that very moment, were complying with
dispersal orders.  (*Id.* ¶¶ 60-63.)  The facts thus support a reasonable inference that MPD
either provided no training to its officers on the use of less-lethal munitions and chemical
irritants, or the training was grossly inadequate because it repeatedly violated MPD's
express policies.  The May 2020 events also expose a critical gap in MPD's policies.
Thousands of protesters peacefully gathered in Minneapolis to mourn the murder of Mr.
Floyd *en masse*.  In response to these protests, MPD and MSP used unnecessary crowd
control tactics, including the use of the chemical and other less-lethal munitions, on
protesters, often with no forewarning or order to disperse.  (Amended Complaint ¶ 17.)  All
named plaintiffs witnessed MPD officers firing less-lethal munitions and chemical irritants
without warning, instruction to disperse, or opportunity to comply, and heedless of the
harm visited upon peaceful protesters.  (*Id.* ¶¶ 22, 28, 48, 49, 63, 78.)  MPD officers did
not give a warning because MPD has no policy requiring officers to do so.  (Amended
Complaint ¶ 132.)  That critical policy gap resulted in an untold number of peaceful
protesters suffering needless injuries.

D.    **Minneapolis Ordinances Fail to Provide Fair Notice as to What
      Conduct is Prohibited**

During the protests, MPD enforced Minneapolis ordinances that fail to provide fair
notice as to what conduct was prohibited.  For example, on May 31, MPD officers corralled
Dr. Fraden, which led to his arrest by MSP officers.  (Amended Complaint ¶¶ 90-99.)  The

actions of MPD officers enforced two Minneapolis ordinances. First, Minneapolis Ordinance § 466.240 (Ex. 1) is directed to assemblies obstructing pedestrian or vehicular traffic. (Amended Complaint ¶ 135.) The ordinance states that it "shall not be interpreted to restrict the lawful exercise of freedom of speech and assembly." (*Id.* ¶¶ 137-138.) The ordinance however provides no definition of a "*lawful* exercise of freedom of speech and assembly." (*Id.* ¶ 138 (emphasis added).) Similarly, Minneapolis Ordinance § 385.65 (Ex. 2), regarding interference with pedestrian or vehicular traffic, provides that "acts authorized as an exercise of one's constitutional rights of freedom of speech and assembly" shall not constitute interference with pedestrian or vehicular traffic. (Amended Complaint ¶¶ 136, 140-141.) But the ordinance does not explain who can "authorize" acts or how to distinguish "authorized" acts from unauthorized acts. (*Id.*) With key terms in both ordinances undefined, protestors were not on notice as to what conduct was prohibited.

### E. The Tear Gas Attacks and Less-Lethal Munitions Had a Chilling Effect

MPD officers assaulted each of the named plaintiffs with projectiles and/or tear gas while they were peacefully protesting. (Amended Complaint ¶¶ 19-23, 25-30, 45-47, 55, 64, 80-81, 90-99.) Unsurprisingly, MPD's tactics inflicted (and continue to inflict) a constitutional harm: they have deterred citizens from exercising their constitutional right to freedom of assembly and expression. After sustaining injuries to her breast, thigh, and groin area, Ms. Hempfling did not resume protesting for a full week because she was afraid. (*Id.* ¶ 69.) Ms. Clark had bruising for nearly two months after MPD officers hit her with rubber bullets and/or less lethal munitions. (*Id.* ¶ 71.) Ms. Clark has never been afraid to

protest in the past, but her encounter with the MPD left her physically and emotionally shaken, and she now avoids protesting for fear of suffering another reprisal.  (*Id.* ¶¶ 72-73.)  The Amended Complaint adequately alleges MPD's tactics had a chilling effect on the exercise of the right of Ms. Hempfling and Ms. Clark to peaceably assemble.

