## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Nekima Levy Armstrong, Marques
Armstrong, Terry Hempfling, Rachel Clark,
and Max Fraden, *on behalf of themselves and
other similarly situated individuals,*

        Plaintiffs,

        v.

City of Minneapolis, Minneapolis Chief of
Police Medaria Arradondo *in his individual
and official capacity*; Minneapolis Police
Lieutenant Robert Kroll, *in his individual and
official capacity*; Minnesota Department of
Public Safety Commissioner John
Harrington, *in his individual and official
capacity*; Minnesota State Patrol Colonel
Matthew Langer, *in his individual and
official capacity*; and John Does 1-2, *in their
individual and official capacities,*

        Defendants.

Civil Action No. 20-cv-01645- SRN-DTS

**PLAINTIFFS' OPPOSITION TO
DEFENDANT KROLL'S MOTION
TO DISMISS**

---

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    STATEMENT OF FACTS .................................................................. 2

III.   LEGAL STANDARD ......................................................................... 3

IV.   ARGUMENT ...................................................................................... 5

      A.     Kroll's Actions as Federation President are Under the
Color of State Law ........................................................................ 6

           1.     Kroll presents no valid support for his argument that
he is not acting under color of law as president of
the Federation ................................................................... 7

           2.     Plaintiffs sufficiently pled that Kroll cultivated a
culture of excessive force within the MPD ranks
that proximately caused Plaintiffs' injuries ..................... 10

           3.     Plaintiffs have sufficiently pled that Kroll has
influenced MPD policy preventing constitutional
protections against excessive force that proximately
caused Plaintiffs' injuries. .............................................. 16

      B.     Kroll is Liable Under § 1983 Even as a Private Actor ............... 20

      C.     Plaintiffs' Claims Do Not Implicate Kroll's First
Amendment Rights ...................................................................... 21

      D.     Dismissal With Prejudice Is Improper In Any Event ................. 22

V.     CONCLUSION ................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v. S. H. Kress & Co.*,
398 U.S. 144 (1970) ................................................................................ 20

*Arradondo v. City of Minneapolis*,
No. 07-cv-04736-MJD-SRN (D. Minn. Dec. 3, 2007), ECF No. 1 .............................. 2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 4

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ...................................................................... 4

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*,
531 U.S. 288 (2001) ............................................................................ 20, 21

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988) ................................................................................ 9

*Cox v. Duke Energy Inc.*,
876 F.3d 625 (4th Cir. 2017) ...................................................................... 7

*Dossett v. First State Bank*,
399 F.3d 940 (8th Cir. 2005) ..................................................................... 21

*Illig v. Union Elec. Co.*,
652 F.3d 971 (8th Cir. 2011) ...................................................................... 5

*Magee v. Trustees of Hamline University, Minn.*,
957 F.Supp. 2d 1047 (D. Minn. 2013) ........................................................... 7, 8

*Mahaffy v. Kroll*,
No. 08-cv-04992-JNE-SRN, 2010 WL 3385222 (D. Minn. Aug. 24, 2010) ......... 6, 12

*McDonough v. Anoka Cty.*,
799 F.3d 931 (8th Cir. 2015) ...................................................................... 4

*Michaelis v. Nebraska State Bar Ass'n*,
717 F.2d 437 (8th Cir. 1983) ..................................................................... 22

Page(s)

*Montgomery v. City of Ardmore*,
365 F.3d 926 (10th Cir. 2004) ............................................................................ 9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) .............................................................................. 5

*Porous Media Corp. v. Pall Corp.*,
186 F.3d 1077 (8th Cir. 1999) ............................................................................ 5

*In re Pre-Filled Propane Tank Antitrust Litig.*,
860 F.3d 1059 (8th Cir. 2017) ............................................................................ 4

*Ramirez-Peyro v. Holder*,
574 F.3d 893 (8th Cir. 2009) ......................................................................... 6, 8

*U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*,
690 F.3d 951 (8th Cir. 2012) ............................................................................ 23

*Roe v. Humke*,
128 F.3d 1213 (8th Cir. 1997) ............................................................................ 6

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ................................................................................. 5

*Smith v. Questar Capital Corp.*,
No. 12-CV-2669 ................................................................................................. 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ........................................................................................... 5

*West v. Atkins*,
487 U.S. 42 (1988) ............................................................................................. 6

*Wickersham v. City of Columbia*,
481 F.3d 591 (8th Cir. 2007) ............................................................................ 20

**Statutes**

42 U.S.C. § 1983 .......................................................................................*passim*

## I.   INTRODUCTION

The killing of George Floyd by police inspired widespread protests.  People were so disheartened and outraged by what they had seen that they took to the streets in protest, even in midst of a pandemic—first in the City of Minneapolis, then across the country, and eventually in many other cities around the world.  The killing and resultant public outcry made national and international news.  The spotlight was on Minneapolis, its police force, police chief, and president of the police union—the incendiary Bob Kroll.

