## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Nekima Levy Armstrong, Marques
Armstrong, Terry Hempfling, Rachel Clark,
and Max Fraden, *on behalf of themselves and
other similarly situated individuals,*

        Plaintiffs,

      v.

City of Minneapolis, Minneapolis Chief of
Police Medaria Arradondo *in his individual
and official capacity*; Minneapolis Police
Lieutenant Robert Kroll, *in his individual and
official capacity*; Minnesota Department of
Public Safety Commissioner John Harrington,
*in his individual and official capacity*;
Minnesota State Patrol Colonel Matthew
Langer, *in his individual and official capacity*;
and John Does 1-2, *in their individual and
official capacities,*

        Defendants.

Civil Action No. 20-cv-01645- SRN-DTS

**PLAINTIFFS' OPPOSITION TO
STATE DEFENDANTS' MOTION
TO DISMISS**

---

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ..................................................................................... 1

II.  STATEMENT OF FACTS ....................................................................... 2

III.  LEGAL STANDARD ............................................................................ 3

IV.  ARGUMENT ......................................................................................... 4

    A.  The Eleventh Amendment Does Not Bar Plaintiffs' Claims against State Defendants. ........................................................... 5

    B.  Plaintiffs Have Adequately Pled a Claim against State Defendants in Their Official Capacities ...................................... 6

        1.  Plaintiffs' Claims Do Not Depend on the Assumption They Will Engage in Unlikely Misconduct. .................................................................. 10

        2.  Plaintiffs Have Adequately Alleged an Official Pattern and Practice of Unlawful Use of Force .............................. 12

    C.  Plaintiffs Have Pled an Adequate Claim against State Defendants in Their Individual Capacities ............................... 13

        1.  State Defendants are not entitled to qualified immunity ....................................................................... 16

            a.  Plaintiffs have sufficiently pled a violation of their "clearly established" First Amendment rights ........................................................... 19

            b.  Plaintiffs have sufficiently pled a violation of their "clearly established" Fourth Amendment rights ........................................................... 21

            c.  Plaintiffs have sufficiently pled a violation of their "clearly established" Fourteenth Amendment rights ........................................................... 23

    D.  Plaintiffs Pled a Plausible Due Process Claim .......................... 24

i

E.     State Defendants' Standing and Class Allegations are Wrong ....................................................................... 26

F.     The Form of Plaintiffs' Allegations are Sufficient ................................... 28

G.     Dismissal With Prejudice Is Improper In Any Event............................. 31

V.     CONCLUSION ................................................. 31

# TABLE OF AUTORITIES

**Cases**

*Abdullah v. Cty. of St. Louis,*
    52 F. Supp. 3d 936 (E.D. Mo. 2014)................................................23, 24, 25

*Am. Inst. of Physics v. Schwegman Lundberg & Woessner, P.A.,*
    No. CIV. 12-528........................................................................................ 29

*Anderson v. Creighton,*
    483 U.S. 635 (1987).................................................................................. 18

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001), ................................................................. 11

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011).................................................................................. 18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................... 3

*Balogh v. Lombardi,*
    816 F.3d 536 (8th Cir. 2016) ..................................................................... 6

*Barham v. Ramsey,*
    434 F.3d 565 (D.C. Cir. 2006) ............................................................23, 24

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................4, 30

*Bernini v. City of St. Paul,*
    665 F.3d 997 (8th Cir. 2012) ................................................................... 22

*Bostrom v. N.J. Div. of Youth & Family Servs.,*
    969 F. Supp. 2d 393 (D.N.J. 2013) .......................................................... 25

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) ..................................................................... 3

*Brazil v. Arkansas Dep't of Human Servs.,*
    892 F.3d 957 (8th Cir. 2018) ..................................................................9, 12

*Brown v. City of Golden Valley,*
    574 F.3d 491 (8th Cir. 2009) ................................................................21, 22

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983)..............................................................................*passim*

*Coleman v. Watt,*
   40 F.3d 255 (8th Cir. 1994) ............................................................. 11, 12

*Donaldson v. Pillsbury Co.,*
   554 F.2d 825 (8th Cir. 1977) ................................................................ 27

*Draper v. Reynolds,*
   369 F.3d 1270 (11th Cir. 2004) ............................................................ 21

*F.C.C. v. Fox Television Stations, Inc.,*
   567 U.S. 239 (2012) .............................................................................. 23

*Fla. State Conference of NAACP v. Browning,*
   522 F.3d 1153 (11th Cir. 2008) ............................................................ 11

*Gen. Tel. Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982) .............................................................................. 27

*Goyette v. City of Minneapolis,*
   No. 20-cv-01302 (D. Minn. June 5, 2020), ECF No. 28 .......................... 9

*Goyette v. City of Minneapolis,*
   No. 20-cv-1302 2020 WL 3056705 (D. Minn. June 9, 2020) ................. 28

*Hahn v. McLey,*
   737 F.2d 771 (8th Cir. 1984) (per curiam) ........................................... 14

*Hernandez v. Cremer,*
   913 F.2d 230 (5th Cir. 1990) ................................................................ 11

*Hickey v. Reeder,*
   12 F.3d 754 (8th Cir.1993) ................................................................... 22

*Honig v. Doe,*
   484 U.S. 305 (1988) .............................................................................. 11

*Hope v. Pelzer,*
   536 U.S. 730 (2002) .............................................................................. 18

*Jones v. Douglas Cty. Sheriff's Dept.,*
   915 F.3d 498 (8th Cir. 2019) ................................................................ 30

*Kampschroer v. Anoka Cty.,*
   57 F. Supp. 3d 1124 (D. Minn. 2014) ........................................ 28, 29, 30

*Klinger v. Dir., Dept. of Rev.,*
   281 F.3d 776 (8th Cir. 2002) .................................................................. 5

*Knowles v. Standard Fire Ins. Co.*,
  No. 4:11-cv-04044, 2013 WL 6497097 (W.D. Ark. Dec. 11, 2013)........................... 28

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ....................................................................... 23, 24

*Krutchen v. Zayo Bandwidth Northeast, LLC*,
  591 F. Supp. 2d 1002 (D. Minn. 2008) ........................................................ 25

*Larez v. City of Los Angeles*,
  946 F.2d 630 (9th Cir. 1991) ................................................................ 16

*Lawyer v. City of Council Bluffs*,
  361 F.3d 1099 (8th Cir. 2004) ............................................................... 21

*Libertarian Party of L.A. Cty. v. Bowen*,
  709 F.3d 867 (9th Cir. 2013) ................................................................. 6

*Martin v. Sargent*,
  780 F.2d 1334 (8th Cir. 1985) ................................................................ 9

*McDonough v. Anoka Cty.*,
  799 F.3d 931 (8th Cir. 2015) ................................................................. 4

*McGrath v. Scott*,
  250 F. Supp. 2d 1218 (D. Ariz. 2003) ........................................................ 16

*McGuire v. Cooper*,
  952 F.3d 918 (8th Cir. 2020) ................................................................ 15

*Michael v. Trevena*,
  899 F.3d 528 (8th Cir. 2018) ................................................................ 21

*Michaelis v. Nebraska State Bar Ass'n*,
  717 F.2d 437 (8th Cir. 1983) ................................................................ 31

*Minnesota RFL Republican Farmer Labor Caucus v. Freeman*,
  --- F. Supp. 3d ---, No. 19-cv-1949, 2020 WL 5512509 (D. Minn.
  Sept. 14, 2020) ............................................................................ 26

*Monell v. Dept. of Social Servs.*,
  436 U.S. 658 (1978) ..................................................................... 14, 16

