UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Nekima Levy Armstrong, Marques Armstrong, Terry Hempfling, Rachel Clark, and Max Fraden,<br>**On behalf of themselves and other similarly situated individuals.**<br><br>            Plaintiffs,<br><br>     vs.<br><br>City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo *in his individual and official capacity*; Minneapolis Police Lieutenant Robert Kroll, *in his individual and official capacity*; Minnesota Department of Public Safety Commissioner John Harrington, *in his individual and official capacity*, Minnesota State Patrol Colonel Matthew Langer, *in his individual and official capacity*; and John Does 1-2, *in their individual and official capacities*.<br><br>            Defendants. | Court File No. 20-cv-01645 (SRN-DTS)<br><br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS** |

## INTRODUCTION

Plaintiffs have failed to address the glaring deficiencies in their Amended Complaint as it relates to State Defendants. They ignore the law of standing. They have failed to plead a direct supervisory failure or failure to train by State Defendants. As they persuasively argue in their brief, since 2002 there has been exactly one **alleged** claim of excessive force for use of tear gas on alleged peaceful protestors – and that allegation serves as the only pleaded basis for Fraden's claim. But even that claim cannot tie the use of tear gas to any MSP employee.

The Amended Complaint is devoid of any description of the training, supervision, or policies of the State Defendants. It mentions the State Defendants by name or job title in only three cursory paragraphs. It provides no factual support for their alleged claims. It attempts to paper over these defects by conflating State Defendants with the Minneapolis Defendants. But these bare assertions as they relate to State Defendants "'devoid of further factual enhancement,'" do not state a cognizable claim. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (per curiam) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiffs are correct that "we are in unprecedented times," but the law, thankfully, remains consistent. Four named Plaintiffs seeking to maintain claims against State Defendants without alleging any injury by those Defendants: unprecedented. A claim that State Defendants have policies and procedures designed to curtail constitutional rights based solely on Fraden's conclusory allegations: unprecedented. Cobbling together a supervisory failure to train claim in the absence of any pattern of unconstitutional conduct by State Defendants' subordinates: unprecedented. Dismissing Plaintiffs' claims with prejudice: entirely consistent with precedent. State Defendants respectfully request that the Court grant their motion to dismiss in its entirety.

**ARGUMENT**

**I.     PLAINTIFFS' OFFICIAL CAPACITY CLAIMS FAIL BECAUSE ONE INCIDENT IN EIGHTEEN YEARS DOES NOT SHOW A LIKELIHOOD OF FUTURE INJURY.**

As an initial matter, the parties agree that Plaintiffs cannot obtain money damages for their official capacity claims. The official capacity claims against State Defendants also fail because there is no likelihood Plaintiffs will suffer a future injury that would

2

support a claim of prospective injunctive relief. This is particularly true given that Plaintiffs have identified no policies or procedures that would support or encourage similar actions in the future.

Indeed, the only incident pleaded with factual knowledge is the May 30 incident involving Fraden. Plaintiffs devote pages of their Amended Complaint to describing events before May 30. MSP was present and fulfilling its legal responsibilities. Yet there is nary an allegation of a similar use of force by MSP. Plaintiffs have correctly pointed out that Governor Walz has activated MSP on multiple occasions after May 30. (Pls.' Mem. at 7.) There have been no allegations of similar purportedly illegal acts by MSP in any of those instances. By Plaintiffs' reckoning, the May 30 incident is the only alleged incident of MSP using chemical irritants in the absence of a dispersal order since at least 2002.[1] (Pls.' Mem. at 7-8.) One incident in eighteen years does not create the likelihood of future injury, particularly when there have been scores of instances involving MSP where no such purported violation occurred.

---

[1] Plaintiffs also reference a 2016 incident they have plead "upon information and belief" where MSP allegedly deployed chemical irritants on protestors. Even ignoring the speculative basis of this allegation, it does not allege the chemical irritants were deployed in the absence of a dispersal order or that the protestors were peaceful. (Am. Compl. ¶ 109.) As Plaintiffs have noted, the alleged constitutional violation stems from failing to issue such an order and allowing the protestors an opportunity to comply. (Pls.' Mem. at 23 citing *Barham v. Ramsey*, 434 F.3d 565, 571 (D.C. Cir. 2006) (holding that "police officers who intend to capture a large group in a mass arrest must first order members of the group to disperse and then provide a reasonable opportunity to comply.").)

