UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Nekima Levy Armstrong, Marques Armstrong, Terry Hempfling, and Rachel Clark, on behalf of themselves and other similarly situated individuals<br><br>Plaintiffs,<br><br>v.<br><br>City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo *in his official capacity*; Minneapolis Police Lieutenant Robert Kroll, *in his and official capacity*; Minnesota Department of Public Safety Commissioner John Harrington, *in his official capacity*, Minnesota State Patrol Colonel Matthew Langer, *in his official capacity*; and John Does 1-2, *in their individual and official capacities*,<br><br>Defendants. | Case No: 20-CV-01645 (SRN-DTS)<br><br>**DEFENDANT MINNEAPOLIS POLICE LIEUTENANT ROBERT KROLL'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULE 12(B)(6)** |

**INTRODUCTION**

The instant case is a claim by individuals for injuries incurred while they were present during the protests and riots on May 26-29, 2020 in Minneapolis, Minnesota. Even assuming their injuries were caused by individuals acting under color of law, Plaintiffs do not allege any conduct by Defendant Minneapolis Police Lieutenant Robert

1

Kroll ("Kroll") which would cause liability to Defendant Kroll. As such, Plaintiffs' claims against Defendant Kroll must be dismissed.

## ARGUMENT

Plaintiffs argue that because Kroll is the President of the Police Officers Federation of Minneapolis ("Federation") he acted under color of law and is liable under §1983. Further, Plaintiffs argue Kroll is also liable as a private actor. Plaintiffs' arguments fail as a matter of law.

**I.  KROLL'S ACTIONS AS FEDERATION PRESIDENT ARE NOT UNDER COLOR OF LAW.**

Plaintiffs admit their claim against Defendant Kroll ("Kroll") is solely due to his position as President of the Police Officers Federation of Minneapolis. See ECF 45, p. 2 ("as president of the Police Officers Federation of Minneapolis ('Federation'), Kroll is a state actor liable under Section 1983.") The Supreme Court has roundly rejected Plaintiffs' legal theory and stated that "[t]he traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins,* 487 U.S. 42, 49 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)). "It is firmly established that a defendant in a §1983 suit acts under color of state law <u>when he abuses the position given to him by the State</u>." *Id.* at 49–50 (emphasis added). Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law. *See Polk County v. Dodson,* 454 U.S. 312, 319–20 (1981). Thus, "private conduct

2

no matter how discriminatory or wrongful," may not be redressed by a §1983 claim. *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999). There are no facts which could be introduced to establish Kroll was acting under color of law and the Complaint against him should be dismissed.

Kroll is expressly relieved from acting under color of law for the City of Minneapolis to work full time on Federation Activities. See Kelly Aff. Ex. 1, ECF No. 62-1 ("Federation Contract"). Kroll was elected as Federation President by members of the Federation acting in their capacity as members of a union, not by any action by the City of Minneapolis. Although Kroll holds the civil service rank of Lieutenant, he is expressly "relieved from [his] regularly scheduled duties to engage in Federation activities…" Id. He performs no law enforcement duties because he works "exclusively on Federation business on a permanent basis." Id. "Absent any actual or purported relationship between the officer's conduct and *his duties as a police officer*, the officer cannot be acting under color of state law." *Ramirez–Peyro v. Holder,* 574 F.3d 893, 900 (8th Cir.2009) (emphasis added). Because Kroll is relieved from law enforcement duties, he holds no supervisory responsibility over MPD personnel and does not act under color of law[1].

Plaintiffs' reliance on a 2010 matter involving Kroll to support their position that "[a]n officer need not be on duty or in uniform to trigger liability as a state actor" is

---

[1] *Ramirez-Peyro* also laid out the factors to determine whether a sufficient nexus existed between the police officer's public position as a police officer and the harmful conduct: (1) whether the officer was on duty; (2) whether the officer wore a uniform or bore other indicia of state authority such as a badge or gun; (3) whether the officer had access to the victim because of his position as a public official; (4) whether the officer's motivation in acting was personal or official; and (5) whether the officer identified himself as a police officer or claimed to act in a police capacity. *Id* at 901. None of those factors are alleged here.

