UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Nekima Levy Armstrong, Marques Armstrong, Terry Hempfling, and Rachel Clark, *on behalf of themselves and similarly situated individuals*,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Minneapolis, Minnesota Chief of Police Medaria Arradondo, *in his individual and official capacity*; Minneapolis Police Lieutenant Robert Kroll, *in his individual and official capacity*; Minnesota Department of Public Safety Commissioner John Harrington, *in his individual and official capacity*; Minnesota State Patrol Colonel Matthew Langer, *in his individual and official capacity*; and John Does 1-2, *in their individual and official capacities*,<br><br>Defendants. | Case No. 20-cv-01645 (SRN/DTS)<br><br>**REPLY MEMORANDUM IN SUPPORT OF THE CITY DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs will have their day in Court to challenge the John Does' use of force. But Plaintiffs' allegations are insufficient to draw the City Defendants into this suit.

**I.     PLAINTIFFS' CLAIMS ARE DEFICIENT AS A MATTER OF LAW**

Plaintiffs' individual capacity claim against Chief Arradondo is based on the same facts asserted in their *Monell* claim. They do not allege any specific facts beyond an official capacity claim or show that Chief Arradondo was personally involved in or directly responsible for Plaintiffs' alleged constitutional violations. *Clemmons v.*

1

*Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007). Thus, the individual capacity and *Monell* claims fail for the same reasons.

**A. Plaintiffs' custom claim fails because there is no "continuing, widespread, persistent" pattern of unconstitutional conduct to which the City Defendants were deliberately indifferent.**

To maintain a custom claim, Plaintiffs must plausibly plead a "continuing, widespread, persistent pattern of unconstitutional misconduct" and that City Defendants had notice of the pattern but were deliberately indifferent to or tacitly authorized such conduct. *Ware v. Jackson Cty,* 150 F.3d 873, 880 (8th Cir. 1998). The timeframe and number of alleged incidents of unlawful conduct each render Plaintiffs' claim insufficient as a matter of law. So too does Plaintiffs' failure to sufficiently plead deliberate indifference.

    1.    <u>The two 2015 incidents are not part of a pattern</u>

A pattern can only arise from similar types of unconstitutional conduct. *Mettler v. Whitledge*, 165 F.3d 1197, 1205-05 (8th Cir. 1999): *Ratliff v. City of Columbia*, 1999 WL 1143752, at *1 (8th Cir. 1999) (eight unrelated complaints "insufficient as a matter of law to show a persistent pattern of unconstitutional misconduct"). Plaintiffs concede that neither of the two alleged 2015 incidents involved the use of less-lethal projectiles. Thus, they cannot establish custom with respect to projectiles.

The two 2015 incidents also fail to evince a plausible pattern with respect to the use of chemical irritants. Merely alleging that chemical irritant was used on protestors is insufficient to demonstrate unconstitutional conduct on either occasion, particularly since Plaintiffs concede that use of tear gas is an "accepted law enforcement practice." *Andrade*

*v. U.S.*, 116 F.Supp.2d 778, 788 (W.D. Tex. 2000). Moreover, Plaintiffs do not dispute that the nearly five-year gap between the 2015 and 2020 incidents negates any contention of a continuing, widespread, and persistent pattern. *Moore v. Dist. of Columbia,* 79 F.Supp.3d 121, 140 (D.C. 2015). To the contrary, Plaintiffs cite to *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) as finding that "*two incidents* of excessive force occurring several years before the incident in question were insufficient to show a custom." (ECF Doc. 43 at 11.)

    2.    <u>The amended complaint does not plead an unconstitutional pattern because it is premised on a "three to five" day period that is punctuated by two days with no purported unconstitutional activity.</u>

The short, punctuated period alleged by Plaintiffs fails to establish a pattern. Plaintiffs allege the use of chemical irritant and/or rubber or less-lethal projectiles on only four occasions: (1) between 8:00 and 10:00 p.m. on May 26 near the Third Precinct, (2) May 27 near the Third Precinct, (3) 11:30 p.m. on May 29 near the Fifth Precinct, and (4) May 31 near Highway 35W. (ECF Doc. 19 at ¶¶21, 22, 24, 28, 29, 48-49, 55, 59-60, 63, 66, 71, 88-93, 96-97.) In other words, four occasions of allegedly unlawful force with no allegations of unlawful force on either May 28 or 30. Plaintiffs describe this as a "period of three to five days." (ECF Doc. 43 at 11, 14.)