## III.   LEGAL STANDARD

At the pleadings stage, Plaintiffs must provide a "short and plain statement" of their claims for relief under Federal Rule of Civil Procedure 8(a).  Under this standard, the Amended Complaint survives a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court must construe the complaint liberally "in the light most favorable to Plaintiffs*."  In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1070 (8th Cir. 2017) (internal quotations omitted).  The Court must not only "accept as true all factual allegations in the complaint," but also "draw all reasonable inferences" in Plaintiffs' favor. *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015).  While the factual allegations must be more than "[t]hreadbare recitals of the elements of a cause of action," they need not contain "direct evidence" or a showing that a success on the merits is more likely than not.  *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. at 678.  "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. 544, 556 (2007) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "A motion to dismiss a complaint

should not be granted unless it appears beyond doubt that a plaintiff can prove *no set of facts* that would entitle him to relief." *Smith v. Questar Capital Corp.*, No. 12-CV-2669 SRN/TNL, 2013 WL 3990319, at *2 (D. Minn. Aug. 2, 2013) (emphasis added).

## IV.   ARGUMENT

### A.   Plaintiffs Pled Facts to Sustain a *Monell* Claim for Defendants' Custom of Using Chemical Agents and Less-Lethal Munitions Without Warning Against Peaceful Protestors

*Monell* liability attaches for an unconstitutional custom or practice if the plaintiffs can show three things: "1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation." *Aldridge v. City of St. Louis, Missouri*, No. 4:18-CV-1677 CAS, 2019 WL 1695982, at *9–10 (E.D. Mo. Apr. 17, 2019) (*quoting Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013)).   The City Defendants do not contest the factual allegations that plaintiffs were injured.  Instead, the City Defendants challenge the sufficiency of plaintiffs' allegations as to the first two elements.

#### 1.   Plaintiffs Adequately Allege that MPD's Use of Chemical Agents and Less-Lethal Munitions Without Warning Was Continuing, Widespread, and Persistent

Plaintiffs allege a pattern of conduct by MPD officers of using chemical agents without warning against peaceful protesters on the days leading up to the injuries Plaintiffs

sustained on May 29 and May 31. "The Eighth Circuit has not directly addressed the *quantum* of continuing, widespread, persistent conduct a plaintiff must allege to satisfy the *Iqbal* standard in this context, though it has held that isolated incidents do not suffice and that allegations of many incidents do establish liability." *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (emphasis added). While "many incidents" do not establish liability, if the practice is "so widespread as to have the force of law," then it is a custom. *Id.*, *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. at 397, 404 (1997).

The City Defendants misleadingly characterize the allegations as "four occasions" of misconduct. (Mot. at 24.) Plaintiffs alleged misconduct targeting *hundreds of protesters* that occurred over six days *in May alone*. (*Id.* ¶¶ 19-23, 25-30, 45-47, 55, 64, 80-81, 90-92, 141.) Prior to the incidents of May 29 and May 31, MPD used chemical irritants on peaceful protesters on at least five previous occasions. MPD used chemical irritants on protesters in May and November 2015. (Amended Complaint, ¶¶ 107-108.) MPD used chemical irritants on protesters again on May 26, May 27, and May 28 of 2020. (*Id.* ¶¶ 19-23, 25-30, 45-47, 80-81.) Faced with widespread, detailed reporting of MPD's tactics, (*see*, *e.g.*, *id.* at 4 n.4), it admitted that it used tear gas and 40 mm less-lethal foam marking rounds or munitions in May 2020. (*Id.* ¶¶ 117, 133.) Indeed, the article cited by Plaintiffs (*id.* at 4 n.1) reported that "thousands of protesters gathered on Tuesday night" and further reported that peaceful protestors across Minneapolis were met with attacks of "tear gas, rubber bullets and flash bangs" and those attacks dragged on for the next six days.

The scale of the attacks over the days leading up to the injuries suffered by plaintiffs on May 29 and May 31 finds no match in the case law. For example, the conduct at issue

in *Burbridge v. City of St. Louis, Missouri*, 430 F.Supp.3d 595, 605 (E.D. Mo. 2019) occurred over two and half days and affected approximately 100 people.  In such a short time period and with so few people affected, it was not clear that policymaking officials even had notice of any of the incidents.  *Id.* at 620.  Procedurally, *Burbridge*—decided on summary judgment—does not help City Defendants.   In deciding issues and claims substantially similar to those alleged by Plaintiffs, the court considered video evidence, testimony, and documentary evidence offered to prove an unconstitutional custom and failure to train.  *Id.* at 607, 619-620.  The court also considered testimony from both parties on the issue of whether law enforcement issued dispersal orders.  *Id.* at 605 n.2.  In sum, *Burbridge* supports Plaintiffs' position that the pleadings have set forth plausible claims for relief such that they should survive a motion to dismiss.