In June 2020, Minneapolis Chief of Police Medaria Arradondo, the first Black person to hold that job, sat down for an interview with *60 Minutes* correspondent Leslie Stahl.  She asked him about Defendant Robert Kroll, and specifically whether Kroll's words and actions had any influence on Minneapolis police officers.  He said yes— emphatically so:

> STAHL: The president of the, uh, police union, Robert Kroll, has defended the officers in this case, and he has called the Black Lives Matter Movement a terrorist organization. And ***I just wonder if his attitudes, his outlook, is having an influence on your police force***?
>
> CHIEF ARRADONDO: ***He absolutely is an influencer. And I've continued to have very serious conversations with him.*** And he and others are going to have to come to a reckoning that either they are going to be on the right side of history or . . . they will be left behind.[1]

---

[1] Lesley Stahl, *Minneapolis Police Chief Medaria Arradondo on George Floyd's Killing Policies During Protests and Reform for His Department,* CBS News https://www.cbsnews.com/news/minneapolis-police-chief-medaria-arradondo-geroge-floyd-killing-60-minutes-2020-06-21 (emphasis added).

Chief Arradondo knew of what he spoke, of course, having himself filed a civil rights lawsuit against Kroll 13 years earlier because of racist statements Kroll had made.[2] So the Chief has "continued to have very serious conversations" with Kroll because Chief Arradondo recognizes what we all know to be true: words can have power.

Despite his powerful position and influence with Minneapolis police officers, Kroll deliberately has used words to shape and mold a violent culture within the Minneapolis Police Department ("MPD") that not only defends but *embraces* excessive force, to the deprivation of the constitutional rights of citizens. It is against this backdrop that Kroll moves to dismiss Plaintiffs' Amended Complaint for failure to state a claim, arguing that he cannot be liable under 42 U.S. § 1983 because he is a private citizen not acting under the color of law. Kroll's arguments fail because, as president of the Police Officers Federation of Minneapolis ("Federation"), Kroll is a state actor liable under Section 1983. The Court should deny Kroll's motion to dismiss.

## II.    STATEMENT OF FACTS

The Federation has more than 900 members between the ranks of Police Officer through Lieutenant.[3] (ECF No. 25-1, Labor Agreement § 1.01.) Because there are only a

---

[2] *See* Compl., *Arradondo v. City of Minneapolis*, No. 07-cv-04736-MJD-SRN (D. Minn. Dec. 3, 2007), ECF No. 1.

[3] *About us,* Police Officers Federation of Minneapolis, https://www.mpdfederation.com/about-us (last visited Oct. 30, 2020).

handful of people above the rank of lieutenant,[4] as Federation president, Kroll represents approximately 98% of all MPD officers.  (*See* ECF No. 25-1, "Labor Agreement" § 1.01.) Kroll has been president of the Federation since 2015.[5]

On May 25, 2020, former MPD officer Derek Chauvin knelt on the neck of George Floyd for at least eight minutes and forty-six seconds.  (ECF No. 19, "Am. Compl." ¶ 15.) Three of Derek Chauvin's fellow officers stood by as he killed George Floyd.  (*Id.*)  Video footage of George Floyd's murder was widely circulated and inspired protests throughout the country and worldwide.  (*Id.* ¶ 16.)  Thousands of people in Minneapolis flocked to the streets to mourn and protest George Floyd's murder.  (*Id.* ¶ 17.)  Each of the named Plaintiffs protested in the days following (hereinafter "the George Floyd protests").  (*Id.* ¶¶ 19, 43, 44, 75.)  From May 26 to May 31, named Plaintiffs Nekima Levy Armstrong, Marques Armstrong, Terry Hempfling, Rachel Clark and Max Fraden all attended protests and were protesting peacefully when MPD officers, whom Kroll represents as union chief, fired tear gas and less-lethal munitions at them.  (*See generally id.* ¶¶ 18–96.)

## III.   LEGAL STANDARD

At the pleadings stage, Plaintiffs must provide a "short and plain statement" of their claims for relief under Federal Rule of Civil Procedure 8(a).  Under this standard, the

---

[4] *Police Chief and Administration,* Minneapolis City of Lakes, (Oct. 27, 2020), https://www.minneapolismn.gov/government/departments/police/police-chief-administration.

[5] Libor Jany, *Amid Attention and Controversy, Minneapolis Police Union Head Has No Regrets*, StarTribune (Nov. 3, 2019), https://www.startribune.com/amid-attention-and-controversy-minneapolis-police-union-head-has-no-regrets/564290012.

Amended Complaint survives a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court must construe the complaint liberally "in the light most favorable to Plaintiffs." *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1070 (8th Cir. 2017) (internal quotations omitted). It must not only "accept as true all factual allegations in the complaint," but also "draw all reasonable inferences" in Plaintiffs' favor. *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015). While the factual allegations must be more than "[t]hreadbare recitals of the elements of a cause of action," they need not contain "direct evidence" or a showing that a success on the merits is more likely than not. *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. at 678). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "A motion to dismiss a complaint should not be granted unless it appears beyond doubt that a plaintiff can prove *no set of facts* that would entitle him to relief." *Smith v. Questar Capital Corp.*, No. 12-CV-2669 SRN/TNL, 2013 WL 3990319, at *2 (D. Minn. Aug. 2, 2013) (emphasis added).