*Mono Advert., LLC v. Vera Bradley Designs, Inc.*,
  285 F. Supp. 3d 1087 (D. Minn. 2018) ........................................................ 25

*Munns v. Kerry*,
  782 F.3d 402 (9th Cir. 2015) ................................................................. 6

*Musser v. Mapes*,
 718 F.3d 996 (8th Cir. 2013) .......................................................... 23

*Nobles v. State Farm Mut. Auto. Ins. Co.*,
 2012 WL 4090347 (W.D. Mo. Sept. 17, 2012) ............................... 28

*Osuna v. City of New York*,
 No. 08-civ-4759, 2009 WL 2356424 (S.D.N.Y. July 30, 2009) .................................. 25

*Parrish v. Ball*,
 594 F.3d 993 (8th Cir. 2010) .......................................................... 18

*Pearson v. Callahan*,
 555 U.S. 223 (2009) ........................................................................ 16

*Peterson v. Kopp*,
 754 F.3d 594 (8th Cir. 2014) ..................................................... 19, 20

*In re Pre-Filled Propane Tank Antitrust Litig.*,
 860 F.3d 1059 (8th Cir. 2017) .......................................................... 4

*U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*,
 690 F.3d 951 (8th Cir. 2012) .......................................................... 31

*Richardson v. Texas Secretary of State*,
 --- F. Supp. 3d ---, No. SA-19-cv-00963, 2020 WL 5367216 (W.D.
 Tex. Sept. 8, 2020) ......................................................................... 26

*Roe v. City of New York*,
 151 F. Supp. 2d 495 (S.D.N.Y. 2001) ............................................ 11

*S.M. v. Krigbaum*,
 808 F.3d 335 (8th Cir. 2015) .......................................................... 17

*Smith v. Hundley*,
 190 F.3d 852 (8th Cir. 1999) ............................................................ 9

*Smith v. Questar Capital Corp.*,
 No. 12-CV-2669 ................................................................................ 4

*Spencer v. Kemna*,
 523 U.S. 1 (1998) ...................................................................... 10, 12

*Treats v. Morgan*,
 308 F.3d 868 (8th Cir. 2002) .......................................................... 22

*Van Stelton v. Van Stelton*,
 No. C11-4045-MWB, 2013 WL 3776813 (N.D. Iowa July 17, 2013) ....................... 30

*Walker v. World Tire Corp., Inc.*,
    563 F.2d 918 (8th Cir. 1977) ........................................................................ 28

*Wever v. Lincoln Cty., Nebraska*,
    388 F.3d 601 (8th Cir. 2004) ........................................................................ 14

*Zean v. Fairview Health Servs.*,
    858 F.3d 520 (8th Cir. 2017) .......................................................................... 3

*Zinermon v. Burch*,
    494 U.S. 113 (1990) ...................................................................................... 24

**Statutes**

42 U.S.C. § 1983 ............................................................................. 4, 13, 15, 30

## I.    INTRODUCTION

There is one point on which all parties in this case can agree:  We are in unprecedented times.  Even in the midst of a global pandemic, with political tensions higher than ever and a societal spotlight on racial injustice sparked by the murder of George Floyd, millions of people in our country, including Plaintiffs, have peacefully marched in the streets to protest racial injustice.  Protests themselves—particularly regarding racial injustice—are not new.  Peaceful protests, guaranteed by the U.S. Constitution, have been foundations for change in this country and thus should be fiercely protected.  The right to protest peacefully, free from retaliation and excessive force, is sacrosanct and must be fiercely protected by all Americans—particularly by those which we entrust with badges and weapons.

But instead of guarding the fundamental right to assemble and speak, in May 2020, State *and* local law enforcement in Minneapolis trampled on the constitutional rights of its citizens by firing tear gas and less-lethal munitions on peaceful protesters with no regard for their safety and, without adequate warning, when they posed no threat to law enforcement.  These actions are not excusable simply because law enforcement qualified the week following George Floyd's murder as a period of "unprecedented civil unrest."

Minnesota Department of Public Safety Commissioner John Harrington and Minnesota State Patrol Colonel Matthew Langer (collectively, "State Defendants") have moved to dismiss Plaintiffs' Amended Complaint—with prejudice on several grounds, none of which should prevail.  Because Plaintiffs have adequately pled a claim against the State Defendants in their individual and official capacities, the Court should deny the

motion to dismiss. Even if the Court disagrees, there is no basis for a dismissal with prejudice, precluding Plaintiffs from seeking any relief against State Defendants; the proper result is to grant Plaintiffs leave to amend.

## II.    STATEMENT OF FACTS

On May 25, 2020, former Minneapolis Police Department ("MPD") officer Derek Chauvin knelt on the neck of George Floyd for at least eight minutes and forty-six seconds. (ECF No. 19, "Am. Compl." ¶ 15.) Three fellow MPD officers stood by as he killed George Floyd. (*Id.*) Video footage of Mr. Floyd's murder was widely circulated and inspired protests throughout the country and worldwide. (*Id.* ¶ 16.) Thousands of people in Minneapolis flocked to the streets to mourn and protest, including each of the named Plaintiffs. (*Id.* ¶¶ 17, 19, 43, 44, 75.) Named Plaintiffs Nekima Levy Armstrong, Marques Armstrong, Terry Hempfling, Rachel Clark and Max Fraden all attended protests through May 31, 2020. And all were protesting peacefully when they were tear gassed and shot with less-lethal munitions by law enforcement. (*Id.* ¶¶ 18–101.)

Named Plaintiff Dr. Max Fraden attended a protest on May 31, 2020 at Bobby & Steve's Auto World on S. Washington Avenue in downtown Minneapolis. (*Id.* ¶ 88.) He was one of approximately 150 people who attended the peaceful demonstration, where some protesters knelt on the ground in a form of prayer. (*Id.* ¶ 89.) MPD and Minnesota State Patrol ("MSP") officers arrived at the scene and eventually began indiscriminately firing less-lethal munitions at the protesters. (*Id.* ¶ 90.) As protesters began to disperse, both MPD and MSP officers continued to fire tear gas at them. (*Id.* ¶ 91.) They again ran away from the tear gas and projectiles being shot at them, but they were met with more tear

gas fired from the opposite direction by both MPD and MSP. (*Id.*) Dr. Fraden was tear-gassed by MPD and MSP officers. (*Id.* ¶¶ 92, 93.) Eventually, the MPD and MSP officers surrounded Dr. Fraden and the other protesters in a tactic known as "kettling." (*Id.* ¶ 94.) Once fully surrounded, MPD and MSP officers again sprayed them with tear gas. (*Id.* ¶ 95.) Despite hearing no warning or order to disperse from any law enforcement officer, Dr. Fraden was hit with tear gas. (*Id.* ¶¶ 96, 97, 98.) Soon after, both MPD and MSP officers arrested the protesters. (*Id.* ¶ 99.) An MSP officer arrested Dr. Fraden. (*Id.* ¶ 99.) Criminal charges against Dr. Fraden were later dismissed. (*Id.* ¶ 100.)

## III. LEGAL STANDARD

At the pleadings stage, Plaintiff must provide a "short and plain statement" of its claims for relief under Federal Rule of Civil Procedure 8(a). *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under this standard, the Amended Complaint survives a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1]

---

[1] "While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additional consider 'matters incorporated by reference to integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned,' without converting the motion into one for summary judgment." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted).