### A.  The Sequence of Events Leading to a Recurrence of the Alleged Harm Is Highly Implausible.

The focus of the likelihood of future harm analysis is whether "the injury is certainly impending." *Clapper v. Amnesty Intern'l USA*, 568 U.S. 398, 409 (2013). *See also Harmon v. City of Kansas City, Mo.*, 197 F.3d 321, 327 (8th Cir. 1999) ("The mere fact that injurious activity took place in the past does nothing to convey standing to seek injunctive relief against future constitutional violations."). *City of Los Angeles v. Lyons*, correctly identifies the salient issue. 461 U.S. 95 (1983). What is the sequence of events that must occur for the alleged constitutional violation to be repeated?

First, a similar level of unrest must occur. In the eighteen years identified by the Plaintiffs,[2] the level of unrest has only once reached the extended amount and intensity as what occurred in response to the murder of George Floyd. There has been no similar level of unrest. Moreover, to the extent Plaintiffs may argue that levels of unrest need not duplicate those that occurred here, the fact they can point to no other instance of alleged constitutional misconduct by MSP during that time frame when lesser amounts of unrest have occurred proves the point.

Second, there would have to exist a policy or practice, like the choke hold policy in *Lyons*, that supported or encouraged the use of chemical irritants in the absence of a dispersal order. As State Defendants have noted, no such policy or practice has been identified. Indeed, if such a policy or practice did exist Plaintiffs could identify that

---

[2] State Defendants would argue the timeframe extends even farther back than eighteen years, but for purposes of argument, will confine itself to the Plaintiffs' chosen timeframe.

policy or practice in their Amended Complaint. They have not. Such a policy or practice would surely lead to more than once incident since 2002. *See Lyons*, 461 U.S. at 100.

Third, MSP would be activated to help respond to such unrest, and Fraden would need to attend a similar future peaceful protest past a governmental imposed curfew. And finally, MSP officers would have to use chemical irritants on Fraden despite him being peaceful and law-abiding. The necessary causal chain cannot, by any reasonable understanding of the term, be described as a "real and immediate threat." *Lyons*, 461 U.S. at 105.

Plaintiffs attempt to distinguish relevant caselaw on two bases, neither of which is persuasive. First, Plaintiffs seem to argue that a real and immediate threat exists unless the potential for recurrence has essentially been mooted by removal of a plaintiff from a particular location or position. (Pls.' Mem. at 9-10 (citing *Brazil v. Arkansas Dep't of Human Servs.*, 892 F.3d 957, 960 (8th Cir. 2018)).) Certainly, that was one of many salient facts in *Brazil*, but it is not the only fact pattern that can show a lack of standing for prospective injunctive relief. Rather, it was the totality of steps and assumptions that must recur to support the finding the plaintiff lacked standing to assert a future harm. Indeed, the potential for harm to recur was not mooted in *Lyons*. A similarly extended causal chain exists in this case that will not plausibly reoccur.

Second, Plaintiffs argue that the holding in *Lyons* turns on whether a prospective plaintiff was likely to engage in illegal conduct in the future. Again, the illegal nature of the conduct is just one link in the causal chain and the Court must look at those links in their totality. Nevertheless, Fraden was engaged in illegal conduct. He was in violation

of Executive Order 20-65. Fraden does not dispute the legality of the Executive Order. Nor does he, or could he, plead that he was law abiding during the relevant time frame. So even if Plaintiffs' reading of *Lyons* was correct, it still would not distinguish this case from this matter.

>   **B.   Plaintiffs Have Failed to Plead Facts of a Pattern or Practice That Would Create the Likelihood of a Future Violation.**

Plaintiffs' argument that they have sufficiently pleaded pattern or practice claims against State Defendants is – to borrow Plaintiffs' preferred phrasing – wrong. They cite no law to support their position. (*See* Pls. Mem. at 13.) Instead they repeat the legal conclusions they plead in their Amended Complaint. (*Id.*) If there were a factual basis for these claims, certain key questions would lead to discernable answers. What is the basis of this alleged policy? Is it written? If so, there is no reference to it. (*Cf.* Am. Compl. ¶¶ 121-41 (citing MPD policy manual).) Is it verbal? Is it informal? If it exists in any of these forms, what is the policy and what does it say? State Defendants and the Court cannot find answers to these questions anywhere within the Amended Complaint. The complete absence of factual allegations is unsurprising. One alleged incident that occurred during unprecedented civil unrest does not a policy or procedure make.