3

misplaced. ECF 45, p. 6 citing *Mahaffy v. Kroll*, 08-CR-4992 JMR/SRN, 2010 WL 338522, at *5-7 (D. Minn. Aug. 24, 2010). Plaintiffs ignore the plain language in *Mahaffy* that "an officer is not acting under color of state law unless there is an 'actual or purported relationship between the officer's conduct and *his duties as a police officer*.'" *Id.* quoting *Roe v. Humke,* 128 F.3d 1213, 1216 (8th Cir. 1997) (emphasis added). *Mahaffy* continued: "Much depends, therefore, on how Kroll and Krueger's actions are characterized. If they simply wanted to punish Mahaffy for scratching the car, they acted from personal motives unrelated to their law enforcement duties. But if they believed Mahaffy committed a crime, and approached him intending to detain him and investigate, there is a nexus between their conduct and their law enforcement duties. The question, then, depends on *whether plaintiffs have adduced evidence from which a reasonable jury could find Kroll and Krueger's actions were in furtherance of the state's interest in law enforcement*." *Id.* (emphasis added). Kroll's conduct has no relationship to his duties as a police officer or the state's interest in law enforcement. Here, Kroll was not acting as an off-duty officer; rather, he was a full time Union President with no law enforcement authority or responsibility. Plaintiffs allege that *all* of Kroll's conduct was that of Federation President. Therefore, he was *not* acting under color of law at any time relevant to the complaint and cannot be liable under §1983.

When acting as Federation President, Kroll is *not* acting under color of law. *See Kern v. City Rochester*, 93 F.3d 38 (2nd Cir. 1996) (holding president of firefighter union was not acting under color of law when undertaking activities in

4

his union capacity); *see also Cahill v. O'Donnell*, 75 F.Supp.2d 264 (S.D.N.Y. 1999) ("he did not hold his position as president by virtue of actions by the state and he *performed function for the union. Not for the government*.") (emphasis added). While acting as Federation President, Kroll is not a supervisor with MPD and is, in fact, expressly relieved of all color of law duties, including enforcement of MPD policies, training, and supervising MPD Officers. While acting as Federation President, Kroll performs functions exclusively for the Federation, not the government. Therefore, taking the allegations in the complaint as true, Kroll was not acting as an agent of the government and the Complaint against Kroll should be dismissed.

Plaintiffs cite to no authority to support their contention that a Union President can be held liable for statutorily and constitutionally protected concerted activities. Instead, Plaintiffs admit that Kroll's law enforcement actions as a police officer are not what support their claims, rather, "Plaintiffs' allegations stem from Kroll's role as president of the Federation…the conduct in question is his conduct as president of the Federation." ECF 45, p. 8. Plaintiffs' argument is legally deficient. Kroll's position as Federation President is that of a private citizen given to him by the members of the union, not the City of Minneapolis.

Plaintiffs perform legal gymnastics to avoid the general prohibition of §1983 liability for labor unions by claiming that Kroll is named as a defendant solely because of his statements as Federation President while simultaneously claiming that the Federation itself is not a party. "Plaintiffs have not sued the Federation, but instead of sued Kroll, so

5

the comparison is inapplicable." (ECF 45, p. 9). As a matter of law, Plaintiffs cannot escape the general prohibition of §1983 liability against a labor union by naming Kroll individually for his "role as president of the Federation". ECF 45, p. 8. As Plaintiffs so aptly state: "the conduct in question is his conduct as president of the Federation." Plaintiffs cannot plead facts to prevail on their claim of § 1983 liability against Kroll and the complaint should be dismissed.

Plaintiffs attempt to distinguish *Magee v. Trustees of Hamline University,* 957 F.Supp. 2d 1047 (D. Minn. 2013) falls flat. Plaintiffs claim that *Magee*'s complaint failed to allege that Dave Titus was acting in his role as a police officer when he violated the Plaintiff's constitutional rights is refuted by even a cursory review of the case. (ECF 45, p. 7-8). Here, like *Magee*, Kroll is a police officer who is the President of the Police Federation. Like Titus in *Magee*, Plaintiffs allege Kroll's actions were in his role as Union President, not as police work. "Plaintiffs' allegations stem from Kroll's role as president of the Federation…the conduct in question is his conduct as president of the Federation." (Id.) Plaintiffs do not allege that Kroll was on duty as a police officer when he did any of the acts described in the complaint. *See Magee v. Trustees of Hamline University*, 747 F.3d 532, 535 (8th Cir. 2014). Plaintiffs do "not assert that [Kroll], invoked or used his authority as a police officer. *Id*. Like *Magee,* Plaintiffs do "not plead [Kroll] was motivated by anything other than his personal concern and [Federation] position." *Id.* In fact, Plaintiffs allege Kroll's sole motivation was that of Federation President. Here, like *Magee*, Plaintiffs fail to allege any fact to support a sufficient nexus

6

between Kroll's actions and his authority of his public position as a police officer, let alone the *Ramirez-Peyro* factors. *Id* at 1076. Like, *Magee*, Plaintiffs merely allege " a legal conclusion that is not to be granted an assumption of truth. *Id, citing Delgado–O'Neil v. City of Minneapolis,* No. 08–4924, 2010 WL 330322 (D.Minn. Jan. 20, 2010) *aff'd,* 435 Fed.Appx. 582 (8th Cir.2011); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). *Magee* is on all fours and the complaint against Kroll should be dismissed.