This period cannot be viewed as so "permanent and well-settled" as to have the effect and force of law. *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990) (citing *Monell v. Dep't. of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978)). Plaintiffs ignore the duration and consistency required to establish a pattern, focusing solely on the number of protestors allegedly involved in

the four incidents.[1] Plaintiffs do not identify any caselaw that recognizes a custom based on an isolated period merely based on the number of individuals that were harmed within that isolated period. Under Plaintiffs' erroneous conception of a custom claim, a municipality could be held liable as having condoned a pattern based solely on a single incident if that incident injured a large number of people. Accepting such a construction, however, would eliminate the "continuing" and "persistent" requirement established by the Eighth Circuit. *Ware,* 150 F.3d at 880; *Appel v. City of St. Louis*, 2007 WL 9808053, at *15 (E.D. Mo. 2007) (custom may arise from unwritten understandings "intended to ... establish fixed plans of action to be followed under similar circumstances consistently and over time"); *Thelma D. ex rel. Delores A. v. Bd. of Educ. of City of St. Louis,* 934 F.2d 929, 933 (8th Cir. 1991) (pattern not satisfied because the "alleged incidents [were] relatively isolated").

Plaintiffs' citation to *Cantu v. City of Portland*, 2020 WL 2952972 (D. Or. June 3, 2020) offers them no support. There, the court rejected the notion that plaintiffs needed to "cite to dates of specific events" to maintain a custom claim because the plaintiffs

---

[1] Plaintiffs ask the Court to take notice of "subsequent police use of excessive force" during protests relating to Derek Chauvin's release on bail, citing to a Star Tribune article. (ECF Doc. 43 at p. 2, n. 3). But the cited article does not reference *any* use of force during the protests.

Plaintiffs do not identify any case law that focuses on the number of people injured as opposed to the number of incidences and the timeframe over which those incidences occurred. *But see Ball-Bey v. Chandler*, 415 F.Supp.3d 884, 895, 901 (E.D. Mo. 2019) (granting motion to dismiss because "isolated incidents do not suffice" and "14 instances of purportedly similar conduct fail to establish a pattern or practice of use of excessive force"); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (estate's custom claim fails "because the sample of alleged unconstitutional events [11 incidents] is just too small"); *Mettler*, 165 F.3d at 1204 (fifteen citizen complaints insufficient).

4

sufficiently pled that officers used the same tactics and force "in the year leading up to the Protest, citing a series of confrontations" between counter-protestors. *Id*. at * 4. Unlike *Cantu*, Plaintiffs' so-called "pattern" is clearly based on only "three to five days" – with no lead up of similar incidents in the preceding year. This is insufficient.

Failing to offer cases in support of their purported pattern, Plaintiffs erroneously attempt to distinguish the cases cited by City Defendants. For example, although Plaintiffs acknowledges that *Burbridge v. City of St. Louis, Missouri,* 430 F.Supp.3d 595, 620 (E.D. Mo. 2019) involved a protest affecting approximately 100 people, Plaintiffs claim it is incomparable. (ECF Doc. 43 at 11.) Their arguments are flawed.

In *Burbridge*, filmmakers alleged that officers violated their civil rights as they documented the last night of a three-night protest that erupted after an offer was found not guilty of criminal charges involving a fatal shooting. *Id*. at 604, 619-620. The complaint alleged "numerous other incidents" of officers pepper-spraying protestors and an unlawful custom "so pervasive" that it deprived the plaintiffs of the right to be free from excessive force. *Id*. at 619. Nonetheless, the court dismissed plaintiffs' custom claim because multiple incidences of misconduct establish a custom only if they "occurred over a course of time sufficiently long enough to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials." *Id*. at 619-20. The court held that the three-night weekend was insufficient to establish the existence of a custom. *Id*. Contrary to Plaintiffs' assertion, this decision did not turn on whether the municipality had notice of the numerous other incidents. "[E]ven if evidence of notice existed, the September 15-17 incidents are simply too close in time

to the [plaintiffs'] arrest to show 'deliberate indifference' or 'tacit authorization.'" *Id*. at 620.

The procedural stance of *Burbridge* does not diminish its import. The court ruled as a matter of law that the existence of near-contemporaneous incidents does not give rise to a finding of deliberate indifference. *Id. See also Connick v. Thompson*, 563 U.S. 51, 63, n. 7 (2011) ("But contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates'").