Likewise, the scale and timing of the misconduct in *Ball-Bey* does not come close to the facts alleged in this case.  The incidents at issue in *Ball-Bey* had occurred at most 2.5 instances per year over a six-year period and as such were not "widespread."  *Ball-Bey*, 415 F. Supp. 3d at 897.  Moreover, although the court in *Ball-Bey* granted defendants' motion to dismiss, it specifically declined to make a finding regarding the pervasiveness of the pattern.  *See id*. at 896 ("*Without determining exactly how many instances or what details would suffice to plausibly plead a pattern of misconduct*, the Court finds that Ball-Bey's allegations fail to do so." (emphasis added)).  The other cases the City Defendants cite suffer from the same shortcomings; they did not involve alleged police misconduct targeting hundreds of citizens persistently over a period of three to five days.  *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (finding that *two incidents* of excessive force

occurring several years before the incident in question were insufficient to show a custom); *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (finding that fifteen citizen complaints against deputies over a period of six years failed to establish a custom where *only one complaint* was sustained in part after departmental investigation); *accord*, *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (finding that 11 incidents of warrantless entry did not create a fact issue of a pattern of conduct where an applicable exception to warrantless entry—"equivocal evidence of compliance with the Fourth Amendment"—applied to each instance).

Moreover, all were decided on summary judgment, and the opinions in *Brewington* and *Pineda* analyzed evidence obtained in discovery to decide the issues. The *Brewington* plaintiff took deposition testimony on the issue of whether an unconstitutional custom was the driving force behind the excessive force he suffered during arrest. 902 F.3d at 802. And the *Pineda* plaintiffs presented deposition testimony on the issue of inadequacy of training. 291 F.3d at 332. Plaintiffs here pled facts showing that the frequency of the attacks—occurring across the city—over the 3-5 days preceding the injuries suffered by plaintiffs on May 29 and May 31 was continuing, so widespread, and so persistent as to have the force of law.

> **2. MPD's Failure to Intervene to Prohibit Officers From Unleashing Tear Gas and Less-Lethal Munitions on Peaceful Protesters Without Warning Amounts to Tacit Authorization**

Unlike most defendants in an unlawful custom claim, the City Defendants here cannot credibly argue they were unaware of MPD officers using tear gas and less-lethal munitions on peaceful protesters. Plaintiffs have pled facts showing the protests and

MPD's misconduct in response were widely reported by traditional press and on social media. (*See, e.g.*, Amended Complaint at 4 n.1 & 6 n.2.) From those facts, an entirely reasonable inference—indeed, the only logical inference that follows—is that MPD policymakers *knew* that MPD officers deployed tear gas and less-lethal munitions on peaceful protesters without warning. That is beyond any reasonable debate.

In the midst of the protests, the City Defendants did *nothing* to quell the rampant, indiscriminate use of chemical agents without warning on peaceful protestors. In their opposition, the City Defendants admit as much, offering only the piteous response that they "were addressing a state of emergency during this limited time period." (Mot. at 28.) But there is no justification in these circumstances, if ever, for unconstitutional policing. This nation witnessed the travesty that results when the government unlawfully suspends the constitution in the name of exigency and have since denounced such excuses. *Trump v. Hawaii*, 138 S. Ct. 2392, 2423, 201 L. Ed. 2d 775 (2018) ("*Korematsu* was gravely wrong the day it was decided, has been overruled in the court of history, and—to be clear—has no place in law under the Constitution.").