As Defendant Kroll acknowledges, when considering a Rule 12(b)(6) motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular,

documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011); *see generally* 5B Wright and Miller, *Fed. Prac. & Proc. Civ.*, § 1357 (3d. ed. 2004 and Supp. 2007)) ("Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . ."). Courts may also take judicial notice of similar allegations in other lawsuits. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011); *see also Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of another complaint "as a public record").[6]

## IV.  ARGUMENT

Plaintiffs have sufficiently stated a claim under 42 U.S. § 1983 for relief against Kroll as Federation president.  He is a state actor liable under for his actions as Federation

---

[6] To the extent this memorandum includes facts not directly pled in Plaintiffs' Amended Complaint, Plaintiffs request that the Court take judicial notice of them, as they are all part of the public record.  *See Tellabs*, 551 U.S. at 322.

president under the color of law. And even if the Court finds he is a private actor, Kroll is still liable under the law. Accordingly, the Court should deny Kroll's motion to dismiss.

### A. Kroll's Actions as Federation President are Under the Color of State Law

Kroll, as president of the Federation, has acted under color of state law. He has used his power and influence over MPD to foster a culture that encourages excessive force and to stifle policy changes that could curb excessive force within the MPD, which has led to the constitutional violations visited upon Plaintiffs.

To state a claim under § 1983, Plaintiffs must allege that a person acting under color of state law violated their constitutional rights. *West v. Atkins*, 487 U.S. 42, 48 (1988). The Eighth Circuit has interpreted 'under color of state law' to mean the defendant "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997) (quoting *West*, 487 U.S. at 49)). That analysis depends on whether there is "a sufficient nexus" between the official's public position and the official's harmful conduct. *See Ramirez-Peyro v. Holder*, 574 F.3d 893, 900 (8th Cir. 2009). This is a "necessarily fact intensive" examination. *Id.* at 901. An officer need not be on duty or in uniform to trigger liability as a state actor. *See Mahaffy v. Kroll*, No. 08-CV-4992 JMR/SRN, 2010 WL 3385222, at *5–7 (D. Minn. Aug. 24, 2010) (finding Kroll was acting under color of state law when he attacked plaintiffs while off-duty and in plain clothes). Furthermore, courts have found that a defendant acts under color of state law if he is "a state actor or ha[s] a sufficiently close relationship with state actors such that ... [he] is

engaged in the state's actions." *Cox v. Duke Energy Inc.*, 876 F.3d 625, 632 (4th Cir. 2017).

As Federation president, Kroll performs a duty within the scope of his employment by the City of Minneapolis and as a state actor under the color of law. It is only under his state-given authority as a lieutenant in MPD that he is eligible to lead the Federation. While Kroll argues that he is a private actor because he is full-time Federation staff, the agreement between the Federation and the City of Minneapolis—on which he selectively relies—shows that he is still an MPD employee. The agreement specifically states that "The Federation President . . . shall continue as employee[] of the Department with all rights, benefits and obligations relating thereto." (Labor Agreement § 25.03(g)(1).) As an MPD employee, and as Defendant Kroll himself acknowledges, MPD can still require Kroll to perform "Mandatory MPD Duties." MPD keeps an office for him within its human resources unit and pays his salary. (*Id.*, Arts. 2, 13.) And the agreement makes clear that as Federation president, Kroll oversees and is directly tied to other MPD officers. *See Cox*, 876 F.3d at 632. Accordingly, as Federation president, Kroll is acting under color of law.

### 1. Kroll presents no valid support for his argument that he is not acting under color of law as president of the Federation

Kroll cites a number of cases in support of his argument that he cannot be an actor under color law as president of the Federation, but his reliance on them is misplaced. Kroll relies heavily on *Magee v. Trustees of Hamline University, Minn.*, 957 F.Supp. 2d 1047 (D. Minn. 2013) to support his argument that he does not act under color of state law. But *Magee* is highly distinguishable from the facts here. In *Magee*, a police officer, who was

president of the St. Paul Police Federation, published a response to a newspaper editorial on the St. Paul Police Federation's website and conspired to get the plaintiff fired from her job. The plaintiff in *Magee* failed to allege he was acting in his role as a police officer when he violated her constitutional rights. Accordingly, the court found that the plaintiff failed to allege that his actions were under color of law.

Here, all of Kroll's conduct as pled by Plaintiffs is directly related to his affiliation with the MPD. Plaintiffs have pled that Kroll's speech as president of the Federation encourages excessive force within the MPD—directly tying his conduct to that of other police officers, who are indisputably state actors. Likewise, *Magee* does not support Kroll's argument that labor unions are not state actors—it merely supports the premise that a police union member is not acting under the color of state law if he is engaged in activities *not* related to policing. This starkly contrasts Kroll's conduct, which is entrenched in police activity.