The Court must construe the complaint liberally "in the light most favorable to Plaintiffs." *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1070 (8th Cir. 2017) (internal quotations omitted). It must not only "accept as true all factual allegations in the complaint," but also "draw all reasonable inferences" in Plaintiffs' favor. *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015). While the factual allegations must be more than "[t]hreadbare recitals of the elements of a cause of action," they need not contain "direct evidence" or a showing that a success on the merits is more likely than not. *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. at 678). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "A motion to dismiss a complaint should not be granted unless it appears beyond doubt that a plaintiff can prove *no set of facts* that would entitle him to relief." *Smith v. Questar Capital Corp.*, No. 12-CV-2669 SRN/TNL, 2013 WL 3990319, at *2 (D. Minn. Aug. 2, 2013) (emphasis added).

## IV.  ARGUMENT

In their Amended Complaint, Plaintiffs properly pled a cause of action under 42 U.S.C. § 1983 for violations by the State Defendants of Plaintiffs' First, Fourth, and Fourteenth Amendment rights. State Defendants argue that Plaintiffs' Amended Complaint should be dismissed for four reasons: (1) Plaintiffs cannot bring official capacity claims against the State Defendants; (2) Plaintiffs do not state a claim against the State Defendants in their individual capacities; (3) the State Defendants are entitled to qualified

immunity; and (4) most of the named Plaintiffs lack standing to bring claims against the State Defendants. They are mistaken on each of these grounds. Further, Plaintiffs' Amended Complaint contains sufficient factual matter to support plausible claims that the use of chemical and less-lethal munitions, without adequate warning, by State Defendants' employees violated Plaintiffs' rights to speech, peaceful assembly, protest, free movement, freedom from excessive use of force, and procedural due process.

Accordingly, the Court should deny State Defendants' motion to dismiss.

## A. The Eleventh Amendment Does Not Bar Plaintiffs' Claims against State Defendants.

The Eleventh Amendment does not shield the State Defendants from this lawsuit in their official capacities. *Klinger v. Dir., Dept. of Rev.*, 281 F.3d 776, 777 (8th Cir. 2002) ("In *Ex parte Young*, 209 U.S. 123, 155–56 (1908), the Supreme Court held that [E]leventh [A]mendment immunity was not available to state officials in suits seeking prospective injunctive relief for violations of federal law."); Defs.' Mem. at 6–7 ("[A] plaintiff may bring official-capacity claims insofar as those claims seek prospective declaratory or injunctive relief."). Here, Plaintiffs seek prospective injunctive and declaratory relief against the State Defendants, as outlined in the Amended Complaint's prayer for relief. (Am. Compl. at 33.) Dismissal of Plaintiffs' official-capacity claims against the State Defendants on this ground therefore would be improper.

## B. Plaintiffs Have Adequately Pled a Claim against State Defendants in Their Official Capacities

The State Defendants next attack Plaintiffs' standing to seek prospective relief. (Defs.' Mem. at 7.) Specifically, the State Defendants argue that Plaintiffs cannot show a likelihood of future injury. (*Id*.) The State Defendants are again mistaken.

To demonstrate standing, a "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct" and "the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (citations omitted). "Past wrongs" are evidence of whether there is a real and immediate threat of repeated injury. *Lyons,* 461 U.S. at 102 (quotations omitted).

A chilling of First Amendment rights can constitute a cognizable injury, so long as the chilling effect is not based on a fear of future injury that itself is too speculative to confer standing. *Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015); *see also Balogh v. Lombardi*, 816 F.3d 536, 542 (8th Cir. 2016) ("A chilling effect on speech protected by the First Amendment can constitute an injury in fact."); *Libertarian Party of L.A. Cty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) ("[A]s the Supreme Court has recognized, a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury.").

State Defendants incorrectly cast the events that would lead to their future use of excessive force on Plaintiffs. They argue it is conjectural that a "similar level of unrest" that "results in significant law enforcement presence" to trigger MSP involvement. But

MSP is not simply called upon to assist MPD in the middle of riots of large demonstrations. MSP is engaged *before* officials believe a protest may occur—whether or not that protest eventually matches the fervor of those in May 2020.[2]  Since State Defendants filed their motion to dismiss, Governor Walz has *twice* activated the National Guard and MSP in anticipation of protests after developments in the George Floyd case against Derek Chauvin.[3]  And indeed, demonstrations occurred in Minneapolis both after Chauvin was released on bond and after the court dismissed a count against him.[4]  Reports show that during these demonstrations, MSP took the lead in the policing efforts, standing on the

---

[2] *See* Governor Tim Walz, State of Minn. Exec. Dep't., Emergency Exec. Orders, No. 20-91 (Oct. 7, 2020), https://mn.gov/governor/assets/EO%2020-91%20National%20Guard%20Signed%20and%20Filed%20%28003%29_tcm1055-449492.pdf ("Recent events have raised the potential of civil unrest in the City of Minneapolis and nearby communities."); Governor Tim Walz, State of Minn. Exec. Dep't., Emergency Exec. Orders, https://mn.gov/governor/assets/EO%2020-93%20National%20Guard_tcm1055-450729.pdf (same).

[3] Governor Tim Walz, State of Minn. Exec. Dep't., Emergency Exec. Orders, No. 20-91 (Oct. 7, 2020), https://mn.gov/governor/assets/EO%2020-91%20National%20Guard%20Signed%20and%20Filed%20%28003%29_tcm1055-449492.pdf; Governor Tim Walz, State of Minn. Exec. Dep't., Emergency Exec. Orders,https://mn.gov/governor/assets/EO%2020-93%20National%20Guard_tcm1055-450729.pdf.

[4] Elliott McLaughling, *Protesters Take to Streets Following Release on Bond of Former Officer Charged in George Floyd's Killing,* CNN (Oct. 8, 2020, 7:23 AM), *https*://www.cnn.com/2020/10/07/us/derek-chauvin-george-floyd-bail/index.html; Holly Bailey, *Judge Dismisses Third-Degree Murder Charge Against Officer in George Floyd's Death; upholds more serious* charge, The Washington Post (Oct. 22, 2020, 2:20 PM), https://www.washingtonpost.com/national/judge-dismisses-third-degree-murder-charge-against-officer-in-george-floyds-death-upholds-more-serious-charge/2020/10/22/3f3a1cce-1490-11eb-ad6f-36c93e6e94fb_story.html.

front line against protesters, and ultimately making most of the arrests.[5] And video from the protests following Chauvin's release show MSP officers armed with less-lethal munitions.[6] Because the case against Chauvin and the other officers remains ongoing, the likelihood of repeated protests remains high.[7] Given that MSP has been present at protests

---

[5] *Minneapolis Protests George Floyd Killer Derek Chauvin's Release on Bail*, Unicorn Riot (Oct. 7, 2020), https://www.pscp.tv/w/1gqGvaoBMpnKB; *see also* Abby Simons, *More than 50 Protesters Arrested During Faceoff with Law Enforcement in Minneapolis after Derek Chauvin Release*, StarTribune (Oct. 8, 2020, 9:46 AM), https://www.startribune.com/51-arrested-near-fifth-precinct-hq-after-protesting-chauvin-release/572670582.

[6] *Minneapolis Protests George Floyd Killer Derek Chauvin's Release on Bail*, UNICORN RIOT (OCT. 7, 2020), https://www.pscp.tv/w/1gqGvaoBMpnKB (*See* 5:05-5:35)

[7] Chao Xing, *Ex-Minneapolis Police Charged in George Floyd's Killing will go to Trial; One Count against Derek Chauvin Dropped, Judge Rules*, StarTribune (OCT. 22, 2020, 10:54 PM), https://www.startribune.com/ex-mpls-officers-will-go-to-trial-1-charge-vs-chauvin-dropped/572827792/ (reporting trial date of March 8, 2020).