>   **C.   Plaintiffs Who Have Not Been Injured by State Defendants Do Not Have Standing.**

Finally, Plaintiffs seek to radically expand the concept of standing in claiming Levy Armstrong, Armstrong, Hempfling, and Clark possess standing despite failing to allege that State Defendants injured them. *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("[A] plaintiff who has been subject to injurious conduct of one kind [does not] possess

by virtue of that injury the necessary stake in litigating conduct of another kind, *although similar*, to which he has not been subject." (emphasis added).)  Nor is Plaintiffs' reliance on pre-enforcement challenges to a statute persuasive.  (Pls.' Mem. at 26-27.)  There is no pre-enforcement challenge in this case.  The case law on pre-enforcement challenges applies to lawfully promulgated statutes or rules.  Not only is that not at issue in this matter, there is not even an identified policy or procedure to challenge on a pre-enforcement basis.

This is not a controversial position.  Indeed, after counsels' original meet and confer on the initial Complaint where counsel for State Defendants informed Plaintiffs' counsel that there were no factual allegations of injury by any of these Plaintiffs against MSP, they filed the Amended Complaint which included Fraden's allegations in a specific attempt to remedy this deficiency.  That they do not concede the lack of standing for the other Plaintiffs is confounding.  Plaintiffs lack standing to pursue prospective injunctive relief against MSP.  Their Amended Complaint should be dismissed.

**II.    PLAINTIFFS HAVE NOT ALLEGED A FAILURE TO TRAIN OR SUPERVISE CLAIM AGAINST STATE DEFENDANTS IN THEIR INDIVIDUAL CAPACITY.**

Plaintiffs have clarified that they only assert a theory of supervisory liability against Commissioner Harrington and Colonel Langer.  (Pls.' Mem. at 14 (asserting all claims are "grounded in supervisory liability for failure to train the MSP officers who violated the constitutional rights of Plaintiffs").)  Which makes the complete absence of allegations related to State Defendants in their individual capacities all the more glaring.  The only non-jurisdictional allegation related to State Defendants is made explicitly and solely in their official capacity.  (Am. Compl. ¶ 103.)  Plaintiffs identify them in their

7

official capacity for all the "Municipal Allegations"[3] alleged in the Amended Complaint. (Am. Compl. ¶¶ 103-48.)  They are bound by their pleadings to assert claims against State Defendants only in their official capacities.  *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007).

There are no allegations State Defendants personally failed to train or supervise MSP employees.  Plaintiffs never address this deficiency in their briefing.  The official capacity nature of the claims is further supported by Plaintiffs' argument in opposition to qualified immunity.  (Pls.' Mem. at 16 ("Qualified immunity applies to claims only for damages, but Plaintiffs' claims against State Defendants here include claims for declaratory and injunctive relief.").)  Plaintiffs' acknowledgement they are not seeking monetary damages is further evidence of the official capacity nature of these claims.

Notably, Plaintiffs acknowledge they did not "plead any facts that the State Defendants were personally involved in the unconstitutional conduct."  (Pls.' Mem. at 15.)  They similarly failed to plead State Defendants were personally involved in any alleged failure to train or supervise.  This is not surprising as they focused their "Municipal Allegations" on State Defendants in their "official capacity."  (Am. Compl. ¶ 103.)  To assert claims against State Defendants in their individual capacity, however, section 1983 "requires a causal link to, and direct responsibility for, the deprivation of rights."  *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).  No such causal link

---

[3] Plaintiffs' blurring of the roles between State and municipal entities illustrates the confusion regarding whether Plaintiffs were pursuing a theory of supervisory liability or *Monell* liability.  It appears they are pursuing both – just against different defendants.  As previously established, there is no such thing as a *Monell* claim against the State.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989).

and direct responsibility has been pleaded here. The Court should dismiss the individual capacity claims.

### III. QUALIFIED IMMUNITY BARS INDIVIDUAL CAPACITY CLAIMS AGAINST STATE DEFENDANTS.

Even if some type of individual capacity claim remained, it is barred by qualified immunity. Plaintiffs spend significant argument on whether they have pleaded a deprivation of a constitutional right. (Pls.' Mem. at 16-24.) What they fail to address, however, is how Commissioner Harrington's and Colonel Langer's alleged failure to supervise or train led to those deprivations of rights. To assert an individual capacity claim, Plaintiffs must show that State Defendants were aware of, but failed to correct, a pattern of unconstitutional conduct by their subordinates, or that they were aware their training practices were inadequate. *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010). They include no allegations to that key point.