Plaintiffs also misconstrue this Court's records in their memorandum. Plaintiffs allege that "Chief Arradondo knew of what he spoke, of course *having himself filed a civil lawsuit against Kroll 13 years earlier* because of racist statements Kroll has made." ECF 45, p. 2 (emphasis added). The memorandum cites to *Arradondo v. City of Minneapolis*, 07-cv-04736 (D. Minn. Dec. 3, 2007). A review of the case proves that Defendant Kroll was not a named party in that suit. In other words, Plaintiffs allegation that Chief Arradondo "filed a civil lawsuit against Kroll 13 years earlier" is demonstrably false and underscores Plaintiffs attempt to blame Kroll for everything wrong with MPD. Kroll cannot prevents MPD from disciplining, including termination, police officers for misconduct. Kroll has no authority to discipline any MPD Police Officer because he is relieved from law enforcement duties. Likewise, Kroll has no authority to amend or remove any discipline imposed by MPD to any MPD Police Officer. At most, the Federation can file a grievance.

Kroll's responsibility, as President of Federation, is to protect the rights and interests of Federation members and to deal with the City of Minneapolis concerning

7

grievances and terms and conditions of employment. *See* Minn. Stat. § 179A.03, subd. 6 (PELRA defining "employee organization as "any union or organization of public employees whose purpose is, in whole or in part, to deal with public employers concerning grievances and terms and conditions of employment"). Plaintiffs confuse Kroll's role as Federation President: "Kroll has even defended MPD officers *terminated*[2] for excessive force." (ECF 45, p. 13) (emphasis in original). Federation has a legal duty to fairly represent its members. *See, e.g. Bowen v. USPS*, 459 U.S. 212 (1983); *see also Eisen v. State, Dept. of Public Welfare*, 352 N.W.2d 731 (Minn. 1984). "The union, as the employees' exclusive representative, has a fiduciary obligation to protect the interests of its members." *Id* at 735. Kroll's duties as Federation President are not to the members of the public or to elected officials; rather, the duties are to Federation and its members. Plaintiffs' claims against Kroll seek to create liability for performing statutorily protected and *required* duties. *See Id* and Minn. Stat. §179A.21.

      Plaintiffs' examples of creating a culture of excessive force revolve around Kroll's public support of Federation members and criticism of Minneapolis management in their lack of support of Federation members. In each example cited by Plaintiffs, Kroll is performing the duties of Federation President, filing grievances, engaging in collective bargaining and dealing with the City of Minneapolis concerning grievances and terms and conditions of employment, and engaging in protected Union Speech. *See Janus v. AFSCME, Council 31,* 138 S.Ct. 2448 (2018).

---

[2] Ironically, the matters cited as examples of Kroll's creation of a culture of excessive force are two Police Officers, Webber and Lehner, whose terminations were both upheld by an arbitrator. All instances subject to arbitration took place prior to Kroll becoming Federation President.

8

## II. PLAINTIFFS' CLAIM AGAINST KROLL IS BASED UPON HIS PROTECTED SPEECH

Plaintiffs attempt to tiptoe around Kroll's Constitutionally Protected Speech fail. "Plaintiffs have alleged that [Kroll's] speech and conduct have had significant effects on the MPD." ECF 45, p. 22. Plaintiffs do not allege that Kroll directly or indirectly ordered any public official to perform any act. They merely allege Kroll's speech had an *effect* on culture. As noted throughout the complaint and in the memoranda by both parties, Kroll's statements were as the Federation President and had to do with matters of public concern. "[W]hen a union negotiates with the employer or represents employees in disciplinary proceedings, the union speaks for the *employees,* not the employer. Otherwise, the employer would be negotiating with itself and disputing its own actions. That is not what anybody understands to be happening." *Janus*, *supra*, at 2474 (emphasis in original). Like *Janus*, "the union speech at issue in this case is overwhelmingly of substantial public concern." *Id.* at 2477. "We have often recognized that such speech 'occupies the highest rung of the hierarchy of First Amendment values' and merits 'special protection.'" *Id.* at 2476, quoting *Snyder v. Phelps,* 562 U.S. 433, 452 (2011) .

The facts alleged in the complaint demonstrate that Plaintiffs cannot present any law or fact to support the contention that a labor leader can be held individually liable for the actions of others based upon a "culture" effected, in part, by the labor leader's speech on matters of public concern and actions taken on behalf of members concerning

grievances and terms and conditions of employment. "A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties." *Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As noted above, Kroll is not a state actor, public officer or agent. Likewise, the actions alleged were not done by Kroll's subagents employed by or under him. Finally, the alleged actions were not done as part of a discharge of Kroll's "official duties." *Robertson*, *supra*. Therefore, Kroll is not liable for the actions or inactions of others, either by the Officers who allegedly performed the misdeed or the Police Department that officially authorized the misdeed to take place.