Plaintiffs' custom claim is based on a similarly isolated "three to five" day period of civil unrest, involving contemporaneous allegations of unlawful conduct. The amended complaint does not allege any unlawful conduct past May 31, 2020, and it defines the class as those who "participated in peaceful protest activity" between "May 26, 2020 and May 31, 2020". (ECF Doc. 19, ¶149.) As such, even if, hypothetically, discovery would reveal additional allegations of unlawful force, it would not alter the purely legal issue before this Court: whether an isolated three to five day period involving contemporaneous or near-contemporaneous events is so "permanent and well-settled" as to have the effect and force of law. *Jane Doe A By & Through Jane Doe B.*, 901 F.2d at 646 (8th Cir. 1990). As such, any possible amendments are futile, and the City Defendants should be dismissed with prejudice.

3. The City was not deliberately indifferent.

The amended complaint does not plausibly plead that the City Defendants were deliberately indifferent to a pattern of unconstitutional uses of force during the protests.

Even assuming that City Defendants could be placed on legal notice of a "three to five" day pattern based on a YouTube video and May 29 article (ECF Doc. 43 at 13), Plaintiffs do not identify any basis to conclude that City Defendants were deliberately indifferent to unconstitutional uses of force.

Plaintiffs improperly equate the City's acknowledgement that projectiles were used at a time when peace and safety needed to be restored with the very different conclusion that unconstitutional uses of force were being condoned. Even if there had been notice of unconstitutional conduct, "notice" and "deliberate indifference" are separate inquiries and require separate showings. Plaintiffs essentially ask the Court find deliberate indifference because the City allegedly failed to take corrective action fast enough, i.e. "fail[ed] to intervene" over "three to five days" or in "the midst of the protests". (ECF Doc. 43 at 13-14.)

But "[m]ere delay" cannot establish "actionable deliberate indifference." *Hoekstra By and Through Hoekstra v. Indep. Sch. Dist. No. 283, St. Louis Park, Minn.*, 916 F.Supp. 941, 947 (D. Minn. 1996); *Helseth v. Burch*, 109 F.Supp.2d 1066, 1079 (D. Minn. 2000) (that the city "ultimately responded" to alleged incidents is "not indicative of indifference"); (*See* ECF Doc. 19 at ¶123) (pleading City Defendants amended various policies to require higher authorization prior to use of crowd control weapons). Culpability for inaction arises "by acquiescence in a longstanding practice or custom which constitutes 'standard operating procedure' of the local governmental entity.'" *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *see also Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807 (8th Cir. 1994) ("[I]naction or laxness can constitute

government custom if it is permanent and well settled."). Plaintiffs do not allege acquiescence to a longstanding custom, they allege that the City did not take corrective action in a matter of a "three to five days."

Although they do not dispute in their allegations that this period involved the "largest scale riot Minneapolis has ever seen" (ECF Doc. 19 at ¶113), Plaintiffs ask the Court to ignore the pressing exigencies.[2] But the Court's plausibility determination requires a "context-specific" analysis drawing on its "judicial experience and commonsense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). That the City was focused on ending the "[d]estructive and dangerous activity" and "senseless violence tear[ing] at the fabric of our society" negates a finding of deliberate indifference. (*See* ECF Doc. 19 at ¶¶58, 59, 115; ECF Doc. 36 at 28, n. 5.)

**B.     Plaintiffs fail to plausibly plead a training claim**

Conceding that their training claim is not based on a pattern of prior misconduct, Plaintiffs assert that liability can be premised on a single-incident theory. But the amended complaint does not set forth the "narrow range of circumstances" for which a single-incident claim can arise. *Bd. of Cty Com'rs of Bryan Cty, Okl.*, 520 U.S. at 409.

---

[2] Plaintiffs cite to *Trump v. Hawaii*, 138 S.Ct. 2392 (2018) as holding that *Korematsu* was wrongly decided. *Korematsu* involved express authorization by an Executive Order intern certain individuals for the duration of World War II, not a custom claim premised on three to five days of purported inaction. *Id*. at 2435, 2447. "Whatever rhetorical advantage [Plaintiffs] may see in doing so, *Korematsu* has nothing to do with this case." *Id*. at 2423.