Moreover, the case law the City Defendants cite to help them on the issue of whether they should be held liable for failure to correct "isolated conduct in such a short period." (Mot. at 28.) "There is no magic number of injuries that must occur before its failure to act can be considered deliberately indifferent." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 382 (7th Cir. 2017). The five named plaintiffs represent a putative class injured by MPD's sudden and indiscriminate use of tear gas and less-lethal munitions, without prior or adequate warning. Plaintiffs pled facts that support the inference that the putative class

size likely numbers in the hundreds.  (Amended Complaint ¶ 29 ("[Mr. Armstrong] then witnessed the MPD blanket the crowd of peaceful protesters with tear gas."); ¶ 33 ("Video footage from the incident shows individuals hunched over, gagging, and gasping for air after being tear-gassed."); ¶ 48 ("Without warning or an order to disperse, MPD officers began firing tear gas at the protesters sitting and standing peacefully in front of the MPD barricades."); ¶ 77 ("MPD officers parked the police cruisers on the southeast side of the precinct and began spraying tear gas indiscriminately into the crowd."); ¶¶ 89-90 (alleging that approximately 150 people were peacefully protesting when the MPD and MSP began firing less-lethal munitions at the group).  Plaintiffs' allegations of the City Defendants' MPD's failure to intervene to stop MPD's use of tear gas and less-lethal munitions on hundreds of peaceful protesters over three to five days surely suffices to plead deliberate indifference.  *Cantu v. City of Portland*, No. 3:19-CV-01606-SB, 2020 WL 2952972, at *1 (D. Or. June 3, 2020) (denying motion to dismiss *Monell* claim of unconstitutional custom where plaintiffs alleged a "general time period and description of related protests" during which time the Portland police used excessive force).

In opposition, the City Defendants again rely on the inapt *Burbridge* and *Ball-Bey* cases.  (Mot. at 28-29.)  Both rest on the premise that to show deliberate indifference to a pattern of misconduct, the municipality must have notice of the pattern, and that the notice arises from misconduct that occurs "for so long or so frequently."  *Burbridge*, 430 F.Supp.3d at 620; *Ball-Bey*, 415 F.Supp.3d at 895.  In *Burbridge*, the incidents occurred "too close in time to" the plaintiff's injury that it was unfair to conclude that the municipality was deliberately indifferent to the misconduct when it was unclear that the

policymakers even had notice of the "isolated conduct in such a short period." (Mot. at 28; 430 F.Supp.3d at 620.) Again, here Plaintiffs have pled facts showing that the social and traditional media outlets extensively reported the severity and scale of the police misconduct injuring hundreds of peaceful protesters and that knowledge of the misconduct must be imputed to the City Defendants. (Amended Complaint at 4 n.1 & 6 n.2 & 18 nn.3-5.) The City Defendants' subsequent failure to intervene constituted tacit approval or deliberate indifference to the misconduct.

**B.** **Alternatively, Plaintiffs Pled Facts to Sustain a *Monell* Claim for Single-Incident Liability Arising From the City Defendants' Failure to Train and From Gaps in Policies**

Should the Court find that Plaintiffs' pleadings fail to sustain a *Monell* claim for an unconstitutional custom under *Twombly*, Plaintiffs still have adequately pled a claim to hold the City Defendants liable for failure to train and from gaps in the policies.

**1.** **City Defendants Are Liable for Constitutional Violations Resulting From Deliberately Indifferent Failure to Adequately Train MPD.**

"Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, *or* a deliberately indifferent failure to train or supervise an official or employee." *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016) (emphasis added).

**2.** **The Supreme Court Opened the Door to the Possibility of Single-Incident Liability**

"A pattern of similar constitutional violations by untrained employees is '*ordinarily necessary*' to demonstrate deliberate indifference for purposes of failure to train." *Connick*

*v. Thompson*, 563 U.S. 51, 62 (2011) (emphasis added) (*quoting Bryan Cty.*, 520 U.S. at 409).  However, Plaintiffs need not allege a pattern where the need to train is so obvious that failure to do can be properly characterized as deliberate indifference to constitutional rights.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).  In setting forth the exception, the Supreme Court provided a telling example where police officers use excessive force:

> City policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons.  The city has armed its officers with firearms, in part to allow them to accomplish this task.  Thus, the need to train officers in the constitutional limitations on the use of deadly force, can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989) (internal citations omitted); *see also Connick v. Thompson*, 563 U.S. 51, 62 (2011) (explaining that the *Canton* hypothetical may give rise to single-incident liability).  The Supreme Court has explained that police officers require some form of training to lawfully use force within constitutional constraints.  *Connick*, 563 U.S. at 64 ("[I]n the absence of training, there is no way for novice officers to obtain the legal knowledge they require.  Under those circumstances there is an obvious need for some form of training.").[5]