Similarly, Kroll's reliance on *Ramirez–Peyro v. Holder*, 574 F.3d 893 (8th Cir. 2009), is misplaced. *Ramirez-Peyro*—which notably was not at the pleadings stage but after fact-finding—supports the premise that determining whether an official acts under color of law involves a fact-intensive determination of whether "a sufficient nexus exists between the official's public position and the official's harmful conduct." *Ramirez-Peyro*, 574 F.3d at 900. Plaintiffs' allegations stem from Kroll's role as president of the Federation—and though Kroll could not be president of the Federation without also being a police officer—the conduct in question is his conduct as president of the Federation. Accordingly, as Plaintiffs' allegations are directly tied to Kroll's conduct in his capacity as

president of the Federation, Plaintiffs have established that a sufficient nexus exists between Kroll's position and his harmful conduct.

Kroll also mischaracterizes *Montgomery v. City of Ardmore*, 365 F.3d 926 (10th Cir. 2004) to support the mistaken premise that labor unions are not state actors. First, *Montgomery* does not stand for the flat proposition that labor unions are not state actors. *Montgomery* expressly leaves open the possibility that they could be state actors. 365 F.3d at 942 ("Labor unions such as the FOP are *generally* not state actors…") (emphasis added). Second, Plaintiffs have not sued the Federation, but instead have sued Kroll, so the comparison is inapplicable. Third, in *Montgomery*, the plaintiff was a former officer who sued the police labor union after he was terminated from the police force, which presents an entirely different backdrop than the one at issue here.

Similarly, Kroll misconstrues the central principle in *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)—also not issued at pleadings stage, but on appeal after a jury verdict. *Praprotnik* fails to support the proposition that Kroll cannot be held liable under § 1983 because he does not have final policymaking authority. *Praprotnik* instead "define[s] the proper legal standard for determining when isolated decisions by municipal officials or employees may expose the *municipality itself to liability* under 42 U.S.C. § 1983." 485 U.S. at 114 (emphasis added). It in no way addresses the liability of an individual under § 1983. At issue here is not the municipality's liability for Kroll's actions, but whether *Kroll* himself is liable under § 1983 as a state actor.

Accordingly, Kroll has established no basis as to why his conduct as president of the Federation is not under the color of law.

**2.    Plaintiffs sufficiently pled that Kroll cultivated a culture of excessive force within the MPD ranks that proximately caused Plaintiffs' injuries.**

As pled by Plaintiffs, through his outsized influence on the ranks of members he represents within the Federation, Kroll has used his position as president of the Federation to encourage a culture of use of excessive force in the MPD.  His influence is particularly broad because as president of the Federation, he represents the overwhelming majority of the MPD at 900 members.  Kroll's June 1, 2020 letter to Federation members is only the most recent example in that history and underscores it.  In it, Kroll ignores the constitutional rights of citizens to protest peacefully, choosing to describe the George Floyd protests strictly as a riot and terrorist movement and encouraging MPD officers to use gas munitions and less lethal munitions "to defend themselves."[7]  Kroll's letter reinforces the culture he has cultivated in the MPD as president of the Federation: one in which officers have no regard for the constitutional rights of civilians and excessive force is acceptable. In it, he embraces the unconstitutional use of excessive force by MPD officers and tacitly encourages them to keep doing it:

> I commend you for the excellent police work you are doing in keeping your coworkers and others safe during what everyone except us refuses to call a riot . . . . The politicians are to blame and you are the scapegoats.[8]

---

[7] *MPD Union Leader Releases Letter to Officers Critical of Minneapolis Leadership,* CBS Minn. (June 1, 2020 2:39PM), https://minnesota.cbslocal.com/2020/06/01/mpd-union-leader-releases-letter-to-officers-critical-of-minneapolis-leadership.

[8] *Id.*

Kroll dismisses the letter because it was sent after the incidents complained about in the Amended Complaint, but that misses the point. The issue is not whether the letter itself caused Plaintiffs' injuries—which Plaintiffs have not alleged—but whether the letter is illustrative of the culture that Kroll has created in the MPD ranks. It is, and a factfinder reasonably could find as much.

Kroll reinforced this culture even during the George Floyd protests, as seen in his May 29, 2020 email to MPD command.[9] Again, he mentions nothing about the constitutional rights of citizens and instead refers to the protests as riots. Speaking on behalf of Federation members, Kroll states: "The officers have lost faith in leadership that appears handcuffed by political power that despises us." In flagrant disregard for the constitutional rights of citizens, he complains about the low number of arrests and restrictions on use of gas and less lethal munitions during the protests.[10]

As president of the Federation, Kroll has encouraged excessive force within the MPD to the deprivation of constitutional rights of citizens in a number of ways: his speech regarding his personal disciplinary record, his praise of officers accused of excessive force and his public cries for aggressive MPD treatment toward peaceful protesters.

---

[9] *1-on-1 Interview with Minneapolis Police Union Chief Lt. Bob Kroll, and how the Union is Responding to George Floyd's Death*, KSTP (June 23, 2020 10:27 PM), https://kstp.com/news/minneapolis-police-union-blames-failed-leadership-for-riots-violence-june-23-2020/5769384/.