The likelihood of a recurrence is certain given not only what has happened in the months since George Floyd's death, but also what has happened in the past few decades after law enforcement has killed or beaten Black people. Historically, throughout this country, scenarios in which officers are acquitted, or not even subject to prosecution, after beating or killing unarmed Black people have led to periods of unrest. Examples abound. In Los Angeles, California, people demonstrated after a jury found the officers who beat Rodney King not guilty in 1992. *See, e.g.*, https://www.npr.org/2017/04/26/524744989/when-la-erupted-in-anger-a-look-back-at-the-rodney-king-riots. In Ferguson, Missouri when police officer Darren Wilson was not indicted in the death of Michael Brown in 2014, people took to the streets to protest. *See e.g.*, https://www.nbcnews.com/storyline/michael-brown-shooting/ferguson-cop-darren-wilson-not-indicted-shooting-michael-brown-n255391. More recently, citizens of Minneapolis protested after police killed Elijah McClain in Aurora, Colorado in July 2020, and after charges were declined for the officer who killed Breonna Taylor in Louisville, Kentucky. *See, e.g.*, https://www.startribune.com/protesters-demand-justice-for-elijah-mcclain/571821261/; https://www.kare11.com/article/life/crowd-protests-breonna-taylor-decision-outside-us-bank-stadium/89-66113181-53ec-42af-814a-823d3ebe2310

at least twice since May 2002, armed with the same tear gas canisters and less-lethal munitions they used in May 2020 and 2016, it is not speculative that MSP will use these weapons against Plaintiffs to—in the words of State Defendants—"restore order . . . and to protect the cities and their residents."[8]  Any argument that a similar level of protest warranting MSP involvement is conjectural or hypothetical is wrong in light of these facts.

Plaintiffs' claims thus do not depend on a "far-fetched sequence of events" like those in cases where the Eighth Circuit has found plaintiffs lack standing.  *Brazil v. Arkansas Dep't of Human Servs.*, 892 F.3d 957, 960 (8th Cir. 2018).  For example, in *Brazil*, a state employee sought injunctive relief to stop her supervisors from discriminating and retaliating against her.  *Id.* at 948-49.  While the case was pending, Brazil moved to a different division of the department, so she no longer reported to the problematic supervisors.  *Id.* at 959.  The court found that the possibility of future injury was too speculative and hypothetical to confer standing:

> Only a far-fetched sequence of events could lead to additional harm of the sort the injunction seeks to prevent. The supervisors would need to resume managing her work, decide to retaliate against her for the unsuccessful lawsuit she filed in 2013, and follow through with additional retaliatory actions . . . .  Nothing in the record suggests that these events will unfold.

*Brazil,* 892 F.3d at 960; *see also Smith v. Hundley*, 190 F.3d 852, 855–56 (8th Cir. 1999) (holding prisoner could not seek declaratory relief after he transferred to another facility and finding that his "theory of retransfer" was too speculative); *Martin v. Sargent*, 780 F.2d

---

[8] Decl. of Matthew Langer, Colonel of the Minn. State Patrol ¶ 5, *Goyette v. City of Minneapolis*, No. 20-cv-01302 (WMW-DTS) (D. Minn. June 5, 2020), ECF No. 28, ¶ 4.

1334, 1337 (8th Cir. 1985) (same).  The Amended Complaint alleges a high likelihood that MSP will continue to respond to protests, Plaintiffs and other putative class members who have previously attended such protests will continue to do so, and State Defendants will act in the same way.

Citing *Lyons*, State Defendants also claim it is conjectural that Plaintiffs will choose to attend protests and that State Defendants will indiscriminately tear gas peaceful protestors.  Once again, State Defendants' reliance on *Lyons* is misplaced.  There, the plaintiff lacked standing when he failed to allege "a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part."  *Lyons*, 461 U.S. at 105.  The plaintiff in *Lyons* had not shown that he was likely to engage in illegal conduct in the future, or that the city defendants had a *practice* of using chokeholds on individuals acting illegally.  *Id*. at 105–10 & nn.7, 9.  Accordingly, the speculative chain of events relied on the discretionary misconduct of both the plaintiff, and the individual officer.  In contrast, here, Plaintiffs' will protest again, as is their constitutional prerogative and right, and they have adequately alleged that State Defendants have engaged in a pattern and practice of unlawful retaliation and excessive force.

### 1. Plaintiffs' Claims Do Not Depend on the Assumption They Will Engage in Unlikely Misconduct.

The Supreme Court itself has characterized the denial of standing in *Lyons* as based on the plaintiff's ability to avoid engaging in illegal conduct.  *See Spencer v. Kemna*, 523 U.S. 1, 15 (1998) (rejecting claims "contingent upon respondents' violating the law, getting

caught, and being convicted"). And the Court has cited *Lyons* and *O'Shea v. Littleton*, another case on which Defendants rely, for the proposition that the Court "for purposes of assessing the likelihood that state authorities will inflict a given injury [is generally] unwilling to assume that the party seeking relief will repeat the type of misconduct that would once against place him or her at risk of that injury." *Honig v. Doe*, 484 U.S. 305, 320 (1988). Other circuits have similarly analyzed *Lyons. See, e.g., Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1162-64 (11th Cir. 2008) (distinguishing *Lyons* where "the chain of events leading to the eventual injury does not begin with the assumption that someone will commit an illegal act"); *Armstrong v. Davis*, 275 F.3d 849, 865 (9th Cir. 2001) ("[S]tanding is inappropriate where the future injury could be inflicted only in the event of future illegal conduct by the plaintiff."), *abrogated on other grounds by Johnson v. Calif.*, 543 U.S. 499 (2005); *Hernandez v. Cremer*, 913 F.2d 230, 234 (5th Cir. 1990) ("We find a critical factual distinction between *Lyons* and the instant case which dictate a different result. Hernandez (unlike Lyons) was engaged in an activity protected by the Constitution."); *see also Roe v. City of New York*, 151 F. Supp. 2d 495, 503–04 (S.D.N.Y. 2001) (collecting cases and distinguishing *Lyons* on the basis that plaintiffs were engaging in lawful behavior).

Similarly, the Eighth Circuit has found that a plaintiff lacked standing to seek injunctive relief when only his future violations of state law would again subject him to an allegedly unconstitutional impoundment policy. *Coleman v. Watt*, 40 F.3d 255, 257, 259 (8th Cir. 1994). Although "there was no doubt that the plaintiff would continue to drive and could potentially have his car impounded again," the plaintiff's allegation of future

harm, which would require him to act illegally, was "no more than 'a speculative or hypothetical claim of future injury.'" *Brazil*, 892 F.3d at 960 (citing *Coleman*, 40 F.3d at 259).[9]

Unlike the plaintiffs in *Lyons*, *Spencer*, *O'Shea*, and *Coleman*, the claims against State Defendants do *not* assume or require that Plaintiffs or the putative class members engage in illegal activity. Rather, Plaintiffs' claims center on the allegations that they were "engaged in constitutionally protected acts of freedom of speech and the right to assemble, by participating in public demonstrations" (Am. Compl. ¶ 158) and did not pose a threat to officer or public safety (*Id*. ¶ 170).

### 2. Plaintiffs Have Adequately Alleged an Official Pattern and Practice of Unlawful Use of Force

In *Lyons*, the Supreme Court emphasized—following discovery—that there was no "evidence showing a pattern of police behavior that would indicate that the official policy would permit the application of the control holds on a suspect that was not offering, or threatening to offer, physical resistance." 416 U.S. at 110 n.9. In other words, there was no showing of any pattern or practice of the police using the chokehold, and therefore no likelihood that he would suffer a similar injury in the future.