Plaintiffs have identified a single incident on May 30 with Fraden, which does not satisfy the burden of deliberate indifference. *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988). "To impose supervisory liability, other misconduct must be very similar to the misconduct giving rise to liability." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Plaintiffs attempt to distinguish *Krigbaum* because it was decided at summary judgment, but that distinction is irrelevant. Qualified immunity questions should be

9

resolved "at the earliest possible stage in litigation." *Payne v. Britten*, 749 F.3d 697, 701 (8th Cir. 2014) (quotation omitted). To the extent Plaintiffs argue State Defendants should be liable in their individual capacity, they must point to some pattern of a failure to train or supervise. They made several specific allegations as it pertains to MPD, both in terms of alleged violations and deficient policies. The May 30 incident remains the lone incident related to MSP. One incident is not a pattern, and State Defendants are entitled to qualified immunity.

Finally, Plaintiffs point to no case law alleging similar facts to establish that the alleged constitutional violations at issue here were "clearly established." The only potential situation is the July 2016 incident plead upon information and belief but, as noted above, the factual allegations are not similar to the May 30 incident involving Fraden. (*See* Am. Compl. ¶ 109.) As a result, State Defendants are entitled to qualified immunity under the second prong of the analysis. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

## IV. THE COURT SHOULD DISMISS PLAINTIFFS' DUPLICATIVE DUE PROCESS CLAIMS.

Plaintiffs' due process claims are not plead in the alternative but are simply duplicative of their claims alleging violation of the First, Fourth, and Fourteenth Amendments. *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975) (setting forth the distinction between Fourth Amendment claims and due process claims); *Bostrom v. N.J. Div. of Youth & Family Servs.*, 969 F. Supp. 2d 393, 415 (D.N.J. 2013) (dismissing procedural due process claim as duplicative of First and Fourth Amendment claims). Plaintiffs' due process claims will be analyzed under these First and Fourth Amendment

frameworks. Plaintiffs acknowledge as much when they assert the alleged and heretofore unidentified "unwritten policies improperly empowered law enforcement officers to exercise their authority in arbitrary and discriminatory ways—including retaliating against Plaintiffs for engaging in First Amendment protected activity." (Pls.' Mem. at 25.) There is no independent basis for Plaintiffs' due process claims, and this failure provides another reason the Court should dismiss these claims.

## V. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS WITH PREJUDICE.

This is now Plaintiffs' second bite at the apple. In response to counsel for State Defendants identifying pleading deficiencies in Plaintiffs' initial Complaint, Plaintiffs amended. The only substantive change in the Amended Complaint was the addition of Plaintiff Fraden. The same baseless pattern and practice claims, the same focus on claims against State Defendants in their official capacity, and the same lack of factual allegations carried over into the Amended Complaint.

Plaintiffs Levy Armstrong, Armstrong, Hempfling, and Clark experienced no injury from State Defendants. No set of facts will change that. Dismissal with prejudice is appropriate. Similarly, while Plaintiff Fraden has at least alleged that he was possibly injured by State Defendants, his claims continue the failures of the initial Complaint for all the reasons set forth in State Defendants' initial memorandum and above.

## CONCLUSION

Plaintiffs have identified multiple Defendants in this action. These Defendants are not in charge of the same entities and do not possess the same employees, policies and procedures, and do not become defendants in this lawsuit merely by virtue of being "law

enforcement." Plaintiffs have an obligation to identify specific acts, specific patterns of alleged misconduct, or specific policies, to assert claims against State Defendants pursuant to § 1983. They have failed to do so.

Plaintiffs' claims against State Defendants fail to state a claim upon which relief may be granted. Indeed, most Plaintiffs lack standing to assert any claims. The remaining claims are deficient for the reasons set forth above. State Defendants respectfully request the Court dismiss Plaintiffs' claims against them with prejudice.

Dated:  November 23, 2020          Respectfully Submitted,

KEITH ELLISON
Attorney General
State of Minnesota


/s/ Joseph D. Weiner
JOSEPH D. WEINER (#0389181)
Assistant Attorney General

JULIANNA F. PASSE (#0397317)
Assistant Attorney General

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1189 (Voice)
(651) 282-5832 (Fax)
Joseph.weiner@ag.state.mn.us
julianna.passe@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS MINNESOTA DEPARTMENT OF PUBLIC SAFETY COMMISSIONER JOHN HARRINGTON AND MINNESOTA STATE PATROL COLONEL MATTHEW LANGER

|#4841135-v1