Plaintiffs' claim is based upon *statements* made by Kroll, as Federation President, about terms and conditions of employment related to Federation members. If Plaintiffs' claim is allowed to continue, it would chill Union speech. Public Sector Union Officials would be liable as state actors for everything they say and everything their members do. Plaintiffs' attack on protected speech must be ended and the suit should be dismissed.

### III. KROLL IS NOT LIABLE AS A PRIVATE ACTOR

Plaintiffs incorrectly claim that, even as a private actor, Kroll is liable under §1983. Plaintiffs cite to three cases in support of their argument. A review of the full body of law in the area proves that Kroll is not liable as a private actor.

To establish a claim against a private actor under Section 1983, there must be "a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Miller v. Compton,* 122 F.3d 1094, 1098 (8th Cir.1997) (quoting *Mershon v. Beasley,* 994 F.2d 449, 451 (8th Cir.1993)). Here, Plaintiffs do not allege a conspiracy or meeting of the minds, therefore, the case should be dismissed. Like *Magee*, "because the [Federation] is a private entity not liable under 42 U.S.C. § 1983…[it] could not survive a Rule 12(b)(6) motion to dismiss." *Magee,* 957 F.Supp.2d at 1071.

In *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), the case was a suit by a white woman denied service in a private defendant's restaurant because she was in the company of African Americans. The private defendant was found potentially liable because the private defendant's refusal to serve the plaintiff was motivated by the state-enforced custom of segregating races in public eating places. *Id.* The Defendant in *Adickes*, was the actor that deprived the Plaintiff of her rights because of the state enforced custom requiring such discrimination. *Id.* Further, in *Adickes*, the claim was based upon a civil conspiracy with the private defendant reaching an understanding with a police officer in the restaurant that they would deprive the Plaintiff of her rights *because* she was in the company of African Americans. Here, there is no allegation of a civil conspiracy, nor can there reasonably be.

In *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001), the Courts recognized a long-standing finding of State High School Athletic Association as State Actors because the States delegated a public function of the

State to the private association or when the association is controlled by an agency of the State. *Id* at 296; *see also Pennsylvania v. Board of Directors of City Trusts of Philadelphia,* 353 U.S. 230, 231, (1957); *West v. Atkins,* 487 U.S. 42 (1988); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614 (1991). Conversely, this Court and others have always found that Unions, and their officers, are *not* liable under §1983. *See Magee* 747 F.3d 532 (8th Cir. 2014); *Magee* 957 F.Supp. 2d at 1064 ("The mere fact that the SPPF was made up of police officers is therefore insufficient to demonstrate liability under § 1983"); *Stodghill v. Service Employees Intern. Union, Local 50, AFL–CIO, CLC,* 192 F.3d 1159, 1162 (8th Cir.1999); *Peltonen v. Branch No. 9,* No. 05–cv–605, 2006 WL 2827239 at *23 (D.Minn. Sept. 29, 2006). Plaintiffs fail to cite any authority for its proposition that a labor leader be held liable for others based upon alleged influence on the culture of the department.

In *Wickersham v. City of Columbia*, 481 F.3d 591 (8th Cir. 2007), a Plaintiff was prevented by police officers from distributing anti-war flyers at an air-show put on by a nonprofit corporation at a municipal airport. The City Defendant in *Wickersham* turned over control of governmental property to the nonprofit Defendant, thus making it a state actor. *Id.* The police actively enforced the nonprofit's speech restriction and agreed to do so rather than mere acquiescence. Here, Plaintiffs allege that police officers engaged in unconstitutional or illegal acts and Kroll is the Federation president, so he is somehow liable for said acts. Plaintiffs have not and cannot allege facts that Kroll directed others to perform any act against Plaintiffs. Therefore, the case should be dismissed.

# CONCLUSION

Plaintiffs' claims against Kroll are based solely upon his role as Federation President. As Federation President, Kroll has the right to speak as a private party about matters of public concern. Kroll, like all Union leaders, receives his position from the Union, not from the State. Therefore, Kroll does not act under color of law as the Federation President.

Kroll did not direct the acts of others and is not alleged to have conspired to violate others' rights. The claim against Kroll is not based in law or fact. Therefore, the case should be dismissed.

Dated: November 23, 2020            **KELLY & LEMMONS, P.A.**


/s/ Joseph A. Kelly
Joseph A. Kelly (#389356)
Kevin M. Beck (#389072)
2350 Wycliff Street, #200
St. Paul, MN 55114
(651) 224-3781
F: (651) 223-8019

*Attorneys for Defendant Minneapolis Police Lieutenant Robert Kroll*