A failure to train theory requires plaintiffs to identify a specific deficiency with the challenged training program. *Hahn v. Bauer*, 2010 WL 396228, at *12 (D. Minn. 2010). Yet Plaintiffs do not identify a specific deficiency with the City's training. According to Plaintiffs, "[t]he State and Municipal Defendants" failed to "train their employees" on "constitutionally protected activity," "due process rights," "impact weapons, chemical irritants, and less-lethal munitions," and "crowd control."[3] (ECF Doc. 19 at ¶¶110, 114, 134, 147, 162, 179.) But these conclusory allegations – repeated verbatim against the State – do not plausibly assert a specific problem with the City's training. *Anderson v. Marshall County, Miss.*, 637 Fed.Appx. 127, 135 (5th Cir. 2016) ("[I]t is not enough to say that more or different training" would have "prevented plaintiff's injuries. More specificity is required to resolve such a claim.")(internal citations omitted).

Moreover, Plaintiffs do not plausibly plead that it was patently obvious that a failure to train in a yet-to-be-disclosed manner would cause constitutional violations. *Thelma D. By and Through Delores A.*, 934 F.2d at 934 (8th Cir. 1991) (must show failure to train in a "relevant respect"). That Plaintiffs pled four occasions of allegedly unlawful uses of force over an isolated period, and only one incident of kettling, does not make it patently obvious that there was a need for additional or different training. *Larkin v. St. Louis Hous. Auth. Dev. Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004) (explaining that the focus must be on the adequacy of the training program because the officer's shortcomings may have resulted from factors other than a faulty training program).

---

[3] Plaintiffs do not plausibly assert that the City offered no training on these topics. For example, Plaintiffs plead that MPD policy approved the "use of chemical agents as long as it complied with current MPD training". (ECF Doc. 19 at ¶126.)

9

The cases cited by Plaintiffs as finding deliberate indifference are either distinguishable or not true single-incident claims. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 382 (7th Cir. 2017) (medical service provider for prison "did nothing for more than seven years to address" the "risk" associated with lack of medical-care coordination); *J.K.J. v. Polk Cty*, 960 F.3d 367, 384 (7th Cir. 2020) (claim did not involve a "single instance of flawed conduct" but rather "repeated failures" to ensure inmates' safety); *Shadrick v. Hopkins Cty, KY*, 805 F.3d 724, 740 (6th Cir. 2015) (involving death of inmate where there was no training program for treating nurses); *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 287-289 (6th Cir. 2020) ("complete failure to provide any type of training"); *Estate of Osuna v. Cty. of Stanislaus*, 392 F. Supp. 3d 1162, 1175 (E.D Cal. 2019) (training claim based on "multiple prior instances of alleged misconduct"). Given the massive state of unrest over the "three to five" day period, it is unreasonable to expect that the MPD would re-train its officers on a few days' notice. *Habiger v. City of Fargo*, 80 F.3d 289, 297 (8th Cir. 1996).

### C. Plaintiffs does not plead a viable *Monell* policy claim

Plaintiffs do not dispute City Defendants' arguments that all of the MPD policies cited in the amended complaint are constitutional. They only challenge two ordinances relating to obstruction or interference with traffic. (ECF Doc. 19 at ¶¶138, 140.) Plaintiffs' citation to case law analyzing whether different ordinances effectively criminalize speech is immaterial because Plaintiffs' due process claim is not premised on the traffic ordinances. Plaintiffs claim their due process rights were violated "when law enforcement fired chemical and other less-lethal munitions on them without notice and an

opportunity to disperse". (*Id.* at ¶181.) There is no connection pled between the allegedly unconstitutional ordinances and the allegedly unconstitutional use of force, therefore Plaintiffs have not pled that the ordinance was the "moving force" behind their purported constitutional violations and the *Monell* claim fails. *Slaven v. Engstrom*, 848 F.Supp.2d 994, 1002 (D. Minn. 2012).

## **CONCLUSION**

City Defendants respectfully request that the Court grant their motion to dismiss with prejudice.

Dated: November 23, 2020

JAMES R. ROWADER, JR.
City Attorney
By */s Kristin R. Sarff*
KRISTIN R. SARFF (0388003)
HEATHER P. ROBERTSON (0390470)
SHARDA ENSLIN (0389370)
Assistant City Attorneys
Minneapolis City Attorney's Office
350 South Fifth Street, Room 210
Minneapolis, MN 55415
(612) 673-3919
kristin.sarff@minneapolismn.gov
heather.robertson@minneapolismn.gov
sharda.enslin@minneapolismn.gov

*Attorneys for City of Minneapolis and Medaria Arradondo*