Although the *Canton* exception has not gone before the Eighth Circuit, the Sixth and Seventh Circuits have applied the "single-incident" *Canton* exception to allow *Monell*

---

[5] Sadly, we know from lived experience that it is not just novice officers that commit constitutional violations.  Indeed, Mr. Chauvin, the former officer whose knee was on the neck of Mr. Floyd for more than eight minutes, was actually an experienced officer who was training at least some of the other officers on the scene where he murdered Mr. Floyd.

claims to go forward against municipalities.  *See, e.g.*, *Glisson v. Indiana Department of Corrections*, 849 F.3d 372 (7th Cir. 2017) (en banc) (reversing grant of summary judgment to defendants and holding that *Monell* liability could be premised upon single-incident liability for medical provider's purported decision not to require coordination of medical care for complications arising from prisoner's laryngectomy where the need to establish protocols to care for inmates with chronic illnesses was obvious); *J.K.J and M.J.J. v. Polk County*, 960 F.3d 367, 380 (7th Cir. 2020) (en banc) (affirming jury verdict and damages in inmates favor where liability was premised on single-incident liability, i.e., the "alternative path to *Monell* liability [that] comes from a door the Supreme Court opened in *City of Canton v. Harris*[.]"); *Shadrick v. Hopkins County, KY*, 805 F.3d 724, 739-740 (6th Cir. 2015) (concluding in a single-liability case that a reasonable jury could find that the "potential risk of the commission of constitutional torts by LPN nurses who lack the essential knowledge, tools, preparation, and authority to respond to the recurring medical needs of prisoners in the jail setting is so obvious that [defendant's] failure to provide adequate training and supervision to those nurses constitutes deliberate indifference to the risk"); *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 287-289 (6th Cir. 2020) (reversing grant of summary judgment in favor of defendant on issue of whether plaintiff's allegation that city failed to train police officers—premised upon single-incident liability— regarding  use of excessive force and handcuffing procedures).

While the Eighth Circuit has not addressed this issue, the cases above make plain that allegations of "single-incident" indifference are sufficient to state a plausible claim for relief for *Monell* liability.  And this case presents the archetypal example why.

### 3. Plaintiffs Have Alleged Facts That Support a *Monell* Claim for Single-Incident Liability for Failure to Train.

Plaintiffs alleged that MPD officials failed to train officers to use less-lethal munitions and chemical irritants safely and in a way that complies with constitutional constraints protecting the right to peaceful assembly and protest. (Amended Complaint ¶¶ 103, 106, 110, 114, 134) Plaintiffs also alleged facts showing Defendants were on notice of the need to train officers on the use of less-lethal munitions and chemical irritants. Specifically, Plaintiffs allege that MPD has had to deploy chemical irritants on protesters in May and November of 2015. (¶ 107).

Even if the events of May and November 2015 somehow failed to put the City Defendants on notice, the need for training on the use of chemical irritants and less-lethal munitions to avoid violations of constitutional rights is obvious, as the *Canton* hypothetical itself explains. There, the Supreme Court reasoned that policymakers know to "a moral certainty" that their police officers will be required to arrest fleeing felons and that failing train on the use of force to prevent excessive force violations amounts to deliberate indifference. *City of Canton*, 489 U.S. at 390. Against the backdrop of the history of citizens protesting police brutality,[6] policymakers also know to a "moral certainty" that

---

[6] The nation has witnessed a recent string of protests in response to the death of citizens at the hands of police: Michael Brown Jr. killed in Ferguson Missouri on August 9, 2014; Laquan McDonald killed on October 20, 2014; Tamir Rice killed in Cleveland, Ohio on November 22, 2014; Walter Scott killed on April 4, 2015 in North Charleston, South Carolina; Alton Sterling killed in Baton Rouge, Louisiana on July 5, 2016; Stephon Clark killed on March 18, 2018 in Sacramento, California; and the failure of the grand jury to indict on November 25, 2014 in Cleveland, Ohio; Breonna Taylor killed in Louisville, Kentucky on March 13, 2020. In Minnesota, protests followed the killing of Jamar Clark

their police officers will have to intervene and do so in a way that does not violate the constitutional rights of its citizens.[7]