[10] *Id.*

Kroll, no stranger to use of excessive force himself, sets his own personal example for the MPD that excessive force against civilians is acceptable and comes with the job. As president of the Federation, he has routinely bragged about the number of complaints filed against him by civilians: "I've had 54 complaints filed against me over my 31 years, and I'm still here. I'm still Lieutenant. I've been disciplined, but none of it has ever been upheld. I've been sued 11 times."[11] In one of the at least eleven times Kroll has been sued, he was sued on a § 1983 claim for excessive force and unreasonable seizure after he attacked the plaintiff as an off-duty officer.[12] The case settled after his motion for summary judgment was denied.[13]

Kroll further encourages excessive force within the ranks of the MPD by praising officers sued by civilians for excessive force. For example, in 2015, the City of Minneapolis settled a lawsuit in which a Minneapolis woman accused MPD officer Tyrone Barze, Jr. of excessive force by punching her in the face as she tried to record his arrest of her friends.[14] Kroll applauded Barze's actions: "When you're a hardworking cop, these

[11] Rilyn Eischens, *Minneapolis Police Union Boss Bob Kroll Tells Podcast how to Defeat Civilian Review*, Minn. Reformer (June 24, 2020), https://minnesotareformer.com/2020/06/24/minneapolis-police-union-boss-bob-kroll-tells-podcast-how-beat-civilian-review.

[12] *Mahaffy v. Kroll*, No. 08-cv-04992-JNE-SRN, 2010 WL 3385222 (D. Minn. Aug. 24, 2010).

[13] *See Mahaffy v. Kroll*, No. 08-cv-04992-JNE-SRN (D. Minn. Oct. 28, 2010), ECF No. 79; *see also Mahaffy v. Kroll*, No. 08-cv-04992-JNE-SRN (D. Minn. Nov. 15, 2010), ECF No. 82.

[14] Libor Jany, *Minneapolis Pays $82,000 in Case of Maple Grove Woman Allegedly Punched by Officer*, StarTribune (Sept. 23, 2015 1:14 AM),

are the kinds of situations you get in."[15]  For those he does not praise, he supports.  In 2017, before a committee of the U.S. Civil Rights Commission, Kroll stated: "You show me an officer who's never had a complaint in 30 years and I'll show you an officer that's what we call on the job, a load or a slug—that doesn't do anything."[16]

Kroll has even defended MPD officers *terminated* for excessive force.  In 2016, the MPD terminated officer Rod Webber after pulling over four teens, detaining them for forty-five minutes and threatening to break one of the teen's legs.[17]  Kroll defended Webber as "a highly decorated 25-year veteran officer" and stated that he believed the termination was unwarranted.[18]  When former officer Blayne Lehner, whom MPD attempted to fire twice due to his problematic disciplinary record, was reinstated after one of the firings in 2016, Kroll called him an "excellent cop" and said he was "an extremely hard worker" who

---

https://www.startribune.com/minneapolis-pays-82-000-in-case-of-maple-grove-woman-allegedly-punched-by-officer/328687241.

[15] *Id.*

[16] Brandt Williams, *'Bob Kroll has Got to Go': Calls Grow for Minneapolis Police Union Leader's Resignation*, MPR News (June 12, 2020 9:00 AM), https://www.mprnews.org/story/2020/06/12/calls-for-mpd-union-leaders-resignation-grow-louder.

[17] Reg Chapman, *Minneapolis Officer Who Allegedly Threatened to Break Teen's Leg Fired*, CBS Minn. (Jan. 25, 3016 6:32 PM), https://minnesota.cbslocal.com/2016/01/25/minneapolis-officer-who-allegedly-threatened-to-break-teens-leg-fired.

[18] *Id.*

"serves the city well."[19]  Lehner ultimately was fired due to an incident of excessive force where he kicked an 18-year-old handcuffed man, breaking his jaw and nose and knocking out two of his teeth.[20]

Not only has Kroll publicly supported the use of excessive force, he has also encouraged an MPD culture of depriving citizens of constitutional rights by criticizing MPD and the City's handling of protests prior to the George Floyd demonstrations.  Shortly after Kroll became Federation president in 2015, an MPD officer killed Jamar Clark.[21]  Protests ensued.  Kroll publicly accused MPD Police Chief Janeé Hartreau and City leadership of not supporting officers and putting them in danger by giving in to pressure from protesters regarding MPD conduct.[22]  He explicitly criticized Mayor Betsy Hodges

---

[19] Brandt Williams, *Mpls. Cop Gets Job Back After Being Fired for Violating Use-of-Force Policy*, MPR News (Oct. 18, 2016 9:00 AM), https://www.mprnews.org/story/2016/10/18/minneapolis-police-officer-reinstated-after-firing.

[20] Ryan Raiche, *MPD Officer Who Has Been Fired Twice for Excessive Force Will Remain Fired Following Arbitration Ruling*, KSTP (June 25, 2020 10:14 PM), https://kstp.com/news/mpd-officer-who-has-been-fired-twice-for-excessive-force-will-remain-fired-following-arbitration-ruling/5772259.