In *Lyons*, the Supreme Court emphasized—following discovery—that there was no "evidence showing a pattern of police behavior that would indicate that the official policy

---

[9] The Eighth Circuit in *Coleman* court did not explicitly state that the plaintiff lacked standing because his claim relied upon his own future misconduct. *See* Coleman, 40 F.3d at 257, 259. But because the impoundment policy at issue was only triggered when a driver violated state law, the plaintiff's claim necessarily relied on assuming he would illegally act, which was too speculative for the court. *See id*.

would permit the application of the control holds on a suspect that was not offering, or threatening to offer, physical resistance." 416 U.S. at 110 n.9. In other words, there was no showing of any pattern or practice of the police using the chokehold, and therefore no likelihood that he would suffer a similar injury in the future.

In contrast, here, Plaintiffs allege that State Defendants: "have a custom or policy of deploying chemical irritants and less-lethal munitions against protesters" (Am. Compl. ¶ 106); and have repeatedly done so (*id.* ¶¶ 90–98, 109); failed to supervise and train their employees and agents with respect to constitutionally protected activity amounts to a deliberate indifferent to the rights of Plaintiffs and Plaintiff class members (*id.* ¶ 110); have a custom or policy of failing to provide warnings and/or dispersal orders before deploying crowd control weapons, including use of chemical agents and injurious, less-lethal munitions, against protesters (*id.* ¶ 118); and have a custom or policy authorizing the deployment of crowd control weapons and/or less-lethal munitions in an unconstitutional manner (*id.* ¶ 119). Taking these allegations as true, it is not simply hypothetical that State Defendants would, according to their customs and policies and without proper training about the rights of protesters, use chemical irritants against Plaintiffs and the putative class members.

### C. Plaintiffs Have Pled an Adequate Claim against State Defendants in Their Individual Capacities

Contrary to the State Defendants' assertion (Defs.' Mem. at 10), Plaintiffs have properly pled claims against the State Defendants in their individual capacities. Specifically, the State Defendants argue that § 1983 "does not recognize a theory of

vicarious liability" (*id*. at 10) that Plaintiffs have not pled factual allegations against the State Defendants that "support their personal involvement in any constitutional violation such that they can be held personally liable" (*id*.) and that Plaintiffs have brought "improper *Monell* claims" against the State Defendants, (*id*. at 13). These arguments misapprehend Plaintiffs' claims against the State Defendants in their individual capacities, which are grounded in supervisory liability for failure to train the MSP officers who violated the constitutional rights of Plaintiffs.[10]

"[A] supervisor may be liable for the acts of a subordinate if injury is inflicted upon the plaintiff as a result of a breach of the supervisor's duty to train, supervise, or control the actions of subordinates." *Hahn v. McLey*, 737 F.2d 771, 773 (8th Cir. 1984) (per curiam). Plaintiffs need not have pled facts that the State Defendants were "personally involved" in any of the conduct in order for the State Defendants to be held liable. That is, to be liable in an individual capacity, a supervisor need not have "personally participated in any constitutional deprivation committed by his officers, or [ ] have known about any violation at the time it occurred." *Wever v. Lincoln Cty., Nebraska*, 388 F.3d 601, 606 (8th Cir. 2004) (citing *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir.1989) ("Proof of actual knowledge of constitutional violations is not, however, an absolute prerequisite for

---

[10] Despite their mischaracterization of Plaintiffs' claims, thereby creating a strawman argument which they then attack, the State Defendants appear to understand Plaintiffs' theory of liability, (Defs.' Mem. at 13 n.8 ("Plaintiffs' causes of action appear to focus almost exclusively on an alleged failure to train and/or supervise.")), and concede that Plaintiffs can bring this type of claim, (Defs.' Mem. at 14 ("Under section 1983, a supervising officer can be held personally liable for a subordinate officer's conduct if his failure to train or supervise the offending actor caused the deprivation." (internal quotation marks omitted))).).

imposing supervisory liability.")).  Under this theory, § 1983 liability attaches when: (1) "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and (2) "the alleged failure to train 'actually caused' the constitutional deprivation." *McGuire v. Cooper*, 952 F.3d 918, 923 (8th Cir. 2020).

The facts contained in the Amended Complaint satisfy the pleading requirements for supervisory liability against the State Defendants in their individual capacities. Plaintiffs did not (and did not need to) plead any facts that the State Defendants were personally involved in the unconstitutional conduct.  Plaintiffs' factual allegations, and all reasonable inferences drawn therefrom, demonstrate the State Defendants' failure to train their officers—at a level tantamount to deliberate indifference of the constitutional rights of Plaintiffs and the putative class—and that this failure led to the constitutional violations of Plaintiff Max Fraden and other putative class members.  Specifically, Plaintiffs pled:

- State Defendants failed to supervise and train its employees and agents with respect to the constitutionally-protected activity of the Plaintiffs and putative class members (Am. Compl. ¶ 110);

- State Defendants have a history of deficient or non-existent training with respect to the use of impact weapons, chemical irritants, and less-lethal munitions (*id.* ¶ 114);

- MSP fired less-lethal munitions at people without warning (*id.* ¶ 115);

- State Defendants' failure to supervise and train their employees and agents with respect to the use of "crowd control" tactics amounts to a deliberate indifference to the rights of Plaintiffs and putative class members (*id.* ¶ 134);

- State Defendants used less-lethal munitions on peaceful protesters contrary to manufacturer guidelines (*id.* ¶¶ 144–45);

- State Defendants' failure to supervise and train their employees and agents with respect to First Amendment protected activity amounts to a deliberate indifference to the rights of Plaintiffs and putative class members (*id.* ¶ 147);

- State Defendants' failure to supervise and train their employees and agents with respect to Fourth Amendment protected activity amounts to a deliberate indifference to the rights of Plaintiffs and putative class members, (*id.* ¶ 172); and

- State Defendants' failure to supervise and train their employees and agents with respect to the Due Process rights of Plaintiffs amounts to a deliberate indifference of those rights (*id.* ¶ 179).

These allegations, coupled with Plaintiffs' factual claims of the conduct of specific MSP officers firing tear gas and less-lethal munitions on Dr. Fraden in violation of his constitutional rights, (*see generally id.* ¶¶ 90–99), meet the required pleading standard for a claim of supervisory liability against the State Defendants in their individual capacities.

Finally, State Defendants are wrong to say Plaintiffs' failure-to-train claim improperly extends municipal liability under *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978). Plaintiffs' claim is based on supervisory liability, not *Monell*. *See Larez v. City of Los Angeles*, 946 F.2d 630, 640 (9th Cir. 1991) (articulating municipal and supervisory liability present distinct and separate questions that are treated and analyzed as such.); *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1222 (D. Ariz. 2003) (finding allegations sufficient to satisfy notice pleading standard and state a claim for supervisory liability under § 1983 against each of the State Defendants in their individual capacity).

### 1. State Defendants are not entitled to qualified immunity

Qualified immunity applies to claims only for damages, but Plaintiffs' claims against State Defendants here include claims for declaratory and injunctive relief. *Pearson*

*v. Callahan*, 555 U.S. 223, 242–43 (2009) ("Most of the constitutional issues that are presented in § 1983 damages actions and *Bivens* cases also arise in cases in which that defense is not available, such as criminal cases and § 1983 cases against a municipality, as well as § 1983 cases against individuals where injunctive relief is sought instead of or in addition to damages.") (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 841, n.5, (1998) (noting that qualified immunity is unavailable "in a suit to enjoin future conduct, in an action against a municipality, or in litigating a suppression motion"))).