Plaintiffs allege facts that support a reasonable inference of inadequate training. Police used chemical weapons and less-lethal munitions on peaceful protesters. They did so without giving warning, in violation of MPPM § 5-317. (Amended Complaint ¶¶ 28, 48, 78, 98, 130.) Plaintiffs submitted pictures of bruising on the breast caused by less-lethal munitions, apparently fired in violation of MPPM § 5-317 that advises avoiding "areas susceptible to death or possible severe injury" including the "head, neck, throat and chest (in vicinity of the heart)." (*Id.* ¶¶ 67, 131.) Police used "kettling" tactics to cut plaintiffs off from peacefully dispersing, in violation of MPPM § 5-317, which requires consideration be given to whether the subject could be controlled by any other means. (*Id.* ¶¶ 61, 94, 130.) There is nothing to suggest such consideration was given. Taken together, the facts support the inference that the training—if any occurred at all—was inadequate in the face of the obvious risk of harm to citizens if police officers were improperly trained on the constitutional constraints of deploying tear gas and less-lethal ammunitions. Dismissal is thus inappropriate. Plaintiffs should have the opportunity to take discovery on these issues. *Estate of Osuna v. Cty. of Stanislaus*, 392 F. Supp. 3d 1162, 1175 (E.D.

---

in Minneapolis on November 15, 2015 and the killing of Philando Castile on July 6, 2016 in Saint Paul. *Breonna Taylor: Timeline of Black Deaths Caused by Police*, (Sept. 23, 2020) https://www.bbc.com/news/world-us-canada-52905408

[7] In fact, the circumstances of this case are more egregious that the *Canton* hypothetical. The allegations here do not involve a fleeing felon, but rather peaceful protestors—some of whom were fired upon while praying. The fact that the *Canton* hypothetical may have related to the use of deadly force is of moment; the need for adequately training here was even more obvious that in *Canton*.

19

Cal. 2019) (denying motion to dismiss where factual allegations supported inferences sufficient to allege a *Monell* claim and reasoning that more is not required because "information concerning a town's customs or policies, the policymakers' motivations behind such policies, or the facts surrounding police department customs, are typically unavailable to an outsider.") (internal quotations and citations omitted).

Liability can attach under the *Canton* single-incident standard when the incident exposes gaps in policies and where the need to fill those gaps was so obvious that failure to do so amounted to deliberate indifference. *J.K.J and M.J.J. v. Polk County*, 960 F.3d 367, 381 (7th Cir. 2020) (en banc) (finding that the jury had ample evidence to find that the county's policy failures, *"both the prevention and detection gaps in its written policies and the absence of training* occurred in the face of an obvious and known risk that its male guards would sexually assault female inmates" (emphasis added)).

**C.     Plaintiffs Pled Facts to Sustain a *Monell* Claim that the City's Ordinances are Unconstitutional on Their Face Or As Applied to Plaintiffs**

Cities may be liable for an enacted, unconstitutional policy. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). A policy may be unconstitutional on its face or as applied for failing to provide fair notice of what conduct is prohibited and that excessively chills protected speech. *Stahl v. City of St. Louis, Mo.,* 687 F.3d 1038, 1038 (8th Cir. 2012). Where the law touches behaviors protected by the First Amendment, "[a] law's failure to provide fair notice of what constitutes a violation is a special concern." *Id.* at 1041 (8th Cir. 2012)

In *Stahl*, the ordinance prohibited demonstrating, talking singing, playing music, etc. *to the extent it impeded traffic. Id.* at 1041. The Eighth Circuit found the ordinance offended Due Process: "We note that the ordinance is not vague in the traditional sense that its language is ambiguous: the language is fairly clear that speech and activities that actually cause a pedestrian or traffic obstruction are prohibited. Rather, the problem is that the ordinance does not provide people with fair notice of when their actions are likely to become unlawful." *Id*. Instead, the conduct became unlawful only it if had the consequence of obstructing traffic—a situation that may be "difficult or impossible to predict." *Id.*