[21] *See* Libor Jany, *Controversy Follows Minneapolis Police Union President*, StarTribune (Dec. 11, 2015 7:51 AM), https://www.startribune.com/controversy-follows-minneapolis-police-union-chief/361517061/.

[22] *Id.*

for not allowing police to crackdown on the protesters.[23]  He has also advocated shutting down civilian police oversight, which could lessen the use of excessive force.[24]

Kroll's creation of a culture of use of excessive force within the MPD is well known by others in the community.  On June 2, 2020, Minnesota AFL-CIO President Bill McCarthy issued a letter, signed by multiple Minnesota labor unions, calling for Kroll's resignation stating: "Bob Kroll and those who have enabled violence and brutality to grow within police ranks do not speak for us."[25]  Education Minnesota President Denise Specht has similarly called for Kroll's resignation, attributing the violent culture of the MPD to him: "We know the dangerous culture of the Minneapolis Police Department will not be changed overnight by the removal of a single leader, but it's a start."[26]

Kroll's influence on the MPD is undeniable—even Chief of Police Medaria Arradondo has acknowledged as much.[27]  Kroll has used his platform as president of the Federation to encourage excessive force by MPD officers and to resolutely refuse to

---

[23] *MPD Union Head Speaks out on Jamar Clark Case, Protests*, CBS Minn. (Nov. 19, 2015 2:57 PM), https://minnesota.cbslocal.com/2015/11/19/mpd-union-head-speaks-out-on-jamar-clark-case-protests.

[24] *Supra* note 11.

[25] Statement, Bill McCarthy, Minnesota AFL-CIO President, Minnesota AFL-CIO (June 2, 2020), https://www.mnaflcio.org/updates/minnesota-afl-cio-calls-minneapolis-police-union-president-bob-kroll%E2%80%99s-immediate-resignation.

[26] News Release, Chris Williams, Education Minnesota (June 2, 2020), https://educationminnesota.org/news/media-resources/news-releases/Education-Minnesota-calls-for-resignation-of-Minne.

[27] *Supra* note 1.

address or acknowledge the constitutional rights of citizens to be free of excessive force by police officers.  Kroll's words as president of the Federation set the tone for MPD officers to use excessive force in flagrant disregard of constitutional rights of citizens, including Plaintiffs.  This MPD environment cultivated by Kroll has created the constitutional violations of retaliation and excessive force pled by Plaintiffs.

3. **Plaintiffs have sufficiently pled that Kroll has influenced MPD policy preventing constitutional protections against excessive force that proximately caused Plaintiffs' injuries.**

Plaintiffs have adequately pled a claim that Kroll, as a policymaker for MPD, is liable for the constitutional violations of Plaintiffs.  The Federation agreement with the City grants Kroll this authority, as the Federation has oversight on MPD policies before they are implemented.  (*See* Labor Agreement, Art. 6 ("The City agrees to enter into discussion with the Federation on additions to or changes in the existing rules and regulations prior to their implementation.")).   The agreement is designed to allow Federation involvement in all aspects of MPD policy.  Section 11.07 provides a means for "resolution of disputes or concerns" about MPD policy, without any claim that by engaging in such discussions the City has waived its "unabridged managerial prerogatives."  (*Id.* § 11.07.)  As such, it provides: "The Parties may freely discuss any such matters [of inherent managerial policy] and may reach an understanding regarding the extent to which the matter may be resolved and/or the manner of resolution," without the City waiving its right to assert that "the matter is one of inherent managerial policy not subject to mandatory collective bargaining prior to implementation."  (*Id.*)  The agreement also gives the Federation power to assert that issues viewed by the MPD as matters of inherent managerial

policy are instead "employment conditions" subject to collective bargaining prior to implementation. (*Id.*) Under these provisions, Kroll has input on MPD policies and can effectively prevent the MPD from establishing new policies or procedures. Accordingly, the agreement creates a framework by which the Federation, and particularly Kroll as its President, can and do influence MPD policy.

Despite this express authority and Kroll routinely holding himself out to the public as influencing MPD policy during his tenure as president of the Federation, Kroll *now* argues that he is *not* a policymaker for the MPD. But Kroll cannot dissociate himself from his self-curated public persona as an MPD leader and policymaker who engages with the MPD and community in that role.

In his June 1, 2020 letter to Federation members, he holds himself out as a leader of the police response to the George Floyd protests, stating:

> "I've had numerous conversations with politicians at the state level. I gave a detailed plan of action including a range of 2000 to 3000 National Guard, their deployment allocations throughout our city and St. Paul, in a phone meeting with Senate majority leader Paul Gazelka. I've worked with other police leaders from New York to Las Vegas to push our messaging on a national level."[28]

Through his engagement with the community as president of the Federation, Kroll has influenced MPD policy by resisting any reform that could curb use of excessive force within the department. In 2017, when the MPD proposed changes to its policy regarding use of deadly force, Kroll was very vocal in his opposition, stating publicly that

---

[28] *Supra* note 7.