Further, under Plaintiffs' theory of supervisory liability for State Defendants in their individual capacities, State Defendants' argument that they are entitled to qualified immunity fails. Under supervisory liability, a defendant is entitled to qualified immunity "unless plaintiff *proves* that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts . . . . This rigorous standard requires *proof* that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (emphasis added). State Defendants rely heavily on *S.M.* but its procedural posture is entirely different—that case involved a motion for summary judgment, rather than a motion to dismiss.

At the summary judgment phase, the court has the benefit of evidence and proof—there is no such benefit at the pleadings stage. There is good reason why *S.M.* was determined in the summary judgment phase and not the pleadings phase—because determining qualified immunity under supervisory liability requires "proof." *See id.*

Plaintiffs are not required to prove their case at the pleadings stage, but are merely required to state a plausible claim for relief, which they have. Under the circumstances here, Plaintiffs can determine what notice State Defendants had of the pattern of unconstitutional acts by MSP only through discovery. Thus State Defendants' assertion of qualified immunity is, at best, premature.

Turning to the remainder of the qualified immunity standard, State Defendants' assertion of qualified immunity still fails. Qualified immunity does not shield a government official from liability when Plaintiffs "(1) demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Parrish v. Ball,* 594 F.3d 993, 1001 (8th Cir. 2010). Determining whether a constitutional right was "clearly established," does not require that the "very action in question has been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Instead, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* Accordingly, courts do not need to have addressed the exact constitutional right at issue or even the same factual pattern for a right to be clearly established. *See, e.g., Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a cases directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (stating that officials "can still be on notice that their conduct violates established law even in novel factual circumstances.")

State Defendants do not challenge whether Plaintiffs sufficiently pled a deprivation of their constitutional rights, but instead argue that the "use of chemical irritants for crowd

control purposes" was not a clearly established constitutional violation. But the Amended Complaint does not allege that the chemical irritants were used on May 30, 2020 for "crowd control"—a description used by State Defendants to defend the excessive use of force. Instead, the Amended Complaint alleges that Plaintiffs Max Fraden and putative class members—at all times—were peaceful protestors in Minneapolis, who were sprayed with tear gas without adequate notice and ultimately arrested, at an auto-body shop. (Am. Compl. ¶¶ 88–99.) There is no allegation regarding an unruly crowd. In fact, the complaint alleges that some protestors were engaged in prayer. (*Id.* ¶ 89.) Nor are there allegations that the group was blocking pedestrian or vehicle traffic. And it was clearly established in 2016 (as it is today) that firing tear gas at peaceful protesters was unconstitutional.

Plaintiffs pled a plausible claim that their First, Fourth and Fourteenth Amendment claims were violated by State Defendants and that State Defendants were aware of these constitutional rights at the time of their violation of these rights. (*See generally id.* ¶¶ 157–182.)

### a. Plaintiffs have sufficiently pled a violation of their "clearly established" First Amendment rights

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To proceed on a First Amendment retaliation claim, Plaintiffs must plead (1) they were engaged in a protected activity, (2) the government official took adverse action against them that would chill a person of ordinary firmness from continuing in the

activity, and (3) the adverse action was motivated at least in party by the exercise of the protected activity. *Id.* As for the third prong, Plaintiffs must show that they were "singled out because of [their] exercise of constitutional rights." *Id.* Where the alleged retaliatory actions include arrest, Plaintiffs must also plead a lack of probable cause or arguable probable cause. *Id.*

Plaintiffs pled facts that meet each of these prongs. Dr. Fraden joined a peaceful protest that consisted of some protesters "kneeling on the ground in what appeared to be some sort of prayer." (Am. Compl. ¶ 89.) Upon arriving at the peaceful protest, the MSP "began firing less-lethal munitions at the group of protesters." (*Id.* ¶ 90.) The MSP cannot reasonably deny that their actions would chill a person of ordinary firmness. *See, e.g., Peterson*, 754 F.3d at 602 (noting that Metropolitan Council of Minnesota did not deny that public transit officer spraying a citizen with pepper spray would chill a person of ordinary firmness). Based on the pled facts, an inference arises that the MPD defendants employed their tactics *because of* Plaintiffs' exercise of their constitutional rights to peacefully protest. Plaintiffs further pled that even as the protesters attempted to disperse, MSP deployed more tear gas, surrounded Dr. Fraden while continuing to spray tear gas, and arrested him. (Am. Compl. ¶¶ 91-99.) The charges against Dr. Fraden have since been dismissed. (*Id.* ¶ 100.) Again, the pled facts support the inference that not even an arguable probable cause existed to arrest a citizen engaged in peaceful protests.

As such, Plaintiffs have sufficiently pled that their First Amendment right to be free from retaliation is clearly established.

### b. Plaintiffs have sufficiently pled a violation of their "clearly established" Fourth Amendment rights

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances. We evaluate the reasonableness of an officer's use of force 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

Multiple courts, including the United States Supreme Court, and the Eighth Circuit, have held that using force—which includes tear gas—against a peaceful person violates the Fourth Amendment. *See Brown*, 574 F.3d at 499 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("[I]t is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public.")); *Michael v. Trevena*, 899 F.3d 528, 533 (8th Cir. 2018) (holding use of force objectively unreasonable and denying qualified immunity where plaintiff "was a nonviolent misdemeanant who neither fled nor actively resisted arrest, and posed no threat to the officers or other members of the public"); *cf. Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir. 2004) (holding that an officer did not use excessive force in spraying pepper spray into a car on a traffic stop when occupants refused to unlock the car doors and began to roll up the window on the officer's arm, because the officer felt that his life was in immediate danger); *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (finding no excessive force when police used a Taser on

plaintiff who was belligerent and hostile to the officer and refused to collect requested documents during a traffic stop); *Bernini v. City of St. Paul*, 665 F.3d 997, 1006 (8th Cir. 2012) (finding no excessive force and qualified immunity in using tear gas and other less-lethal munitions on protesters who were non-compliant with officers' orders, which were given based on a fear that "a growing crowd intended to penetrate a police line and access downtown St. Paul").[11]

Here, as Plaintiffs pled, none of them were engaged in any activity that could be perceived as a safety threat. Plaintiffs were all peacefully assembled. (Am. Compl. ¶¶ 25–30, 55–60, 88–99.) In fact, the Amended Complaint avers that in his encounter with MSP, Plaintiff Max Fraden and the other protesters were all peaceful, with some seemingly praying (*id.* ¶ 89) when he was fully surrounded by law enforcement and MSP officers began firing tear gas and less-lethal munitions on him. (*Id.* ¶¶ 90-94.) As the Amended Complaint has sufficiently pled that he was no safety threat to the officers or others, it has sufficiently pled that his right to be free from excessive force was "clearly established." As such, State Defendants are not entitled to qualified immunity.

---

[11] Similarly, in the prison context under the Eighth Amendment, the Eighth Circuit has held that, "prisoners have a clearly established right to be free from a Taser shock or its equivalent in the absence of a security threat." *Brown* at 499–500; *see Hickey v. Reeder*, 12 F.3d 754, 757, 759 (8th Cir.1993) (holding that a correction officer's use of a Taser on an inmate who refused to comply with having his cell swept was excessive force, noting: "a stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless," and that using a stun gun to ensure compliance with housekeeping regulations "is not a constitutionally permissible option."); *Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002) ("A basis for an Eighth Amendment claim exists when, as alleged here, an officer uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat.").