Ordinance §466.240, similar to the unconstitutional ordinance in *Stahl*, states that assembly becomes illegal only when it "obstructs the free passage of pedestrians thereon or interfere with the use thereof." (Ex. 1.) As in *Stahl*, persons wishing to assemble cannot predict when the assembly will obstruct the traffic and thus cross the line from protected First Amendment activity to unlawful conduct. The uncertainty as to when the conduct crosses the line thus fails to provide sufficient notice. As applied to Plaintiffs, §§ 466.240 and 385.65, the ordinances are vague because they fail to explain how Plaintiffs' acts of peaceful protest *were not* "the lawful exercise of freedom of speech and assembly" and "acts authorized as an exercise of one's constitutional rights of freedom of speech and assembly," respectively. (Amended Complaint ¶¶ 136-141; *see also* Ex.1, 2.)

Defendants' arguments miss the mark. Defendants cite no authority for the argument that the ordinances are facially constitutional simply because they do not restrict or prohibit a person's lawful exercise of the freedom of speech or assembly. Defendants'

21

very argument makes the point—the definition of "lawful" is nowhere in sight.  Defendants attempt to fault Plaintiffs for not offering a "suitable definition" for "lawful exercise" is nothing more than a red herring.  (Mot. at 19-20.)  Plaintiffs do not bear the burden of enacting constitutionally sound polices.  The City Defendants do.

### D.   Plaintiffs Pled an Adequate Claim Against Defendant Chief Arradondo in His Individual Capacity

Regarding the issue of Chief Arradondo's liability, the City Defendants argue that, because Plaintiffs did not allege that Chief Arradondo personally and directly caused the Plaintiffs harm, Chief Arradondo cannot be liable in his individual capacity.  (Mot. at 9.) They are wrong.  The argument overlooks the facts that Plaintiffs have pled in support of a plausible claim against Chief Arradondo in his individual capacity.

Specifically, Plaintiffs facts support liability under a theory of supervisory liability for failure to train the MSP officers who violated the constitutional rights of Plaintiffs.  To be liable in an individual capacity, a supervisor need not have "personally participated in any constitutional deprivation committed by his officers, or [ ] have known about any violation at the time it occurred." *Wever v. Lincoln Cty., Nebraska*, 388 F.3d 601, 606 (8th Cir. 2004) (quoting *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989) ("Proof of actual knowledge of constitutional violations is not, however, an absolute prerequisite for imposing supervisory liability.")).  Plaintiffs further pled that Chief Arradondo's failure to train MPD officers is tantamount to deliberate indifference of the constitutional rights of Plaintiffs and Plaintiff class members which is sufficient to make out a claim of supervisory liability against Chief Arradondo.  *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018)

22

("A supervisor's failure to train an inferior officer may subject the supervisor to liability in his individual capacity only 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'").

As pled by Plaintiffs, Chief Arradondo failed to train MPD officers how to use less-lethal munitions and chemical agents in a way that did not violate Plaintiffs' constitutional rights. (Amended Complaint ¶¶ 110,114, 134, 147)  A supervisor's failure to train an inferior officer may give rise to individual liability under § 1983 if (1) "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," and (2) "the alleged failure to train 'actually caused' the constitutional deprivation." *McGuire v. Cooper*, 952 F.3d 918, 923 (8th Cir. 2020).  "[T]o establish Section 1983 [supervisor] liability in an action against a state official . . . the plaintiff must show that the state official participated in creating a dangerous condition, and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it." *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1223–24 (D. Ariz. 2003) (finding allegations sufficient to state a claim for supervisory liability under 1983 against state defendants in their individual capacities).  Chief Arradondo created a dangerous condition wherein MPD officers were equipped with chemical agents and less-lethal munitions, but more importantly, failed to also equip MPD officers with adequate training as to using these weapons within the bounds of constitutional limitations, thereby being deliberately indifferent to violations of Plaintiffs' constitutional rights.