"[Federation] members were up in arms" and raising his concerns with MPD leadership.[29]

As a result, the MPD retreated from implementing any of the proposed changes.[30]

Community leaders, including former Chief of Police Janeé Hartreau have acknowledged the great influence that the Federation has over MPD policy, admitting that it has more influence over MPD policy than the Chief of Police: "The police federation has historically had more influence over police culture than any police chief ever could…I was fought at every turn from bringing body cameras to the police department to having implicit bias training to professional development processes and having some more consistency in promotions."[31]  Former Assistant Police Chief Kris Arneson has echoed that sentiment: "Kroll instigates behind the scenes all the time, and if anybody thinks he doesn't, they don't know what they're talking about…I've seen him agree to reform efforts and then hack away at them behind the scenes."[32]

[29] Libor Jany, *Minneapolis Cops Retreat from Stricter Deadly-Force Policy*, StarTribune (June 26, 2017 10:45PM), https://www.startribune.com/minneapolis-cops-retreat-from-stricter-deadly-force-policy/429986473/?refresh=true.

[30] *Id.*

[31] Chris McGreal, *Hopeful that Minneapolis Policing will Change? Meet the Police Union's Chief …*, The Guardian (June 5, 2020 5:30 AM) https://www.theguardian.com/us-news/2020/jun/05/minneapolis-police-union-bob-kroll-us.

[32] Andy Mannix & Libor Jany, *After Decades of the Minneapolis Police Union Wielding Clout, the Entire Department is now at Risk*, StarTribune (June 14, 2020 7:23 PM) https://www.startribune.com/after-decades-of-union-clout-entire-police-dept-now-at-risk/571242042.

Not only has Kroll, as president of the Federation, resisted reforms that could prevent excessive force against civilians, he has also frustrated reforms enacted by City officials. For example, when current Minneapolis Mayor Jacob Frey banned the MPD's use of "warrior style training" for its officers, Kroll embraced this "warrior style training" and offered it to any MPD officer who wanted it.[33] "Warrior style training" employs a fear-based approach to policing "that prioritizes officer safety over community safety by conditioning trainees to view all encounters as inherently dangerous."[34] It is precisely the type of training that lends itself to police officers using excessive force on civilians. Although it is unclear whether MPD officers attended these outside trainings, Kroll's public contradiction of the mayor's attempts at reform is enough to frustrate the City's reforms. Mayor Frey also underscores how the Federation has undercut attempts at policy reform in Minneapolis: "For years in Minneapolis, police chiefs and elected officials committed to change have been thwarted by police union protections and laws that severely

[33] Kimberly Kindy & Mark Berman, *Police Chiefs and Mayors Push for Reform. Then they run into Veteran Officers, Unions and 'how Culture is Created.'* (June 28, 2020 5:32 PM), https://www.washingtonpost.com/national/police-chiefs-and-mayors-push-for-reform-then-they-run-into-veteran-officers-unions-and-how-culture-is-created/2020/06/28/7d2ff812-b2ef-11ea-8f56-63f38c990077_story.html.

[34] Cinnamon Janzer, *Minneapolis Bans 'Warrior-Style' Training for Police Officers*, Next City (April 30, 2019), https://nextcity.org/daily/entry/minneapolis-bans-warrior-style-training-for-police-officers.

limit accountability among police departments."[35]  Chief Arradondo has flatly called Kroll "an absolute influencer" on the MPD.[36]

Kroll's influence on MPD policy is undeniable.  Instead of using his power as president of the Federation to ensure that MPD officers operate within proper constitutional limitations of use of force against citizens, he has lobbied for exactly the opposite.  He has influenced MPD policy to directly disregard the constitutional protections of citizens and this influence created the environment for the MPD to violate the constitutional rights of Plaintiffs as pled in the Amended Complaint.

**B.      Kroll is Liable Under § 1983 Even as a Private Actor**

Kroll's mistaken insistence that he is a private actor still does not relieve him of liability under § 1983.  A private actor is liable under § 1983 if he is a "willful participant in joint activity with the State or its agents," *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970), or "pervasively entertwine[d]" with state actors.  *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001).  There must be "a 'close nexus' not merely between the state and the private party, but between the state and the alleged deprivation itself." *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007).  All of these are true for Kroll.  As pled by Plaintiffs, Kroll has acted directly with and influenced MPD officers to create an MPD culture that embraces excessive force

---

[35] Jessie Van Berkel & Liz Navratil, *Minnesota Human Rights Department Launches Probe into Minneapolis Police*, StarTribune (June 3, 2020 10:57 AM), https://www.startribune.com/minn-officials-push-for-systems-change-at-minneapolis-police-dept/570958652.

[36] *Supra* note 1.

in flagrant disregard for constitutional rights of citizens. MPD officers, operating from that culture, violated Plaintiff's constitutional rights to protest peacefully and be free from excessive force. Thus, a sufficient nexus exists.