### c. Plaintiffs have sufficiently pled a violation of their "clearly established" Fourteenth Amendment rights

Due Process requires any regulation that restricts movement have "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Musser v. Mapes*, 718 F.3d 996, 1000 (8th Cir. 2013). The "requirement of clarity in regulation is essential to the protections provided by the Due Process Clause[.]" *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). This requirement extends to unwritten polices, as well as written regulations and laws. *See Abdullah v. Cty. of St. Louis*, 52 F. Supp. 3d 936, 946 (E.D. Mo. 2014) (finding an *ad hoc* rule developed for Ferguson protests requiring peaceful protesters to walk instead of stand still violated their Due Process rights). It also requires officers issue a dispersal order prior to seizure of movement. *Barham v. Ramsey*, 434 F.3d 565, 571 (D.C. Cir. 2006) (holding that "police officers who intend to capture a large group in a mass arrest must first order members of the group to disperse and then provide a reasonable opportunity to comply.").

Plaintiffs have sufficiently pled a violation of their Due Process rights under the Fourteenth Amendment. State Defendants failed to provide Plaintiffs with any notice before firing tear gas and less-lethal munitions or arresting them. While on the scene of the Bobby & Steve protest, Plaintiffs heard no MSP officers issue a dispersal order to protesters before firing tear gas and less-lethal munitions on them. (Am. Compl. ¶¶ 90–92, 95, 98–99.) Accordingly, Plaintiffs have pled that the State Defendants restricted the movement of Plaintiffs without adequate notice, in violation of their constitutional rights.

As Plaintiffs have sufficiently pled a violation of their First, Fourth and Fourteenth Amendment rights and that all of these rights were clearly established at the time of State Defendants' conduct, State Defendants are not entitled to qualified immunity.

### D. Plaintiffs Pled a Plausible Due Process Claim

The State Defendants urge dismissal of the procedural due process claims as duplicative of their First and Fourth Amendment claims. (Defs.' Mem. at 17–18.) They are wrong—these claims are not duplicative.

Although Plaintiffs' claims stem from the same set of operative facts, the due process claims are distinct causes of action and therefore should survive. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal citations omitted). Due process requires that prohibitions on movement must be defined in a way that allows ordinary people to understand what conduct is permitted and that must not encourage arbitrary or discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). These constitutional principles apply to "unwritten polic[ies]" and practices, just as they apply to statutes ordinances, and formally-promulgated rules. *See Abdullah,* 52 F. Supp. 3d 936, 946 (E.D. Mo. 2014) (concluding that unwritten keep-moving policy violated due process). Officers must provide "a lawful order to disperse followed by a reasonable opportunity to comply with that order" before using force against people at a protest. *See Barham v. Ramsey*, 434 F.3d 565, 575 (D.C. Cir. 2006).

These principles control here. Plaintiffs were lawfully protesting, when the State Defendants' employees kettled and used shocking amounts and types of force on, at least, Plaintiff Max Fraden and similarly-situated Class Members. And they did so without providing dispersal warnings or an opportunity for them to leave. State Defendants' unwritten policies and practices of targeting peaceful protesters and failing to give dispersal warnings did not provide constitutionally adequate notice of when Plaintiffs and Class Members would be subjected to assault or arrest. As in *Abdullah*, these unwritten policies improperly empowered law enforcement officers to exercise their authority in arbitrary and discriminatory ways—including retaliating against Plaintiffs for engaging in First Amendment protected activity. *See* 52 F. Supp. 3d at 945–46.

The State Defendants' duplicativeness argument also is premature at this stage. Rather, an argument that a claim is duplicative is more appropriate at the summary judgment stage, as the cases on which State Defendants rely demonstrate. *Bostrom v. N.J. Div. of Youth & Family Servs.*, 969 F. Supp. 2d 393, 415 (D.N.J. 2013); *Osuna v. City of New York*, No. 08-civ-4759, 2009 WL 2356424, at *6 (S.D.N.Y. July 30, 2009). That is because "[t]he Federal Rules of Civil Procedure expressly permit a party to plead alternative or inconsistent claims or defenses." *Mono Advert., LLC v. Vera Bradley Designs, Inc.*, 285 F. Supp. 3d 1087, 1091 (D. Minn. 2018); *see also Krutchen v. Zayo Bandwidth Northeast, LLC*, 591 F. Supp. 2d 1002, 1018 (D. Minn. 2008) (permitting "duplicative" claims to proceed as alternative theories subject to later challenge on summary judgment). There is nothing anomalous about maintaining this claim as an independent cause of action, *see Abdullah*, 52 F. Supp. 3d at 945–47 (concluding that keep-

moving policy violated both First and Fourteenth Amendments), particularly at this stage of the proceedings.

### E.    State Defendants' Standing and Class Allegations are Wrong

The State Defendants argue that Plaintiffs "Levy Armstrong, Armstrong, Hempfling, and Clark lack standing to bring claims against State Defendants because they do not allege that State Defendants injured them." (Defs.' Mem. at 22.)  As set forth above, *supra* at Section IV.B, all named Plaintiffs have standing for *prospective* relief against the State Defendants because there is a significant likelihood of MSP's action recurring. Additionally, while it is premature to decide class certification issues, at this stage named Plaintiffs each can be class representatives.

The State Defendants' argument that some of the Plaintiffs lack standing for *prospective* relief is incorrect.  Even assuming *arguendo* that Plaintiffs had not been injured by the State Defendants, that would impact only their damages claims; it would not make a difference to their claims for equitable relief.  They are entitled to equitable relief if their injury or threat of injury [is] real and immediate."  *Lyons*, 461 U.S. at 101–02 (internal quotation marks omitted).  Defendants' "assertion presupposes that a plaintiff must have suffered an injury in the past in order to challenge the future enforcement of an unconstitutional [policy or practice], and of course, that is not the law."  *Richardson v. Texas Secretary of State*, --- F. Supp. 3d ---, No. SA-19-cv-00963, 2020 WL 5367216, at *27 n.33 (W.D. Tex. Sept. 8, 2020).  Indeed, this position would make any pre-enforcement challenge to an unconstitutional statute, rule, or policy impossible.  This, of course, is not the law either.  *See Minnesota RFL Republican Farmer Labor Caucus v. Freeman*, --- F.

Supp. 3d ---, No. 19-cv-1949, 2020 WL 5512509, at *2 (D. Minn. Sept. 14, 2020) (setting forth standards for pre-enforcement challenges).

State Defendants' assertion that Plaintiffs cannot serve as class representatives is incorrect. Federal Rule of Civil Procedure 23(a) provides prerequisites for members of a class to sue as representative parties on behalf of all members: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Defendants seem to take issue with the typicality prerequisite of Rule 23(a) only, but these claims have no merit. "More often, courts have equated typicality with the adequacy of the class representative or the absence of conflict of interest between the representative and class members, the interests protected by Rule 23(a)(4)." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 829 (8th Cir. 1977). "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." *Id.* at 831. There is no such conflict of interest among the Plaintiffs—certainly none evident from the face of the Amended Complaint—and all of Plaintiffs' claims arise out of the same legal theory.

Further, any attacks regarding Plaintiffs' class allegations are premature and should not be resolved at the pleadings stage. State Defendants can move to strike class allegations in a responsive pleading or dispositive motion, if, on the face of the complaint, it appears no class could be certified under any circumstances. *See generally Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982). State Defendants have not made that claim, nor can they.

There are no issues, such as lack of typicality or a conflict of interest between the Plaintiffs evident from the Amended Complaint that can preclude a class being certified.