City Defendants' arguments that Plaintiffs' Amended Complaint is silent on individual capacity claims or that there are no allegations linking Chief Arradondo to

23

Plaintiffs' injuries are inaccurate.  Plaintiffs pled a number of allegations supporting a claim of supervisory liability.  Namely, Plaintiffs alleged the City Defendants failed to supervise and train their employees and agents with respect to the constitutionally protected activity of the Plaintiffs and Plaintiff class members (Amended Complaint ¶ 110); the City Defendants have a history of deficient or non-existent training with respect to the use of impact weapons, chemical irritants and less-lethal munitions (*id.* ¶ 114); the City Defendants deployed chemical agents and less-lethal munitions without warning on peaceful protesters (*id.* ¶¶ 49, 63, 78, 98); the City Defendants failed to supervise and train their employees and agents with respect to the use of "crowd control" tactics amounts to a deliberate indifference to the rights of Plaintiffs and Plaintiff class members (*id.* ¶ 134); the City Defendants used less-lethal munitions on peaceful protesters contrary to manufacturer guidelines (*id*. ¶ 144); the City Defendants failed to supervise and train their employees and agents with respect to First Amendment protected activity amounts to a deliberate indifference to the rights of Plaintiffs and Plaintiff class members (*id.* ¶ 147); the City Defendants failed to supervise and train their employees and agents with respect to First Amendment protected activity amounts to a deliberate indifference to the rights of Plaintiffs and Plaintiff class members (*id.* ¶ 147); and the City Defendants failed to supervise and train their employees and agents with respect to the Due Process rights of Plaintiffs in what amounts to a deliberate indifference to the rights of Plaintiffs.  These allegations coupled with Plaintiffs' allegations of the conduct of the specific MPD officers involved in firing tear gas and less-lethal munitions on the named Plaintiffs in violation of

their constitutional rights (*see generally id.* ¶¶ 44-61, 91-99) lay out a plausible claim of supervisory liability against Chief Arradondo in his individual capacity.

### E.    Dismissal With Prejudice Is Improper In Any Event

The City Defendants' motion should be denied outright for the reasons stated above. If it is granted, however, it should be without prejudice.  The City Defendants request a dismissal *with prejudice*, but do not offer any justification or basis for such a result.

It is well settled that a plaintiff subject to a successful motion to dismiss for failure to state a claim ordinarily should be given an opportunity to cure the deficient pleading. *Michaelis v. Nebraska State Bar Ass'n*, 717 F.2d 437, 438–39 (8th Cir. 1983) ("Ordinarily dismissal of a plaintiff's complaint for failure to comply with Rule 8 should be with leave to amend.").  The rare exception to this rule is when there are *no set of facts* upon which the plaintiff could possibly survive an amended pleading.  *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 958 (8th Cir. 2012) ("[F]utility constitutes a valid reason for denial of a motion to amend.").  Here, the City Defendants have alleged deficiencies they contend mandate dismissal under Rule 12(b)(6), but the City Defendants have not claimed that there are no set of facts which exist upon which Plaintiffs could rely on for an amended pleading to prevail.  Accordingly, the City Defendants have not met their high burden to show that a dismissal with prejudice is warranted.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court deny City Defendants' Motion to Dismiss.

Dated:  November 2, 2020          FISH & RICHARDSON P.C.

By:    */s/ Ahmed J. Davis*
      Michael E. Florey (#0214322)
      florey@fr.com
      Veena V. Tripathi (#0401111)
      tripathi@fr.com
      FISH & RICHARDSON P.C.
      3200 RBC Plaza
      60 South 6th Street
      Minneapolis, MN 55402
      Tel: (612) 335-5070

      Ahmed J. Davis (*pro hac vice*)
      davis@fr.com
      FISH & RICHARDSON P.C.
      1000 Maine Avenue, S.W. Suite 1000
      Washington, D.C. 20024
      Tel: (202) 783-5070

      Excylyn J. Hardin-Smith (*pro hac vice*)
      Hardin-smith@fr.com
      FISH & RICHARDSON P.C.
      7 Times Square, 20th Floor
      New York, NY 10036
      Tel: (212) 765-5070

      Teresa J. Nelson (#0269736)
      tnelson@aclu-mn.org
      Clare A. Diegel (#0400758)
      cdiegel@aclu-mn.org
      Isabella S. Nascimento (#0401408)
      inascimento@aclu-mn.org
      AMERICAN CIVIL LIBERTIES
      UNION OF MINNESOTA
      P.O. Box 14720
      Minneapolis, MN 55414
      Tel: (651) 645-4097

      **Attorneys for Plaintiffs**