Kroll's claims that the Federation is a non-profit corporation have no bearing on this analysis. As shown in *Brentwood*, a non-profit school association can be liable under § 1983: "[t]he nominally private character of the Association is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to it." 531 U.S. at 298. The same analysis applies to this case, where Kroll, as Federation president representing nearly 100 percent of MPD, influences MPD policies and procedures. Likewise, Kroll's claim that the Federation is a labor union and thus not subject to § 1983 fails for the same reason. Labor unions can be liable under § 1983. *Dossett v. First State Bank*, 399 F.3d 940, 950 (8th Cir. 2005) ("[W]hen a private entity such as a union acts in concert with a public agency to deprive people of their federal constitutional rights, it is liable under section 1983 along with the agency.")

A sufficient nexus exists between Kroll's influence on a culture of excessive force within the MPD and the MPD's use of excessive force on Plaintiffs in violation of their constitutional rights. Thus, there are no bars to § 1983 liability based on Kroll's relationship with the Federation, Kroll is sufficiently liable as a private actor under § 1983.

### C. Plaintiffs' Claims Do Not Implicate Kroll's First Amendment Rights

Kroll also argues that his speech is protected by the First Amendment. This argument is misplaced, as Plaintiffs have not sought to limit Kroll's speech. Instead,

Plaintiffs have alleged that his speech and conduct have had significant effects on the MPD—in a way that has harmed Plaintiffs and threatens to harm others.

As discussed in detail above, Kroll's speech provokes MPD officers to engage in violent and lawless interactions with civilians. Kroll labels his speech simply as "offensive" or "controversial" commentary of a private citizen. But these labels are inaccurate.[37] First, as pled, Kroll is speaking not as a private citizen, but as the president of the Federation. And despite Kroll's arguments to the contrary, as Federation president he qualifies as a state actor. Second, Plaintiffs did not plead that Kroll's speech as president of the Federation was offensive or controversial—but instead that it negatively influenced MPD policy and incited a violent stance of MPD toward citizens, including Plaintiffs. Third, Plaintiffs have not challenged Kroll's freedom to speak on topics of public concern, but have alleged that Kroll's speech is influential in creating a culture within the MPD that encourages excessive force against citizens in flagrant disregard of their constitutional rights. The Court should not be distracted by Kroll's First Amendment arguments, which have no bearing here.

### D. Dismissal With Prejudice Is Improper In Any Event

Kroll's motion should be denied outright for the reasons stated above. If it is granted, however, it should be without prejudice. It is well settled that a plaintiff subject to a successful motion to dismiss for failure to state a claim ordinarily should be given an opportunity to cure the deficient pleading. *Michaelis v. Nebraska State Bar Ass'n*, 717

---

[37] Kroll's reference to Plaintiff Nekima Levy Armstrong's Twitter posts similarly have no bearing on Plaintiffs' claims.

F.2d 437, 438–39 (8th Cir. 1983) ("Ordinarily dismissal of a plaintiff's complaint for failure to comply with Rule 8 should be with leave to amend."). The rare exception to this rule is when there are *no set of facts* upon which the plaintiff could possibly survive an amended pleading. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 958 (8th Cir. 2012) ("[F]utility constitutes a valid reason for denial of a motion to amend."). Here, Kroll has alleged deficiencies he contends mandate dismissal under Rule 12(b)(6) but has not argued that amendment would be futile. Accordingly, Kroll has not met his high burden to show that a dismissal with prejudice is warranted.

## V. CONCLUSION

Accordingly, Plaintiffs respectfully respect that the Court deny Kroll's motion to dismiss. Alternatively, should the Court find that Plaintiffs have failed to state a claim against Kroll, Plaintiffs respectfully request leave to amend.

Dated: November 2, 2020        FISH & RICHARDSON P.C.

By:    */s/ Ahmed J. Davis*
        Michael E. Florey (#0214322)
        florey@fr.com
        Veena V. Tripathi (#0401111)
        tripathi@fr.com
        FISH & RICHARDSON P.C.
        3200 RBC Plaza
        60 South 6th Street
        Minneapolis, MN 55402
        Tel: (612) 335-5070

        Ahmed J. Davis (*pro hac vice*)
        davis@fr.com
        FISH & RICHARDSON P.C.
        1000 Maine Avenue, S.W. Suite 1000
        Washington, D.C. 20024
        Tel: (202) 783-5070

        Excylyn J. Hardin-Smith (*pro hac vice*)
        Hardin-smith@fr.com
        FISH & RICHARDSON P.C.
        7 Times Square, 20th Floor
        New York, NY 10036
        Tel: (212) 765-5070

        Teresa J. Nelson (#0269736)
        tnelson@aclu-mn.org
        Clare A. Diegel (#0400758)
        cdiegel@aclu-mn.org
        Isabella S. Nascimento (#0401408)
        inascimento@aclu-mn.org
        AMERICAN CIVIL LIBERTIES
        UNION OF MINNESOTA
        P.O. Box 14720
        Minneapolis, MN 55414
        Tel: (651) 645-4097

        ***Attorneys for Plaintiffs***