This Circuit widely discourages evaluation of class issues at the pleadings stage, favoring discovery first. *See, e.g., Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) ("The propriety of class-action status seldom can be determined on the pleadings alone…"); *Goyette v. City of Minneapolis*, No. 20-cv-1302 (WMW/DTS) 2020 WL 3056705, at *5 (D. Minn. June 9, 2020) ("While Goyette's claims may ultimately be suitable for class-wide resolution, the Court concludes that fact discovery is necessary to determine whether the Rule 23 requirements can be satisfied."); *Knowles v. Standard Fire Ins. Co.*, No. 4:11-cv-04044, 2013 WL 6497097, at *3 (W.D. Ark. Dec. 11, 2013) ("[T]he Court recognizes that Plaintiff has not had the opportunity to take any meaningful discovery on class certification issues, and the Court is therefore hesitant to issue an order foreclosing the possibility of any class-wide remedy at this stage of litigation."); *Nobles v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 4090347, at *2 n. 1 (W.D. Mo. Sept. 17, 2012) ("While the Eighth Circuit has not yet set the standard explicitly, the weight of authority indicates that courts should meet motions to dismiss class allegations at the 12(b)(6) stage with a great deal of skepticism.").

### F.     The Form of Plaintiffs' Allegations are Sufficient

The State Defendants appear to argue that Plaintiffs' Amended Complaint must be dismissed because Plaintiffs have made allegations "on information and belief" without more.  As support, the State Defendants rely on *Kampschroer v. Anoka Cty.*, 57 F. Supp. 3d 1124, 1143 (D. Minn. 2014).  The State Defendants are wrong.

The Amended Complaint details ample facts with regard to the State Defendants, such that the allegations are not pled on "information and belief" alone and making this case markedly different from *Kampschroer*. Specifically, the Amended Complaint avers:

- State Defendants, together with MSP, "deployed violent crowd control tactics, including the use of chemical munitions and other less-lethal munitions, on protesters often with no forewarning or order to dis[perse]," (Am. Compl. ¶ 17);

- State Defendants were at the scene of the protest at Bobby & Steve's where Plaintiffs Max Fraden was arrested, (*id*. ¶¶ 88, 90);

- State Defendants' officers fired tear gas and less-lethal munitions at Dr. Fraden (*id*. ¶ 90);

- State Defendants' officers encircled Dr. Fraden so that he had no means of reasonably avoiding being fired upon because he had been "kettl[ed]" (*id*. at ¶ 94); and

- Dr. Fraden did not hear any dispersal orders from State Defendants' employees on the scene, and Dr. Fraden was arrested by MSP (*id*. ¶¶ 98, 99).

Plaintiffs' use of the phrase "upon information and belief" is not grounds to dismiss the Amended Complaint, when Plaintiffs have pled sufficient factual matter to state a claim for relief. Further, the allegations State Defendants point to as pled "upon information and belief" without support relate to *which* Defendant (MPD or MSP) fired tear gas and projectiles at Plaintiffs and Class Members as they lawfully exercised their constitutional right to protest. Certainly, State Defendants know whether their employees fired chemical and projectile munitions at the scene and that information is uniquely within their control. *See e.g.*, *Am. Inst. of Physics v. Schwegman Lundberg & Woessner, P.A.*, No. CIV. 12-528 RHK/JJK, 2012 WL 3799647, at *4 (D. Minn. July 2, 2012) (finding pleading allegations "upon information and belief" sufficient to withstand a motion to dismiss because

purportedly missing information was in defendant's possession and should be addressed during discovery, noting "the fact that Defendants would like more information about exactly how and when they purportedly infringed Plaintiffs' copyrights does not affect the Complaint's sufficiency under Rule 12(b)(6)" (internal quotation marks omitted)); *Van Stelton v. Van Stelton*, No. C11-4045-MWB, 2013 WL 3776813, at *10 (N.D. Iowa July 17, 2013) (finding that allegations based on information and belief were sufficient where specific facts were within defendants possession and control).

*Kampschroer*, on which State Defendants rely, is materially different. There, the plaintiffs brought a § 1983 action for invasion of privacy after learning personal information on their driver's licenses had been viewed by multiple state and municipal actors. 57 F. Supp. 3d at 1134-35 (D. Minn. 2014). In their complaint, Plaintiffs also offered a single allegation, "upon information and belief," that their "medical and social security information" had also been accessed and viewed. *See Kampschroer*, 57 F.Supp.3d at 1143. The Court granted defendants' motion to dismiss because there was no privacy interest in the information on the driver's licenses. *Id*. at 1143–44. This left only the medical and social security allegation to form the basis for the invasion of privacy claim. *Id*. This allegation, which was pled on information and belief, standing alone, was insufficient to make out an invasion of privacy claim. *Id*. In other words, the pleading was defective under *Twombly* because, without more, a plausible claim for relief did not rise above a speculative level. *Id*.; *see also Jones v. Douglas Cty. Sheriff's Dept.*, 915 F.3d 498, 500 (8th Cir. 2019) (granting motion to dismiss Title VII disparate treatment claim where female plaintiff claimed "on information and belief," without more, that an open

position was filled by a man).  Here, there is sufficient underlying factual support for the allegations in the Amended Complaint that MSP fired tear gas and projectiles at Plaintiffs, beyond those pled on information and belief.

### G.    Dismissal With Prejudice Is Improper In Any Event

The State Defendants' motion to dismiss should be denied outright for the reasons stated above.  If the Court grants the State Defendants' motion, however, it should be without prejudice.  It is well settled that a plaintiff subject to a successful motion to dismiss for failure to state a claim ordinarily should be given an opportunity to cure the deficient pleading.  *Michaelis v. Nebraska State Bar Ass'n*, 717 F.2d 437, 438–39 (8th Cir. 1983) ("Ordinarily dismissal of a plaintiff's complaint for failure to comply with Rule 8 should be with leave to amend.").  The rare exception to this rule is when there are *no set of facts* upon which the plaintiff could possibly survive an amended pleading.  *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 958 (8th Cir. 2012) ("[F]utility constitutes a valid reason for denial of a motion to amend.")  Here, the State Defendants have alleged deficiencies they contend mandate dismissal under Rule 12(b)(6) but have not argued that amendment would be futile.  Accordingly, the State Defendants have not met their high burden to show that a dismissal with prejudice is warranted.

## V.    CONCLUSION

Accordingly, Plaintiffs respectfully respect that the Court deny State Defendants' motion to dismiss.  Alternatively, should the Court find that Plaintiffs have failed to state a claim against State Defendants, Plaintiffs respectfully request leave to amend.

Dated: November 2, 2020   FISH & RICHARDSON P.C.

By:  */s/ Ahmed J. Davis*

Michael E. Florey (#0214322)
florey@fr.com
Veena V. Tripathi (#0401111)
tripathi@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South 6th Street
Minneapolis, MN 55402
Tel: (612) 335-5070

Ahmed J. Davis (*pro hac vice*)
davis@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W. Suite 1000
Washington, D.C. 20024
Tel: (202) 783-5070

Excylyn J. Hardin-Smith (*pro hac vice*)
Hardin-smith@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070

Teresa J. Nelson (#0269736)
tnelson@aclu-mn.org
Clare A. Diegel (#0400758)
cdiegel@aclu-mn.org
Isabella S. Nascimento (#0401408)
inascimento@aclu-mn.org
AMERICAN CIVIL LIBERTIES
UNION OF MINNESOTA
P.O. Box 14720
Minneapolis, MN 55414
Tel: (651) 645-4097

**Attorneys for Plaintiffs**